Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jamie Fountain (SBN 316567)
jfountain@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

**Attorneys for Plaintiff
Deckers Outdoor Corporation**

ZACHARY M. BRIERS (SBN 287984)
zachary.briers@mto.com
ADAM W. KWON (SBN 327932)
adam.kwon@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

**Attorneys for Defendant
Last Brand, Inc. d/b/a Quince**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LAST BRAND, INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | CASE NO.: 3:23-cv-04850-AMO<br><br>**JOINT CASE MANAGEMENT STATEMENT & ~~[PROPOSED]~~ ORDER \*as modified by the Court**<br><br>JURY TRIAL DEMANDED<br><br>**Scheduling Conference:**<br><br>Date:　　　January 18, 2024<br>Time:　　　10:00 a.m.<br>Courtroom:　10<br><br>　　**Hon. Araceli Martínez-Olguín** |

Counsel for Plaintiff Deckers Outdoor Corporation ("Plaintiff" or "Deckers") and Defendant Last Brand, Inc. d/b/a Quince ("Defendant" or "Quince") (collectively the "Parties") hereby submit this Joint Case Management Statement. The positions set forth in this report are based on counsels' current understanding of the legal and factual issues involved in the case. The Parties acknowledge that as discovery proceeds and the case progresses, the beliefs and views set forth herein may change or evolve.

## 1. JURISDICTION AND SERVICE

This Court has subject matter jurisdiction over the claims alleged in this action pursuant to 28 U.S.C. § 1331 and § 1338. The parties do not contest personal jurisdiction or venue. There are currently no unserved parties.

## 2. FACTS

### A. Procedural History

Deckers filed this action in the U.S. District Court for the Central District of California on June 12, 2023. Deckers asserts five causes of action against Quince for: (1) federal trade dress infringement; (2) common law trade dress infringement, (3) unfair competition under California Business & Professions Code section 17200; (4) unfair competition under California common law; and (5) infringement of U.S. Patent No. D927,161 (the "'161 Patent"). Quince denies Deckers' claims.

On September 12, 2023, the Parties stipulated to transfer this action to the Northern District of California. On September 19, 2023, the U.S. District Court for the Central District of California granted the Parties' stipulation. On September 21, 2023, this action was transferred and assigned to this Court.

### B. Plaintiff's Statement

In 2018, Deckers introduced the UGG® Classic Ultra Mini, marketed and featuring the design elements protected under the "Classic Ultra Mini Trade Dress" and U.S. Pat. No. D927,161 ("the '161 Patent") issued on August 10, 2021. After discovering Defendant's infringement of Deckers' Classic Ultra Mini Trade Dress and

the '161 Patent (the "Accused Product"), Plaintiff filed the present action against Defendant asserting causes of action for trade dress infringement, patent infringement, and unfair competition. Defendant has continued to sell the Accused Product after receiving notice of this lawsuit. Exemplars of the Plaintiff's UGG® Classic Ultra Mini, '161 Patent, and the Accused Product are below:

  

UGG® Classic Ultra Mini　　　　　　'161 Patent　　　　　　Accused Product

**Defendant's Statement**

Quince denies infringing any of Deckers' intellectual property rights. Shearling boots are a staple in footwear, and they are sold by a wide variety of manufacturers and vendors. Indeed, many vendors sell shearling boots that have similar appearances to the "mini boot" sold by Deckers, as illustrated in the exemplary images below.



The design of Deckers' mini boots is not distinctive, nor is it entitled to legal protection.

## 3. **LEGAL ISSUES**

### A. Plaintiff's Statement

Similar to many of Deckers other commercially successful designs, the UGG® Classic Ultra Mini has been the subject of widespread copying which has resulted in Deckers filing several lawsuits to enforce its intellectual property. It is well established that whether Deckers has chosen to sue any particular third-party for patent/trade dress infringement is no defense to Defendant's own illegal conduct. Likewise, the fact that the USPTO granted the '161 design patent on the Ultra Mini creates a presumption that the trade dress is non-functional. Additionally, not only is the Ultra Mini's extensive sales, advertising, and unsolicited media attention evidence of secondary meaning, Deckers has already conducted a secondary meaning survey resulting in an incredibly high 73% association with UGG. Finally, on the issue of likelihood of confusion, under *Sleekcraft* marketing channels is only one of several factors to be considered along with the strength of the trade dress, similarity of the trade dress, relatedness of the goods, degree of care exercised by consumers, evidence of actual confusion and intent. Furthermore, in cases of post-sale confusion marketing channels (i.e., whether Defendant only sells the infringing goods on its website at a certain price point) is irrelevant. Furthermore, consumers could easily be confused into believing that Deckers collaborated with or otherwise authorized Defendant's infringing product.

