UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LAST BRAND, INC.,<br><br>Defendant. | Case No. 23-cv-04850-AMO (LJC)<br><br>**ORDER REGARDING DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 52 |

## I.     INTRODUCTION

This case has been referred to the undersigned magistrate judge for discovery. Plaintiff Deckers Outdoor Corporation (Deckers), which owns the "UGG" footwear brand, brings trade dress infringement claims against Defendant Last Brand, Inc. d/b/a Quince (Quince), as well as one patent infringement claim. Fact discovery is scheduled to close on September 27, 2024. ECF No. 32 at 11. The Court has reviewed the parties' pending joint statement regarding Deckers's requests for production of documents, ECF No. 52, and now orders as follows.

## II.    ANALYSIS

### A.     Dispute Regarding Entry of ESI Order

Quince seeks entry of this District's Model Stipulated Order Regarding Discovery of Electronically Stored Information (the Model EIS Order). Although Quince does not specifically address the distinction, it cites provisions of the version of the Model ESI Order tailored to patent litigation. Deckers argues that an ESI order is not necessary in this case because the discovery at issue is relatively straightforward. Quince contends that entry of the Model ESI Order is required "where practicable" by Judge Martínez-Olguín's standing order.

The standing order only calls for use of the Model ESI Order (where practicable) for "parties who seek a[n] . . . order regarding discovery of electronically stored information."

Standing Order for Civil Cases Before District Judge Araceli Martínez-Olguín, § I.4. In this Court's view, that standing order does not speak to circumstances where one party opposes entry of an ESI order altogether. That said, the Northern District of California has prepared and approved the Model ESI Order to streamline discovery and avoid potential ambiguities in parties' responsibilities for preservation and production of electronically stored information, and Deckers has offered no reason why it should not be used in this case other than the fact that Deckers believes it to be unnecessary.

The Court finds that entry of some form of ESI order is appropriate here. It is not clear that the version of the Model ESI Order intended for patent cases is necessary or appropriate in this case, which alleges infringement of one non-technical patent[1] along with other non-patent claims. The parties are ORDERED to meet and confer regarding entry of an ESI order. If they do not agree to use either version of the Model ESI Order as written, they must meet and confer either in person or by videoconference regarding any disagreements. The parties shall file no later than August 28, 2024 either: (1) a stipulation attaching a proposed ESI order; or (2) a joint letter not exceeding five pages attaching their respective proposals. Any proposed ESI order must also include a declaration as required by section I.4 of Judge Martínez-Olguín's standing order.[2]

If *both* parties agree that an ESI order is not necessary in light of the ruling below on the current dispute regarding Deckers's requests for production, they may file a stipulation to that effect. But if Quince continues to believe an ESI order is necessary, the parties must comply with the instructions above to submit such an order for approval.

### B. Dispute Regarding Production of Documents

Turning to the parties' dispute regarding document production, this case concerns

---

[1] The only claim of the patent at issue reads, in full, as follows: "The ornamental design for a footwear upper , as shown and described." ECF No. 25-1 at 2. The description consists solely of references to diagrams showing that ornamental design. *Id.* This Order cites the copy of the patent included as Exhibit A to Deckers's First Amended Complaint, because although Deckers's operative Second Amended Complaint continues to reference that exhibit, no such exhibit was filed with that version of the Complaint. *See* ECF No. 34.

[2] Although the standing order for the undersigned magistrate judge applies to discovery disputes going forward, this Order specifically incorporates Judge Martínez-Olguín's requirement for a declaration regarding any proposed ESI order.

1  allegations that Quince infringed Deckers's trade dress with respect to three footwear products that
2  Deckers sells under the names "Ultra Mini," "Bailey Button," and "Tasman," as well as
3  infringement of a patent for the design of the Ultra Mini product. All of those products fall within
4  Deckers's "UGG" brand. Deckers seeks production of all documents containing any of the
5  following terms: "Ultra Mini," "Bailey Button," "Tasman," or "UGG." *See* ECF No. 52-2 at 3
6  (Request No. 23); ECF No. 52-3 at 3–4 (Request Nos. 76, 77). Quince is willing to produce
7  documents that contain the first three search terms from certain custodians. ECF No. 52 at 3.
8  Deckers has agreed to limit its request to certain custodians. *Id.* at 2.

9      It is not clear whether the parties have already agreed to specific custodians, as opposed to
10 merely the principle of limiting this search to custodians. If the parties have already agreed on
11 which custodians will be used, Quince is ORDERED to produce documents from those custodians
12 containing the three undisputed search terms no later than September 4, 2024. If the parties have
13 not yet agreed on custodians, they shall meet and confer and file no later than August 28, 2024
14 either: (1) a stipulation identifying the custodians to be searched and a deadline for production of
15 documents containing the undisputed search terms; or (2) a joint letter setting forth their respective
16 positions on those issues.

