Xinlin Li Morrow (SBN 281707)
xinlin@moni.law
Zhener Low (SBN 355279)
zhener@moni.law
MORROW NI LLP
3333 Michelson Drive Suite 300
Irvine, California 92612
Telephone:     (213) 282-8166

*Attorneys for Defendant Last Brand, Inc. d/b/a Quince*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Deckers Outdoor Corporation,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>Last Brand, Inc. d/b/a Quince,<br><br>　　　　*Defendant*. | Case No. 3:23-cv-04850-AMO (LJC)<br><br>Hon. Araceli Martínez-Olguín<br>Hon. Lisa J. Cisneros<br><br>**OBJECTION TO PLAINTIFF'S "REPLY" (ECF NO. 67)** |

Defendant Last Brand, Inc. d/b/a Quince objects to the unpermitted and unsolicited September 12, 2024 filing of Plaintiff's purported 8-page "Reply" to Quince's 2-page discovery letter brief. ECF No. 67 ("Reply"). This is Plaintiff's latest in a series of its multiple violations of the Court's orders on this matter, and the filing is unfair to Defendant both substantively and as a matter of process. Quince respectively seeks the Court's leave to respond to Plaintiff's "Reply", and/or for Plaintiff's "Reply" to be stricken and disregarded.

### A. Plaintiff's Recent Violations of Court Orders

As the Court is aware, on September 5, 2024, Plaintiff abruptly filed a 4-page ex parte "declaration" by its counsel, containing case law and argument, discussing the parties' discovery dispute over, among other things, their already-agreed Stipulation filed by Plaintiff on September 4, 2024. ECF No. 62 (Declaration). Plaintiff (1) had given Quince only a few hours' notice of this ex parte filing, (2) gave Quince no opportunity to engage in prior meet-and-confer or a joint discovery letter process, and (3) did not even style or constrain the 4-page filing as single-party 2-page discovery letter brief, as the standing order required. In other words, Plaintiff violated the standing order on various fronts. Standing Order, at 4-5, Section 5 (meet-and-confer, joint letter process).

Faced with this non-compliant filing, Quince endeavored to comply nonetheless with the court's standing order, filing its 2-page single-party discovery letter brief. ECF No. 63. The Court then issued its order on September 6, 2024, specifically ordering that Plaintiff file a "declaration" containing specific content by September 11, 2024. ECF No. 65.

Plaintiff did so, airing its position in a 5-page declaration with 12 exhibits. ECF No. 66. But just a day later, on September 12, 2024, Plaintiff also filed an 8-page "Reply" to Quince's September 5, 2024 2-page discovery letter. This "Reply" is improper. First, it disregards the Court's September 6, 2024 order, which limited Plaintiff to a declaration (which it already filed). Second, the "Reply" is not permitted by, and violates, this Court's Standing Order with respect to the joint discovery letter procedure for discovery disputes. Standing Order, at 4-5, Section 5. No Reply brief to a party's discovery letter is allowed as a matter of right. Instead, after the filing of the discovery letter(s), "[t]he Court will review the submission(s) and determine whether formal briefing or proceedings are necessary." Id. Indeed, that is presumably what the Court did via its September 6 order in limiting

Plaintiff to a follow-up declaration. Plaintiff has no basis to unilaterally disregard the court's already-exercised authority to discipline further briefing, by filing whatever it likes. Essentially, Plaintiff has filed 17 pages of briefing and double-digit exhibits across 3 rounds of briefing (2 unpermitted), where Quince filed 2 pages in 1 round.

This sequence of events is particularly unsettling in view of Plaintiff's conduct in the lead-up to the parties' respective filed joint discovery letters of September 12-13, 2024. ECF Nos. 68, 69. Contemplating that each of Plaintiff and Defendant intended to raise other discovery issues to the Court, counsel had agreed during meet-and-confer on September 5, 2024 to exchange their portions of their own affirmative joint discovery letters simultaneously, for eventual filing by September 12, 2024, in compliance with deadlines as calculated according to the Court's standing order. Quince sent its draft affirmative letter to Plaintiff on September 5, 2024. There was no response, so Quince followed up on September 10, 2024. Plaintiff indicated that it had been busy attending to the court's ordered filing of its declaration. Eventually, Plaintiff only sent Plaintiff's draft affirmative letter, as well as its response to Quince's affirmative letter, to Quince one hour before the close of business on September 12, 2024 itself. Quince had to scramble, at the eleventh hour, to write its entire response and review Plaintiff's response, to timely file on September 12, 2024. It now emerges that Plaintiff's delay was to accommodate its unpermitted preparation and filing of "Reply" also on September 12, 2024. Quince objects to this lack of professional courtesy and misleading gamesmanship.

