1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   DECKERS OUTDOOR CORPORATION,          Case No. 23-cv-04850-AMO   (LJC)
                      Plaintiff,
8
9             v.                           **ORDER RESOLVING JOINT
                                           DISCOVERY BRIEFS**
10  LAST BRAND, INC.,
                                           Re: Dkt. Nos. 68, 69
                      Defendant.
11

12          Before the Court are two joint discovery letter briefs in a trade dress and patent

13  infringement action brought by Deckers Outdoor Corporation (Deckers) against Last Brand, Inc,

14  d/b/a Quince (Quince). The Court has reviewed the parties' pending joint discovery briefs, ECF

15  Nos. 68 and 69, and now orders as follows.

16  **I.      JOINT DISCOVERY LETTER, ECF NO. 68**

17          This letter raises two issues: whether Deckers must respond to fifteen "Amended

18  Interrogatories" served on June 21, 2024, and whether Deckers must produce settlement

19  agreements from prior intellectual property infringement cases. ECF No. 68 at 1, 3. The Court

20  addresses these disputes in turn.

21          **A.      Dispute Regarding "Amended Interrogatories"**

22          Quince's request for relief is denied, as the amended interrogatories included fifteen

23  additional interrogatories beyond the twenty-five interrogatory limit established by Rule 33 of the

24  Federal Rules of Civil Procedure.  Quince served these additional requests without a stipulation or

25  court order in violation of Rule 33. ECF No. 68 at 3; Fed. R. Civ. P. 33.

26          This denial, however, is without prejudice to Quince filing a new joint discovery letter that

27  seeks a court order allowing it to serve additional interrogatories.  For the reasons explained at the

28  hearing, the Court believes that this dispute, as presented, reflects a lack of cooperation which is

essential to discovery.  Quince stipulated to allow Deckers to file its Second Amended Complaint, which identified two additional infringing products.  ECF No. 34.  It is entirely appropriate for Quince to seek discovery related to the newly alleged infringing products.  The parties should have met and conferred to discuss a stipulation that allows Quince the necessary opportunity to seek information, via interrogatories, regarding the two additional infringing products.  A blanket refusal by Deckers to allow Quince to serve sufficient interrogatories to collect written discovery regarding to two newly alleged infringing products would be unreasonable.  The parties shall try again to resolve this issue by meeting and conferring to agree upon an appropriate stipulation to allow additional interrogatories or a further deposition if that is a more sensible method for discovery related to the relevant issues.  If the parties are unable to reach a stipulated agreement through their next meet and confer before September 24, they shall appear for another meet and confer in person at Courtroom G on September 26, 2024.

**B.**     **Dispute Regarding Request to Compel the Production of Settlement Agreements**

At the hearing, upon questioning by the Court, Deckers confirmed that it has not entered into any licensing agreements in settling any other trademark or patent infringement cases regarding the three products at issue in this case.  The Court understands Decker's representation to include any settlement agreement that establishes a license agreement by its express terms or as a practical matter without using the magic words "license agreement" or similar wording.  While licensing agreements, including those entered into as part of settlement agreements, can be relevant to calculate reasonable royalties, Quince has not explained how settlement agreements that do not contain licensing provisions are relevant.  *See* 25 U.S.C. § 284; *In re MSTG, Inc.,* 675 F.3d 1337, 1348 (Fed. Cir. 2012); *Barnes & Noble, Inc. v. LSI Corp.,* No. C 11-02709, 2012 WL 6697660, at *1 (N.D. Cal. Dec. 23, 2012) (finding that license agreements were relevant to a reasonable royalty rate and thus potential damages.)

Quince also argues the settlement agreements are relevant to its demand for an award of attorneys' fees based on the Patent Act's fee-shifting provision, which authorizes district courts to award attorneys' fees to prevailing parties in "exceptional cases."  35 U.S.C. § 285.  The Supreme

United States District Court
Northern District of California

Court has held that "an 'exceptional case' is one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). While district courts have broad discretion in determining that a case is "exceptional" under 35 U.S.C. § 285, "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285" *Thermolife International LLC v. GNC Corporation*, 922 F.3d 1137, 1363 (Fed. Cir. 2019) (emphasis removed).  But simply "filing a large number of suits, by itself," is not evidence of litigation abuse, as a patent-holder may file numerous suits for entirely legitimate reasons.  *Id.*  ("A patent might apply in similar fashion to the activities of numerous persons, such as numerous sellers of similar products, and a patentee may have a legitimate interest in pressing reasonably grounded claims against all or many of them, whether to obtain compensation or to deter disregard of these or other patent rights or for other reasons.")

