1

2

3

4                               UNITED STATES DISTRICT COURT

5                              NORTHERN DISTRICT OF CALIFORNIA

6

7    DECKERS OUTDOOR CORPORATION,           Case No.  23-cv-04850-AMO   (LJC)

8                    Plaintiff,

                                            **ORDER REGARDING JOINT**
9           v.                              **DISCOVERY LETTER ADDRESSING**
                                            **DISCOVERY CUTOFF DISPUTES**
10   LAST BRAND, INC.,
                                            Re: Dkt. No. 114
11                   Defendant.

12   **I.      INTRODUCTION**

13          The Court previously denied an application by Plaintiff Deckers Outdoor Corporation

14   (Deckers) for a protective order to prevent Defendant Last Brand, Inc. (Quince) from obtaining

15   discovery from Google through a subpoena served after the close of fact discovery, without

16   prejudice to the parties filing a joint letter in compliance with this Court's Standing Order.  ECF

17   No. 113.  The parties have now filed that joint letter, which also addresses a dispute regarding

18   documents first disclosed by Deckers after the close of fact discovery.  ECF No. 114.  The Court

19   addresses those issues as follows.

20   **II.     QUINCE'S SUBPOENA**

21          Quince served a subpoena on Google LLC on January 23, 2025 requiring production of

22   two YouTube videos and documents sufficient to show when they were publicly available, as well

23   as Google's testimony at a deposition on February 7, 2025.  ECF No. 112-3.[1]  Fact discovery

24   closed several months earlier, on September 27, 2024.  ECF No. 32.

25          Further fact discovery taken after a cutoff date implicates the standard for relief from a

26

27   _____

     [1] The Court takes note of the copy of the subpoena attached to Deckers's unilateral application for
28   a protective order, but does not consider that non-compliant application for any other purpose in
     resolving the present joint letter.

1    scheduling order under Rule 16(b) of the Federal Rules of Civil Procedure.  "[T]he focus of the

2    inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent,

3    the inquiry should end."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.

4    1992) (citation omitted).

5        "Documents that have a direct bearing on the factual disputes in the case are the subject of

6    fact discovery, which often (as here) concludes before expert discovery so that the parties may rely

7    on a complete factual record to inform their own experts and depose their opponents' experts."

8    *United States v. N. E. Med. Servs.*, No. 10-cv-01904-CW (JCS), 2014 WL 7208627, at *5 (N.D.

9    Cal. Dec. 17, 2014).

10        Quince appears to have retained an expert to address whether the video is prior art to the

11    patent at issue.  Expert testimony may be relevant to discuss purported similarities between the

12    shoes in the video and Deckers's patent.  It seems unlikely, however, that Quince would rely on its

13    expert to opine on the question of whether or when the video was published to YouTube.  (If

14    Quince intended to do so, Quince presumably would not need to seek documents from Google

15    directly addressing those issues.)  The authenticity of the video and the date on which it was

16    published are questions of fact, which should have been addressed during fact discovery.

17        That said, Quince's lack of diligence here is minimal.  Quince asserts, and Deckers does

18    not dispute, that "Quince produced the videos [to Deckers] during fact discovery."  ECF No. 114

19    at 3; *see also id.* at 2 (Deckers's portion of the joint letter, acknowledging that at least one of the

20    videos was produced on September 25, 2024).  Quince's counsel might have at least somewhat

21    reasonably expected that there would be no dispute over whether a YouTube video was in fact

22    published on the date the YouTube website states that it was.

23        A *more* diligent attorney might have sought a stipulation of authenticity, served a request

24    for admission, or obtained documents confirming authenticity before the close of fact discovery.