The following legal issues in this action are: 1) whether the Accused Product manufactured, distributed, offered for sale, and/or sold by Defendant bear confusingly similar reproductions of Deckers' Classic Ultra Mini Trade Dress such that there is a likelihood of confusion between Deckers and Defendant and/or their respective products; 2) whether the Accused Product manufactured, distributed, offered for sale, and/or sold by Defendants bear a design that is substantially the same as the design in the '161 Patent in the eye of an ordinary observer, giving such attention as a purchaser usually gives; 3) whether Defendant acted knowingly, intentionally, and/or willfully, with knowledge of Deckers' trade dress or patent in the manufacture, distribution,

offer for sale, and/or sale of the Accused Product; and 4) whether Deckers is entitled to monetary damages and/or equitable relief in the event Defendants are found to be liable for the claims alleged.

### B. Defendant's Statement

The design of Decker's mini boots is neither distinctive, nor innovative, nor non-functional. Indeed, Decker's design is virtually indistinguishable from similar products sold by other vendors, including those identified by Quince above.  As a result, Deckers does not have any legally protectable intellectual property rights in the design of its mini boots.

The only thing that distinguishes Decker's mini boots from the dozens of similar shearling boots on the market is Deckers' use of its "UGGs" trademark, which is prominently displayed on the heel, interior and footbed of every one of Decker's mini boots. In comparison, the Quince products at issue in this case do not use the UGGs logo — each one of them is clearly labelled with Quince's own trademark, visibly distinguishing them from Decker's products.  Consumers of Quince's footwear products could not possibly be confused about the source of those products, as Quince sells its footwear only on its own website, Quince.com, and prominently distinguishes its products from those of higher-priced vendors, such as UGGs.

The principal disputed factual and legal issues are:
- Whether Deckers' has protectable trade dress in its mini boots;
- If it does, whether Quince infringes any of Deckers' asserted trade dress;
- Whether Quince infringes the '161 Patent;
- Whether the '161 Patent is directed to patent-eligible subject matter and whether it is anticipated, obvious, and/or otherwise invalid; and
- The extent of any damages, if any.

The Parties anticipate additional factual issues may arise in the course of this action.

### C. **MOTIONS**

There are no pending motions before the Court.

1  Defendant previously filed a Motion to Dismiss Plaintiff's claim of willful
2  patent infringement pursuant to Rule 12(b)(6). Plaintiff filed its First Amended
3  Complaint ("FAC") on November 2, 2023. Quince filed an Answer to the FAC on
4  November 16, 2023.

5  The parties anticipate filing a joint motion for a protective order governing the
6  confidentiality of certain information exchanged in this matter. In addition, the Parties
7  anticipate motions for summary judgment on all claims for which the facts warrant
8  such a motion. The Parties believe that the information obtained during discovery will
9  determine whether summary judgment is appropriate. The parties further anticipate the
10 need for *Daubert* motions and motions in limine should litigation proceed to trial.

### D. AMENDMENT TO PLEADINGS

Plaintiff anticipates amending its operative complaint to include recently discovered additional claims of infringement by Defendant, and is currently conferring with Defendant's counsel regarding such amended pleading. Plaintiff may seek leave to amend its complaint to add additional parties, including but not limited to the supplier and/or manufacturer of the Accused Product, or to include additional claims that it may discover are appropriate after conducting discovery.

Plaintiff proposes a March 11, 2024 deadline for amending the pleadings.

### E. EVIDENCE PRESERVATION

The Parties have reviewed the *Guidelines Relating to the Discovery of Electronically Stored Information* ("ESI"). The Parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

In addition, the Parties agree and propose that the following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B). ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced: backup systems and/or tapes used for disaster recovery; systems no longer in use that cannot be accessed. Among the

sources of data the parties agree are not reasonably accessible, the parties agree not to preserve, search, or collect the following: emails; voice messages; information from handsets, tablets, PDAs and mobile devices that is duplicative of information that resides in a reasonably accessible data source; video and audio recordings; instant messaging and chat application data; automatically saved versions of documents and emails; deleted, slack, fragmented, or other data accessible only by forensics; systems, server, and network logs; RAM, temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; online access data such as temporary internet files, history, cache, cookies, and the like; dynamic fields of databases or log files that are not retained in the usual course of business; data in metadata fields that are frequently updated automatically (such as last opened dates).

## F. **DISCLOSURES**

The Parties served Rule 26(a)(1) Initial Disclosures on January 5, 2024.

## G. **DISCOVERY**

Plaintiff served interrogatories and requests for production on Quince on January 5, 2024. The Parties have not served any other discovery requests.