17     Quince contends that the term "UGG" is overly broad and not sufficiently tailored to
18 Deckers's claims regarding infringement of three specific products, and that its inclusion would
19 violate the Model ESI Order, specifically paragraphs 7 and 11 of the patent litigation Model ESI
20 Order. ECF No. 52 at 5–6. Paragraph 7 reads, "Email production requests shall only be
21 propounded for specific issues, rather than general discovery of a product or business." Paragraph
22 11 includes the sentence, "Indiscriminate terms, such as the producing company's name or its
23 product name, are inappropriate unless combined with narrowing search criteria that sufficiently
24 reduce the risk of overproduction." The relevant prohibition of paragraph 11 is explicitly limited
25 to search terms based on the *producing party*'s product or company name, which is not what
26 Deckers seeks here. Paragraph 7 can reasonably be understood as implying the same. Deckers
27 seeks production of Quince's documents containing *Deckers*'s brand name, which is not so
28 inherently overbroad as if Deckers sought all documents related to Quince's business or certain of

1 Quince's products.

2 That said, the Court agrees that production of all documents in Quince's (or certain 3 custodians') possession containing Deckers's well-known brand name *might* not be proportional to 4 the needs of this case alleging trade dress infringement of only three specific products and patent 5 infringement as to one of them. *See* Fed. R. Civ. P. 26(b)(1). On the other hand, it is not hard to 6 imagine that documents related to those products might not contain their specific product names in 7 the precise form provided in the other search terms, and that *some* documents that lack those terms 8 but contain the word "UGG" might be relevant.

9 As Deckers notes, a defendant's knowledge of an existing product and intent to copy it can 10 be relevant to showing consumers' likelihood of confusion, even though it is not a necessary 11 component of that element of the claim. ECF No. 52 at 4 (citing *Fleischmann Distilling Corp. v.* 12 *Maier Brewing Co.*, 314 F.2d 149, 157–58 (9th Cir. 1963); *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 13 230 F. Supp. 3d 1161, 1177 (C.D. Cal. 2017)); *see Acad. of Motion Picture Arts & Scis. v.* 14 *Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991). Supposing hypothetically 15 that one of Quince's employees sent an email stating "we should sell a version of these UGG 16 boots" with a photograph of one of the products at issue—or perhaps even stated their intent to sell 17 something resembling UGG boots more generally, before bringing one of the allegedly infringing 18 products to market—such correspondence would likely warrant production. It is also possible, 19 though, that Quince's employees might have discussed a competing brand for any number of other 20 reasons besides conveying intent to copy that competitor's trade dress. The efforts that Quince 21 must take to sort potentially relevant documents from potential background noise will depend on 22 the burden involved.

23 Accordingly, no later than one week after the parties have an agreement or court order 24 designating custodians,[3] Quince shall search those custodians' records and determine how many 25 documents contain the word "UGG" without also containing one of the search terms Quince has 26 already agreed to produce. Quince shall share that number with Deckers, and the parties shall

---

[3] As noted above, it is not clear whether the parties have already reached such an agreement. If they have, this deadline runs from the date of this Order.

4

1  meet and confer as to appropriate treatment of those documents.  Depending on the number of

2  documents at issue, and (if feasible) a preliminary review by Quince regarding the nature of those

3  documents, potential approaches might include but are not limited to: (1) production of all

4  documents in that set; (2) review by Quince to identify and produce documents within that set that

5  relate to the products at issue despite not naming them specifically; or (3) adding other search

6  terms or search parameters, such as a date range, to narrow that universe of documents for review

7  or production.  No later than one week after Quince discloses the number of documents at issue,

8  the parties shall file either a stipulation as to the treatment of such documents or a joint letter

9  setting forth their respective positions.

### III.   CONCLUSION

The parties are ORDERED to meet and confer regarding entry of an ESI Order, and to file either a stipulation or joint letter addressing that issue no later than August 28, 2024.

If the parties have agreed to specific custodians, Quince is ORDERED to produce documents containing the three undisputed search terms no later than September 4, 2024.  If the parties have not agreed to custodians, they shall meet and confer and file a stipulation or joint letter addressing custodians and a deadline for production no later than August 28, 2024.

No later than one week after the custodians are determined, Quince shall disclose the number of documents in those custodians' records that contain the disputed search term "UGG" but not any of the agreed search terms.  No later than one week after Quince discloses that number of documents, the parties shall meet and confer and file either a stipulation or a joint letter addressing the treatment of those documents.

This Order terminates ECF No. 52.

**IT IS SO ORDERED.**

Dated: August 21, 2024

LISA J. CISNEROS
United States Magistrate Judge