The Standing Order specifies that "[u]njustified delay or refusal to participate meaningfully in the formal meet and confer or in the preparation of the joint letter may be grounds for entry of an order adverse to the delaying or non-participating party." Standing Order, Section 5. There are good grounds here to enter an order against Plaintiff for its deliberate violations and delay.

### B. Scope of Quince's Intended Response to Plaintiff's Reply

Plaintiff's "Reply" makes wide-ranging and unsupported accusations, from accusing Quince of possible spoliation of evidence simply because Quince disagrees with Plaintiff's position, to imputing a lack of honesty and candor to Quince's counsel, suggesting she breached duties to Plaintiff and deliberately made misleading misrepresentations. Quince will show in its intended

response why these serious allegations are improper and baseless. Notably, Plaintiff never explains how they were a babe-in-the-woods victim of misrepresentations when the Court specifically referred to the Case Management Order's limits on e-mail discovery (ECF No. 60) and directed parties to clarify scope in their ESI stipulation. Quince proposed one additional paragraph that explicitly addressed the email limitation in plain language; Plaintiff reviewed the paragraph (and took issue with another part of it, i.e., instant messaging) but otherwise agreed with and filed the revised stipulation.

Plaintiff screen grabs selective portions from the parties' meet-and-confer that allegedly refer to potential email production, suggesting Quince changed its position on e-mails. Plaintiff leaves out the broader context, which Quince will address. Quince has consistently objected to Plaintiff's overbroad definition of "documents," and to Plaintiff's requests themselves to the extent they exceed the scope of the parties' agreement. See ECF No. 66-2, at 4, 17; ECF No. 66-4, at 4, 27-28. The parties' agreement has long been encapsulated in curtailment on emails in the Joint Case Management Statement and Order, and any doubt over this was clarified in the process leading to the joint stipulation filed on September 4, 2024. ECF No. 61. Quince's efforts to discuss (rejected) offer of compromises that might include selective e-mail production for narrow search terms, to avoid unnecessary motion practice and in the spirit of meet-and-confer, should not weaponized by Plaintiff and held against (or touted to modify) the parties' actually-recorded agreements and binding orders.

Indeed, throughout discovery and meet-and-confer, Quince has been consistent in its position that any ESI discovery be disciplined, as indicated by its constant reminders to Plaintiff to consider entering into an appropriate Model ESI Order (Patents) (which heavily limits e-mail production by specificity of request and scope).[1] While, to avoid motion practice, Quince's new counsel may have been compromise-forward and did not actively wield the Joint Case Management Statement and Order, the fact is that **no new agreement was reached** despite efforts, so existing

---

[1] Indeed, Plaintiff's previous continuous refusal to enter into the Model ESI Order shows its constant disregard for courts' standing orders, since the entry into a model order was mandated by Judge Martínez-Olguín's then-applicable standing order.

agreements stand. It is entirely reasonable to experimentally soften positions to explore potential consensus—Quince should not be punished (as Plaintiff seeks) for trying to be cooperative earlier, if discussions nonetheless fell through.

Finally, Plaintiff again suggests Quince does not want to "provide any ESI in this case whatsoever." ECF No. 67. That is sweeping and untrue. See ECF No. 63 (Quince's discovery letter).

| | |
|---|---|
| DATED: September 13, 2024 | */s/ Xinlin Li Morrow* <br> Xinlin Li Morrow (SBN 281707) <br> xinlin@moni.law <br> Zhener Low (SBN 355279) <br> zhener@moni.law <br> Morrow Ni LLP <br> 3333 Michelson Drive, Suite 300 <br> Telephone: (213) 282-8166 <br><br> *Attorneys for Defendant Last Brand, Inc. d/b/a Quince* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.

/s/ Xinlin Li Morrow
Xinlin Li Morrow