Quince claims that Deckers has filed close to 400 lawsuits in fifteen years and "[a]ll but two" resolved in a "default judgment or settlement," which it argues show that this case is part of Deckers' strategy of filing baseless cases to extract nuisance level settlements.  ECF No. 68 at 4. Quince's argument fails.  Quince has provided no evidence that Deckers' prior cases were frivolous or were settled quickly to avoid the merits of the cases being reached.  *See id.* at 3-5. (While the contents of prior settlements are obviously not public—thus creating Quince's claimed need for their disclosure—other indicia of the alleged frivolity of Deckers' prior suits, such as the claims in the case, rulings on initial disputes and dispositive motions, and length of time until resolution, is.)  A cursory review of prior cases confirm that Deckers, rather than serially filing and settling before actual claims could be addressed, regularly engaged in substantial litigation that reached the merits of its claims.  *See Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*, 45 F.Supp.3d 1181, 1185 (C.D. Cal. 2014) (granting in part defendant's motion to dismiss with partial leave to amend); *Deckers Outdoor Corporation v. Rue Services Corporation*, CV 13-6303,

United States District Court
Northern District of California

2013 WL 12139134 (C.D. Cal. Dec. 23, 2013) (denying Deckers' motion to dismiss the defendant's counterclaim); *Deckers Outdoor Corporation v. JustFab Inc.*, CV 15-07023, 2016 WL 7469584 (C.D. Cal. Feb. 9, 2016) (granting Deckers' motion to file a second amended complaint, after defendant filed multiple motions to dismiss); *see generally Deckers Outdoor Corporation v. Romeo & Juliette, Inc.*, CV 15-02812 (C.D. Cal. Aug. 8, 2018).

Quince's argument that the current case is part of Deckers' "business model" of filing identical, baseless lawsuits is highly speculative, and accordingly, it has not demonstrated that Deckers' settlement agreements in prior cases are relevant. *See id.* Its request for Deckers to produce settlement agreements is accordingly denied.

## II.   JOINT DISCOVERY LETTER, ECF NO. 69

This letter addresses three issues: the sufficiency of Quince's 30(b)(6) deposition, Quince's responses and objections to written discovery, and whether Quince may depose Deckers' former CEO. The Court addresses these disputes in turn.

### A.   Quince's 30(b)(6) Deposition

Deckers claims that Quince's 30(b)(6) witness, CEO Siddhartha Gupta, was unprepared to testify about Quince's search for responsive documents, and that Quince's counsel improperly instructed Mr. Gupta to not answer questions about prior cease-and-desist letters Quince received regarding alleged intellectual property infringement and Quince's financial condition.

Quince claims that, in a prior meet and confer video call, Deckers "agreed to no longer pursue" questioning regarding Quince's search for responsive documents. ECF No. 69 at 3. At the hearing, Deckers disputed this and confirmed that it was seeking testimony regarding Quince's efforts to search for responsive documents. The parties shall meet and confer to identify an appropriate deponent and schedule the deposition as to this topic. Alternatively, if the parties agree to do so, they may forgo the deposition and Quince shall provide a declaration to Deckers describing, in detail, its efforts to search for responsive documents.

Deckers listed "Accusations of intellectual property infringement alleged against DEFENDANT, including lawsuits and cease and desist COMMUNICATIONS related to products sold or offered for sale by DEFENDANT" as a topic for its 30(b)(6) deposition of Quince's

witness, and, at the deposition, asked if Quince had "ever received any cease and desist letters related to intellectual property infringement." ECF No. 69-1 at 4, 5. Quince's counsel objected to the question on the basis of relevance, and Quince's witness responded that the question sought "privileged communications." *Id.* at 4. Quince claims that the request for prior accusations of intellectual property infringement is "overly broad, unduly burdensome, and has minimal relevance." ECF NO. 69 at 3.