25    But diligence is not a binary question, and "[d]iscovery under the Federal Rules of Civil Procedure

26    is not a game of 'gotcha.'"  *Martin v. Her*, No. 2:18-cv-1658 KJN P, 2019 WL 13374981, at *2

27    (E.D. Cal. July 29, 2019) (quoting *Grubbs v. Winn Dixie Props., LLC*, No. CIV.A. 15-182, 2015

28    WL 3892555, at *1 (E.D. La. June 17, 2015)).  The Court does not find Quince's error here so

United States District Court
Northern District of California

2

1    incompatible with diligence as to preclude the very limited discovery at issue. Preventing Quince

2    from obtaining evidence merely to confirm an issue of date and authenticity that does not appear

3    (from the limited record before the Court) to be reasonably subject to dispute would not serve the

4    interests of justice.

5        As the Northern District of Illinois held when faced with a somewhat similar dispute:

6            There may be no dispute as to the authenticity or admissibility of
             many or even the majority of these documents. As to documents for
7            which there are disputes, however, there should be a process by which
             a party can make a record concerning the authenticity or admissibility
8            of those documents. Allowing this type of limited evidentiary
             discovery to proceed close to or after the end of fact discovery seems
9            to be an efficient way to deal with the issue, and it potentially could
             narrow the number of disputes that must be presented to the Court for
10           resolution.

11   *In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 4349889, at *3 (N.D. Ill.

12   July 29, 2020).

13       The Court therefore DECLINES to prevent compliance with the subpoena to the extent

14   that it seeks documents supporting the authenticity of the videos and the date of their publication,

15   as well as any limited deposition testimony that might be necessary to authenticate those

16   documents. Quince has represented that it does not seek substantive deposition testimony. *See*

17   ECF No. 114 at 3 & n.4 (asserting that Quince "merely seeks authentication," and would "accept a

18   custodian certification" in lieu of deposition testimony). In an abundance of caution, the Court

19   ORDERS that Quince may not question Google at the deposition except as may be needed to

20   confirm the authenticity of documents produced.

21       This Order rests on the premise that Quince seeks only evidentiary substantiation of facts

22   not reasonably subject to dispute. It is at least conceivable, however, that this issue is more

23   complex that it appears on its face. If, after Google responds to Quince's subpoena, there remains

24   some basis to dispute the authenticity of the videos or the date on which they were published, this

25   Order is without prejudice to an argument by Deckers that it was prejudiced by the timing of

26   Quince's subpoena—for example, if Deckers would have had reason to further explore those

27   issues in discovery if the subpoena had been timely served.

28       This Order is also without prejudice to any objection that Google might raise to the

United States District Court
Northern District of California

3

1    subpoena.

2    **III.    DECKERS'S NEW DOCUMENTS**

3          The parties do not appear to have met and conferred sufficiently regarding a set of

4    documents that Deckers first disclosed in conjunction with an expert report.  It is not clear when

5    Quince first raised its objection to those documents, but the parties only met and conferred one

6    day before filing this joint letter, and Deckers objects to the inclusion of this issue in the joint

7    letter.  ECF No. 114 at 5.  The parties are directed to review Judge Spero's decision in *United*

8    *States v. North East Medical Services*, which excluded a large number of documents that a party

9    disclosed for the first time with an expert report, but noted that the "outcome might differ if

10   NEMS's expert had located the documents in the course of his analysis" rather than having been

11   provided those documents by counsel.  2014 WL 7208627, at *5.

12         This Court tends to agree with Deckers that a request to strike portions of an expert report

13   or exclude documents attached thereto from evidence should be addressed to the presiding judge

14   in the first instance, as it may implicate issues closely intertwined with a more substantive

15   *Daubert* motion or motion for summary judgment.  Or, depending on the circumstances, it might

16   be more suitable for resolution by the discovery referral judge.  In *North East Medical Services*, a

17   notice on the docket confirmed specifically that the motion to strike was referred to Judge Spero.

18   Case No. 10-cv-1904-CW, ECF No. 194 (Dec. 11, 2014).  Should Judge Martínez-Olguín choose

19   to refer this issue specifically, the undersigned stands ready to consider it.

20         **IT IS SO ORDERED.**

21   Dated: January 31, 2025

22

23   _____

24   LISA J. CISNEROS
     United States Magistrate Judge

25

26

27

28

United States District Court
Northern District of California

4