The parties propose a non-expert discovery cut-off date of September 27, 2024.

### 1. Scope of Anticipated Discovery

The Parties currently anticipate that discovery may be needed on subjects relevant to their asserted claims and defenses, which may include, without limitation and without waiving any objections or assertions of privilege, the following issues: the alleged infringement of Deckers' asserted trade dress; the alleged invalidity and unenforceability of Deckers' asserted trade dress; the alleged infringement of the '161 Patent; the alleged invalidity and unenforceability of the '161 Patent; Deckers' claim for damages; and Quince's affirmative defenses.

### 2. Protective Order

The Parties agree that a protective order will be necessary in this case in light of the confidential, proprietary, or private personal information that will be exchanged

during discovery. The Parties intend to submit a joint stipulated protective order by no later than January 26, 2024.

### 3. Limits to Discovery Requests and Depositions

The Parties agree that the limitations on discovery requests and depositions set forth in the Federal Rules and Local Rules should be amended such that each Party shall be limited to 15 total hours of depositions of fact witnesses. The Parties do not believe that there should be any other changes to the limitations on discovery imposed by the Federal Rules or Local Rules.

### 4. Electronic Service and Production of Documents

The Parties agree to service of any documents or ESI via email or other electronic means, but the Parties may still use any other method of service provided for under the Federal Rules (e.g., mail, hand delivery) so long as notice is given to opposing counsel via email on the date of service using any other method allowed.

Unless agreed otherwise, the Parties shall produce all documents in either .PDF or TIFF format, except for Microsoft Excel (e.g., .XLS, .CSV, etc.), Microsoft PowerPoint (.PPT), and Audio and/or Video Multi-Media (e.g., .MP3, .WAV, etc.), which shall be produced in native format. The Parties may enter into a suitable eDiscovery agreement and will meet and confer as the need arises during discovery.

If production of a particular document warrants a different format, the Parties agree to cooperate in arranging for a mutually acceptable production of such documents. The Parties agree not to degrade the readability of documents or searchability of ESI as part of the document production process. Should issues arise regarding the service of documents or the production of ESI, the Parties agree to meet and confer in good faith to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Should any email with attached files exceed 10 MB in size, the Parties agree to send such files via secure electronic file transfer or on a flash memory drive sent via overnight courier.

### 5. Expert Discovery

The parties agree that the protections provided in FRCP 26(b)(4)(B) and (C) will apply equally to expert declarations as they do to expert reports, including both drafts of declarations and communications related to declarations. Pursuant to FRCP 26(b)(4), draft expert reports, notes, outlines, and any other writings leading up to an expert's final report(s) are exempt from discovery. In addition, all communications with and all materials generated by an expert with respect to his or her work on this action are exempt from discovery unless relied upon by the expert in forming his or her opinions. If an expert produces a report, the expert must produce his or her final report and identify all materials on which he or she relied.

## H. CLASS ACTIONS

The current action is not a putative class action.

## I. RELATED CASES

There are currently no related cases or proceedings pending before another judge of this court, or before another court or administrative body.

## J. RELIEF

<u>Plaintiff's Statement of Relief Sought:</u>

For infringement of Deckers' Patents, Plaintiff may seek damages corresponding to Defendant's "total profits" under 35 U.S.C. § 289 or a reasonable royalty, and damages for infringement of Deckers' Trade Dress under 15 U.S.C. § 1117(a) in an amount equal to: (i) Defendant's profits; (ii) damages sustained by Deckers; and (iii) the costs of this action. Deckers currently does not have all the details necessary to calculate a precise amount of damages. This amount would be in addition to damages sustained, costs of this action, and if support by facts uncovered in discovery, attorneys' fees as a prevailing party in a trademark or patent case under 15 U.S.C. § 1117(a) and 35 U.S.C. § 285.

For infringement of Deckers' Patents, Deckers intends to seek damages under 35 U.S.C. § 289. Under § 289, an infringer of a design patent is liable to the patent holder

"to the extent of his total profit." Although "a patentee may not recover both infringer profits and additional damages under § 284" for a design patent, courts leave it to the design patent owner to elect between seeking an award under Section 284 or Section 289. *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002); *Nordock, Inc. v. Sys., Inc.*, 803 F.3d 1344, 1357 (Fed. Cir. 2015), vacated, *Sys., Inc. v. Nordock, Inc.*, 137 S. Ct. 589 (2016) (noting that it was an error to award damages under Section 284 and ignore a design patentee's choice to seek an infringer's profits under Section 289). Deckers currently does not have all the details necessary to calculate a precise amount of damages.