The Court disagrees with Quince that this request has minimal relevance. While "prior acts evidence is inadmissible to show behavior in conformity with a propensity or character trait," it "may be used to demonstrate knowledge, intent, or absence of mistake." *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,* No. 208CV00105, 2010 WL 11578971, at *3 (D. Nev. Feb. 16, 2010) (referencing Fed. R. Evid. 404(a), (b)). The Ninth Circuit has recognized that prior findings of intellectual property infringement can be relevant to show a defendant's intent: "An infringer, once caught, should have his conduct carefully scrutinized in any future operations so as to determine his intent in going as far as he does. He must be required to keep a safe distance away from the margin line." *Plough, Inc. v. Kreis Lab'ys,* 314 F.2d 635, 639 (9th Cir. 1963) (citations omitted). District courts have applied this reasoning to find that prior accusations of intellectual property infringement may be relevant to show intent. *See Burberry Limited v. Salim,* No. CV 12-02389, 2013 WL 12146120, at *4 (C.D. Cal. July 12, 2013) (finding that the defendant's claim that his infringement was unintentional was undercut by evidence that he had previously been sued for copyright infringement and had received a prior cease-and-desist letter from a third-party); *JUUL Labs, Inc. v. Chou,* 676 F. Supp. 3d 827, 845 (C.D. Cal. 2023) ("Past lawsuits filed against a defendant can serve as evidence of willfulness."); *Fifty-Six Hope Rd. Music,* 2010 WL 11578971, at *3 (finding that evidence showing defendant received "third party cease and desist demands" was discoverable, as it could be relevant to "impeach or rebut" defendant's claims that it took care not to infringe on others' intellectual property). Following these cases, the Court finds that prior accusations of intellectual property infringement against Quince may be relevant to show "knowledge, intent, or absence of mistake." *Fifty-Six Hope Rd. Music,* 2010 WL 11578971, at *3. Moreover, disclosure of this information may lead to evidence of an instance in which

1   Quince was "once caught" infringing intellectual property.  *Plough, Inc.,* 314 F.2d 635 at 639.

2         The Court finds that the deposition topic, as written, is overly broad and thus places an

3   undue burden on Quince to the extent that it asks about Quince's products in general, not just

4   those similar in nature to the intellectual property at issue in this case.  The Court directs the

5   parties to meet and confer to limit this topic to accusations of infringement of similar intellectual

6   property, such as shoes or apparel.

7         At the 30(b)(6) deposition, Quince's counsel instructed its witness not to answer questions

8   regarding Quince's revenue and profits.  ECF No. 69-1 at 3.  Quince claims these questions are

9   invasive of Quince's financial privacy and urges the Court to follow California privilege law and

10  bar discovery of this information.  The Court declines to do so.  Federal privilege law generally

11  applies in actions, like the instant one, where the Court has federal question jurisdiction.  *See*

12  *Wilcox v. Arpaio*, 753 F.3d 872, 876-77 (9th Cir. 2014); *Philhower v. Philhower*, No. 8:24-cv-

13  00074, 2024 WL 3914501 at *4 (C.D. Cal. July 8, 2024) ("Federal law governs privilege analysis

14  for cases, such as this, where subject matter jurisdiction is based on the existence of a federal

15  question.")  The cases Quince cites in support of its proposition that the Court must follow

16  California privilege law at most suggest that the Court may consider California's privacy privilege

17  law, not that it is obligated to follow it.  *See Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.*, 163

18  F.R.D. 584, 588 (C.D. Cal. 1995) ("To the extent that [the California Constitution] creates a state

19  privilege against disclosure, it would not be entitled to legal recognition in a federal question case

20  pending in federal court.  However, if state doctrine promoting confidentiality does not conflict

21  with federal interest, it *may* be taken into account[.]") (citations omitted) (emphasis added);

22  *Lallemand v. County of Los Angeles*, No. LA CV17-00781, 2018 WL 6136816, at *13-14 (C.D.

23  Cal. June 12, 2018) (holding that the magistrate judge's decision to apply California privilege law

24  where there was federal question jurisdiction, thus deferring discovery of financial conditions until

25  after trial, was not "clearly erroneous"); *Stella Sys., LLC v. MedeAnalytics, Inc.*, No. 14-cv-00880,

26  2015 WL 850219, at *3 (N.D. Cal. Feb. 25, 2015) (in federal *diversity action* based on California

27  law, the Northern District is not bound by California financial privilege law, but "may apply the

28  rule as one of state-law privilege or privacy protection.").  District courts have regularly held that

United States District Court
Northern District of California

1   discovery regarding financial information is appropriate where the plaintiff seeks punitive

2   damages. *See Blockchain Innovation, LLC v. Franklin Resources, Inc.*, No. 21-cv-08787, 2024

3   WL 3184648, at *1 (N.D. Cal. June 26, 2024).

4       As Quince has not demonstrated why the Court should apply California privilege law,

5   there is no corresponding federal privilege regarding financial privacy, and the information sought

6   is relevant to Deckers' request for punitive damages, the Court directs Quince to identify a

7   deponent who can testify to Deckers' 30(b)(6) Topic No. 76 ("DEFENDANT'S annual revenue,

8   income, and profits from 2019 to present.") and proceed with the deposition. ECF No. 69-1 at 5.