Deckers also intends to seek treble damages and an award of its attorneys' fees and costs under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117 to the extent evidence yet-to-be obtained through discovery shows that this is an "exceptional case" and/or that Defendant willfully infringed Deckers' Trade Dress or Deckers' Patents. Deckers further reserves its right to seek punitive damages to the extent supported and allowed under California common law. *See, e.g., Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*, 2010 U.S. Dist. LEXIS 147813, at *10 (C.D. Cal. Dec. 15, 2010).

Finally, in addition to monetary damages, Deckers seeks a Permanent Injunction enjoining Defendant from manufacturing, importing, advertising, marketing, distributing in commerce, offering for sale, and selling Accused Products or any other products that bear a design substantially similar to the design of Deckers' patent and/or confusingly similar to the overall appearance of Deckers' trade dress. Deckers also seeks injunctive relief enjoining Defendant from committing any further acts that falsely represent Defendant's goods and services are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Deckers and its products. *See, e.g., Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1182 (C.D. Cal. 2010).

<u>Defendant's Statement of Relief Sought</u>:

Quince seeks dismissal with prejudice of Deckers' claims and entry of judgment in favor of Quince, specifically a judgment that Quince does not infringe any asserted trade dress or the '161 Patent and that the asserted trade dress and '161 Patent are invalid and/or unenforceable. Quince may also seek fees and costs, including attorneys' fees pursuant to 35 U.S.C. § 285, and such other and further relief as the Court deems proper. Deckers has not identified the amount of damages sought or the bases on which any such damages are to be calculated. Therefore, Quince is unable to provide a responsive statement regarding the bases on which damages should be calculated if liability is sustained. Quince believes no injunction is necessary because Quince does not infringe Deckers' trademark rights.

### K. SETTLEMENT AND ADR

The Parties intend at this time to stipulate to mediation with a Court-appointed mediator, with a proposed deadline of June 28, 2024 for completion of mediation.

### L. OTHER REFERENCES

The Parties agree, at this time, that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### M. NARROWING OF ISSUES

The Parties agree at this time that this case does not present legal issues that can be narrowed by agreement or motion.

### N. EXPEDIATED TRIAL PROCEDURE

The Parties agree at this time that this case is not suitable to be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

### O. SCHEDULING

The Parties propose the following schedule:

| | |
|---|---|
| Last Day to Amend Pleadings | March 11, 2024 |
| Last Day to Complete Mediation | June 28, 2024 |
| Fact Discovery Cut-off | September 27, 2024 |
| Expert Disclosures (Initial) | November 1, 2024 |

| | | |
|---|---|---|
| 1 | Expert Disclosures (Rebuttal) | December 6, 2024 |
| 2 | Expert Disclosures (Reply) | December 20, 2024 |
| 3 | Expert Discovery Cut-Off | January 10, 2025 |
| 4 | Daubert & Dispositive Motion Due Date | January 17, 2025 |
| 5 | Last Day to Hear MSJs | March 6, 2025 at 2pm ~~February 13, 2025~~ |
| 6 | Pretrial Statement | June 7, 2025 |
| 7 | Pretrial Conference | June 12, 2025 at 11am ~~March 20, 2025~~ |
| 8 | Trial | July 14, 2025 at 9am ~~April 14, 2025~~ |

**Q. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR**

**P. TRIAL**

Both Parties have demanded a jury trial on all issues so triable. Plaintiff estimates 3-4 court days for trial. Defendant estimates 5 court days for trial.

The Court sets four days for trial.

**PERSONS**

Plaintiff's Statement:

Plaintiff identifies that it owns and markets footwear under the trademarked brand UGG®, and that it owns a number of patents covering various styles of footwear it markets, including the UGG® Classic Ultra Mini described herein.

Defendant's Statement:

Quince certifies that it has no affiliated entities other than the named parties to report.

**R. PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**S. OTHER MATTERS**

The Parties do not currently believe there are any other issues affecting the status or management of this case.

|   |   |   |
|---|---|---|
|   | | Respectfully Submitted, |
| DATED: January 11, 2024 | | BLAKELY LAW GROUP |
|   | By: | /s Brent H. Blakely |
|   |   | Brent H. Blakely |
|   |   | Jamie Fountain |
|   |   | **Attorneys for Plaintiff** |
|   |   | **Deckers Outdoor Corporation** |
| DATED: January 11, 2024 | | MUNGER, TOLLES & OLSON LLP |
|   | By: | /s Zachary M. Briers |
|   |   | Zachary M. Briers |
|   |   | Adam W. Kwon |
|   |   | **Attorneys for Defendant** |
|   |   | **Last Brand, Inc. d/b/a Quince** |

## **CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated:   January 12, 2024

_____
UNITED STATES DISTRICT JUDGE