9       At the hearing, Deckers stated that it would accept Quince's annual profit and loss

10   statements from 2019 to the present in lieu of questioning Quince's 30(b)(6) deponent about Topic

11   No. 76.  If Quince agrees to this, or if the parties agree to another way for Deckers to obtain the

12   requested information regarding Quince's revenue, income, and profits, it would be unnecessary

13   and duplicative to resume the 30(b)(6) deposition as to this topic.  This order does not preclude the

14   parties from forging the deposition and agreeing upon an alternative method of discovery to

15   convey the information that Deckers is entitled to.

16      **B.**      **Disputed Responses to Written Discovery**

17       Deckers argues that Quince's responses to Interrogatories 8, 23, and 24 are deficient to the

18   extent that the responses do not "provide in detail the circumstances Quince first became aware"

19   of the three Deckers products at issue.  ECF No. 69 at 3.  Quince's responses state the month and

20   year that Quince became aware of the products. ECF No. 69-1 at 7.  This is not responsive to the

21   portion of the interrogatories asking for an explanation of the circumstances under which Quince

22   first became aware of the products.  The Court directs Quince to supplement its responses to these

23   interrogatories to provide the requested detail.

24       To the extent that the parties agreed Quince was only required to respond regarding four

25   employees' awareness about the products, the Court directs the parties to further meet and confer

26   to clarify the scope of this agreement and for Quince to produce supplemental responses pursuant

27   to the agreement.

28       Deckers next claims that Quince's responses to Interrogatories 4, 15, and 16, which seek

information regarding how the three accused products were designed and supplied, are deficient. ECF No. 69 at 4.  Quince identifies the four individuals who were involved in the design and procurement of the products and the manufacturer of each product.  ECF No. 69-1 at 8.  Again, this is not responsive to the question, which asks Quince to describe "in detail *how*" the products at issue were designed. Quince claims that it produced documents that demonstrate how the products were designed and supplied and that it is producing 30(b)(6) witnesses to testify to these topics.  ECF No. 69 at 4.  The Court directs the parties to meet and confer further to determine if the information sought in these interrogatories has been obtained through other means.  If it has not been, the Court directs Quince to supplement its responses and include a detailed description of how the products were designed, and to provide this information through a deposition.

Lastly, Deckers seeks "[a]ll documents and communications in which another party accuses Defendant of infringing upon a trademark, trade dress, and/or design patent," including cease and desist letters. ECF No. 69-1 at 10. As discussed above regarding Quince's 30(b)(6) deposition, prior accusations of infringement may be relevant to show intent or absence of mistake. While it is appropriate for Quince to produce responsive documents, the Court finds that the request, as written, is overbroad to the extent it seeks publicly available information, including information regarding prior litigation, and information regarding accused infringement on intellectual property dissimilar to the intellectual property at issue in this lawsuit. The Court directs the parties to meet and confer to narrow the scope of this request and for Quince to respond accordingly.

### C.       Deposition of Deckers' CEO

"When a party seeks the deposition of a high-level executive," courts have "discretion to limit discovery where the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).  In determining whether to allow a so-called "apex" deposition, "courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id*.  The party resisting the deposition has the burden of showing

1   why discovery should be denied. *Id*.

2        Quince seeks to depose Deckers' former CEO, Dave Powers in order to obtain information

3   about "Deckers' corporate strategy of filing hundreds of lawsuits to force competitors out of the

4   market."  ECF No. 59 at 5.  At the hearing, Deckers represented that Mr. Powers did not have

5   unique or first-hand knowledge of these issues.  Moreover, Quince appears to be seeking this

6   information only to advance its "exceptional case" argument—that Deckers is a patent troll and, in

7   the event Quince prevails in this action, it is entitled to attorneys' fees because this case is part of

8   Deckers' pattern of filing frivolous intellectual property actions to extract nuisance-level

9   settlements.  *See* 35 U.S.C. § 285; ECF No. 68 at 3-4.  As discussed above, Quince's arguments

10  are speculative and it does not demonstrate how this information is relevant.  The Court denies

11  Quince's request to order the deposition of Mr. Powers.

**III.      CONCLUSION**

12        For the foregoing reasons, Quince's requests for the Court to order the production of

13  Deckers' settlement agreements and the deposition of Mr. Power are denied. The Court directs the

14  parties to follow this Order and meet and confer regarding the other issues raised in the Joint

15  Discovery Letter briefs.  If the parties are unable to reach a stipulated agreement consistent with

16  this Order before September 24, they shall appear for another meet and confer in person at

17  Courtroom G on September 26, 2024.

18

19

20        **IT IS SO ORDERED.**

21  Dated: 9/20/24

22

23

24                                                        _____
                                                        LISA J. CISNEROS
                                                        United States Magistrate Judge

25

26

27

28