Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jamie Fountain (SBN 316567)
jfountain@blakelylawgroup.com
Iain Hill (SBN 336825)
ihill@blakelylawgroup.com
BLAKELY LAW GROUP
1108 Manhattan Avenue, Unit B
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile:  (310) 546-7401

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>LAST BRAND, INC. dba QUINCE, a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendant. | Case No.: 3:23-cv-04850-AMO<br><br>**PLAINTIFF DECKERS OUTDOOR CORPORATION'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY OF MARKETING PROFESSOR JESSE CATLIN**<br><br><u>Hearing</u><br><br>Date:          July 3, 2025<br>Time:          2:00 PM (PT)<br><br>Complaint Filed:          06/12/2023<br>Pre-Trial Conference:          08/14/2025<br>Trial Date:          09/15/2025<br><br>Hon. Araceli Martínez-Olguín |

## TALBE OF CONTENTS

I.     **INTRODUCTION** .................................................................................. 2

II.     **APPLICABLE LAW** ............................................................................ 3

III.     **ANALYSIS** ............................................................................................ 4

   A.    **CATLIN IS UNQUALIFIED** .......................................................... 4

     a.    **Professor Catlin Wholly Lacks Relevant Education, Training, or Experience in Footwear** ................................................................................ 7

     b.    **Professor Catlin's Total Unfamiliarity with Footwear Requires the Same Exclusion as *Gable*** ............................................................................ 8

   B.    **PROFESSOR CATLIN DEPLOYS UNRELIABLE METHODOLOGIES IN REACHING CONCLUSIONS HE IS UNQUALIFIED TO MAKE.** ................................. 9

     a.    **Professor Catlin's Secondary Meaning Opinions are Baseless and Irrelevant as a Matter of Law for Failure to Consider the Actual Trade Dress at Issue** ...................... 9

     b.    **Professor Catlin's Made Up "Eyesight" Likelihood of Confusion Methodology is Legally Improper and Thus Cannot Help the Trier of Fact.** ................................ 10

     c.    **Professor Catlin Fails to Assess Confusion in the Proper Context** .................. 11

     d.    **Professor Catlin Creates Rules the Ninth Circuit Does Not Recognize** ......... 13

     e.    **Professor Catlin's 'Dupes' Analysis Lacks Methodological Rigor and Factual Foundation"** ...................................................................... 14

   C.    **CATLIN'S FUCTIONALITY ANALYSIS SHOULD BE EXCLUDED** ......... 15

     a.    **Professor Catlin is Unqualified to Give Opinions on Functionality** ............. 16

     b.    **Professor Catlin Fails to Apply the Proper Legal Framework** ..................... 16

   D.    **PROF. CATLIN'S JOACHIMSTHALER TESTIMONY FAILS TO SATISFY DAUBERT'S RELIABILITY REQUIREMENTS** .................................... 17

     a.    **Professor Catlin's Clairvoyant Methodology Lacks Any Reliability** ........... 17

     b.    **Professor Catlin Fails to Reliably Apply Any Principles to the Facts of This Case** ........ 18

     c.    **Professor Catlin's Testimony Would Not Help the Trier of Fact** .................. 18

IV.     **CONCLUSION** ................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*adidas-America, Inc. v. Payless Shoesource*, Inc.,
546 F.Supp.2d ........................................................................................12

*Audio Fid., Inc. v. High Fid. Recordings, Inc.*,
283 F.2d 551, (9th Cir. 1960) ................................................................14

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
963 F.3d 859, (9th Cir. 2020) ................................................................16

*Cooper v. Brown*,
510 F.3d 870, (9th Cir. 2007) ........................................................... 5, 18

*Damon v. Sun Co.*,
87 F.3d 1467, (1st Cir.1996)......................................................................4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ..................... 3, 4, 5

*Disc Golf Association, Inc. v. Champion Discs, Inc.*,
158 F.3d 1002 (9th Cir. 1998) ...............................................................16

*Gable v. National Broadcasting Co.*
727 F. Supp. 2d .........................................................................................8

*General Electric Co. v. Joiner*,
522 U.S. 136, 142, 118 S.Ct. 512, L.Ed.2d 508 (1997) ..........................4, 5

*Gucci America, Inc. v. Guess*,
831 F. Supp. 2d 723, (SDNY 2011) .......................................................12

*In re Canvas Specialty Inc.*,
261 B.R. 12, (C.D. Cal. 2001) ..............................................................4, 5

*K-Swiss, Inc. v. USA Aisiqi Shoes Inc.*,
291 F. Supp. 2d 1116, (C.D. Cal. 2003) ................................................12

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137, (1999) .......................................................................3, 5, 19

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
799 F.2d 867, (2d Cir. 1986) .................................................................12

*Lucido v. Nestle Purina Petcare Co.*,
217 F. Supp. 3d 1098, (N.D. Cal. 2016)..........................................5, 11, 18

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594, (9th Cir. 1996) ............................................................ 5, 7, 8

McCarthy
at §23:5.....................................................................................................12

*P & P Imports LLC v. Johnson Enterprises, LLC* .......................................14

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
  No. 17CV1388KPFRWL, 2021 WL 673479, (S.D.N.Y. Feb. 22, 2021) .........................................19
*Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*,
  *405 F.3d 36, (1st Cir. 2005)* ........................................................................................................5
*Robinson v. Davol Inc.*,
  913 F.3d 690, (7th Cir. 2019)..................................................................................... 17, 18
*Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.*,
  161 F.3d 77, (1st Cir.1998.).......................................................................................................4
*Russell v. Walmart Inc.*,
  No. CV 19-5495-MWF (JCX), 2020 WL 9073046, at *1 (C.D. Cal. Oct. 16, 2020) .....................8
*Samaan v. St. Joseph Hosp.*,
  *670 F.3d 21, (1st Cir. 2012) (citing Daubert, 509 U.S. at 591, 113 S.Ct. 2786)* ............................4
*Sunburst Prod., Inc. v. Derrick Law Co.*,
  922 F.2d 845, (9th Cir. 1991) ...........................................................................................13
*United States v. Frazier*,
  387 F.3d 1244, (11th Cir. 2004)...................................................................................... 5, 11
*Vision Sports, Inc. v. Melville Corp.*,
  888 F.2d 609, (9th Cir. 1989) ...........................................................................................14

## OTHER AUTHORITIES

Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 8F-C, ¶ 8:1507 ff. Prof ..................................17

## RULES

Fed. R. Evid. 104(a) ...........................................................................................................5
Fed. R. Evid. 702.......................................................................................................5, 9, 11
Fed. R. Evid. 702(a) .........................................................................................................18
Fed. R. Evid. 702, 2000 Advisory Committee Notes ........................................................ 10, 18

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

## NOTICE OF MOTION

**TO DEFENDANT LAST BRAND, INC., dba "QUINCE" AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 3, 2025 at 2:00 P.M. in Courtroom 10 before the Honorable Araceli Martínez-Olguín of the above referenced Court, located at 450 Golden Gate Avenue, San Francisco California 94102, Plaintiff Deckers Outdoor Corporation ("Plaintiff" or "Deckers") under Civil Local Rule 7-2, will and hereby does move the Court for an order to exclude testimony of marketing Professor Jesse Catlin.

## STATEMENT OF RELIEF SOUGHT

Pursuant to Civil Local Rules 7-2 and 7-4, Deckers respectfully asks that this Court to exclude the testimony and opinions of marketing professor Jesse Catlin. Prof. Catlin, who is wholly unqualified to offer testimony here because he has no experience with the subject matter at issue -footwear. Furthermore, his conclusory assertions are either unsupported or based on unrecognized methods and whim.  Consequently, his opinions do not achieve the level of reliability required for presentation to a jury. Deckers would be prejudiced from having the jury hear Prof. Catlin's conclusory testimony and opinions concerning the law and respectfully requests that this Court exclude them.

Deckers seeks to have the entirety of Prof. Catlin's substantive testimony excluded from both his rebuttal of Ms. Caroline de Baeäre ("de Baeäre") and Rebuttal of Mr. Erich Joachimsthaler ("Joachimsthaler.").  Specifically, this includes de Baeäre pages 6-74, and 82-87; and Joachimsthaler p. 5-55.  The Motion is supported by this Notice, the accompanying Memorandum of Points and Authorities, the Omnibus Declaration of Brent H. Blakely ISO Plaintiff's Motion to Strike, Motion to Exclude the Expert Testimony of Rob Wallace, and Motion to Exclude the Expert Testimony of Jesse Catlin; the accompanying [Proposed] Order, the other materials on file with the Court and of which the Court may take judicial notice, any reply brief and accompanying materials filed therewith, and any argument that may be presented orally.

DATED:        March 10, 2025

BLAKELY LAW GROUP


By:      */s/ Brent H. Blakely*
     Brent H. Blakely
     *Attorneys for Plaintiff*
     *Deckers Outdoor Corporation*

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Quince has disclosed Prof. Jessie Catlin as a rebuttal expert to Caroline de Bear and Dr. Erich Joachimsthaler – two of the most outstanding experts in their respective fields.  Caroline de Beare has over 37 years' experience in the footwear industry and is acknowledged as a highly qualified expert in her field.  Her expertise spans trend research, footwear design, product development, manufacturing, merchandising, market analysis, product purchasing, forecasting, and sales management—precisely the type of industry knowledge courts have found relevant to trade dress analysis. Dr. Joachimsthaler is one of the preeminent branding experts in the world.[1]  The opinions contained Dr. Joachimsthaler's Initial Report, which addressed causation and harm to Plaintiff, are premised on his own background and expertise in marketing and branding and reliably apply reliable principles and methods of branding analysis used by experts in his field.  Profession Catlin, on the other hand, has absolutely no experience as an expert witness concerning the issues now before this Court.

Ms. de Baeäre's Initial Report focused on distinctiveness, secondary meaning, functionality and confusion in connection with the footwear at issue in this case.  Plaintiff moves to exclude Prof. Catlin's rebuttal testimony to Ms. de Baeäre for a glaring reason: he knows absolutely nothing about footwear yet purports to be an expert on boots and clogs. Prof. Catlin has never designed a shoe, worked in footwear manufacturing, taken a class on footwear, or even studied footwear brands, testified in a footwear case, and indeed never been retained on a case involving trade dress claims—yet Defendant asks this Court to admit his opinions on complex trade dress issues that require specialized industry knowledge, about

---

[1] "He has researched and published extensively on marketing and branding strategies. He has written three books on marketing strategy, which, as he discusses in his report, developed the framework he applies. He has more than 30 years of practical experience in strategic brand promotion, marketing, and innovation. He is the CEO of a consulting firm focusing on strategic band promotion, marketing, and innovation, which he founded in 1999. That firm, Vivaldi Group, frequently conducts the same type of brand analysis that Dr. Joachimsthaler conducted in the instant report. He is a member of the American Marketing Association, and has taught marketing as an adjunct, visiting, or assistant professor at U.S. institutions and the IESE in Barcelona, Spain. He holds undergraduate degrees in economics, business administration, and computer science from the universities of Giessen and Frankfurt, Germany; a Master of Science in marketing research and a Ph.D. in business administration from the University of Kansas; and completed a post-doctoral fellowship at Harvard Business School. Dr. Joachimsthaler's education, knowledge, and experience abundantly qualify him to opine on the rigor, or lack thereof, of Dr. Steckel's methodology and execution." *Capri Sun v. American Beverage Corp.*, 595 F.Supp.3d 83, 138 (S.D. NY. 2022)

*footwear*. This flagrant mismatch between expertise and subject matter violates the most basic requirements of Federal Rule of Evidence 702 and Daubert.

Prof. Catlin's eight-page CV reveals the uncomfortable truth—not a single entry relates to footwear. Zero education in footwear design. Zero training in footwear manufacturing. Zero professional experience with footwear brands. His research instead meanders through unrelated topics like pharmaceutical labeling and recycling behavior. When asked to analyze boots, he might as well be examining rocket ships or surgical techniques—subjects equally outside his realm of competence. This complete absence of relevant expertise is not a minor flaw-but a disqualifying one.

What's more, Prof. Catlin's methodology is a masterclass in what Daubert prohibits. He conducts no consumer surveys—standard practice in brand analysis-and hardly relies on anyone else's. He makes legally irrelevant side-by-side visual comparisons of boots without any objective criteria regarding qualities that have absolutely nothing to do with the trade dress at issue. He misapplies Ninth Circuit precedent on secondary meaning and functionality. And most tellingly, when challenged to explain the basis for his conclusions, he offers nothing but subjective impressions and personal opinion—precisely the kind of unscientific speculation that the Court's gatekeeping function was designed to exclude from the jury's consideration.

The same holds true for Prof. Catlin's rebuttal to Dr. Erich Joachimsthaler.  As he did with Ms. de Baeäre, Prof. Catlin tendered as an expert to testify as to trade dress issues on which he is offering opinion testimony that is based on an improper methodology, in ways that are contrary to law and confusing to a jury.  His testimony fails to employ reliable principles and methods, and instead substitutes arbitrary distinctions, strained analogies, and made-up tests for proper expert analysis. Most egregiously, rather than apply established legal standards for evaluating trade dress and secondary meaning, Catlin manufactures his own methodologies while offering little more than what the jury can see with their own eyes. His testimony would not assist the trier of fact through the application of scientific, technical, or specialized expertise, and should therefore be excluded.

## II.    APPLICABLE LAW

The adoption of Rule 702 in its present form codified the standard of admissibility for expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999).

Federal Rule of Evidence 702 provides: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent

demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Under this rule, district courts consider the admissibility of expert testimony by determining whether "an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

The requirement that an expert's testimony must be based on a reliable scientific foundation is often the 'central focus of a *Daubert* inquiry.' *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co*., 161 F.3d 77, 81 (1st Cir.1998.) That requirement ensures that 'the reasoning or methodology underlying the testimony is scientifically valid and ... that [the] reasoning or methodology properly can be applied to the facts in issue.' *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786."

In other words, Rule 702 requires the court to "ensure that there is an adequate fit between the expert's methods and his conclusions." *Samaan v. St. Joseph Hosp., 670 F.3d 21, 32 (1st Cir. 2012) (citing Daubert, 509 U.S. at 591, 113 S.Ct. 2786)*. Significant analytical gaps between the data and the opinion proffered by an expert may undermine the reliability of an expert's testimony. *See, General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). A court may choose to exclude an expert's opinion when it is "based on subjective beliefs or unsupported speculation *Damon v. Sun Co*., 87 F.3d 1467, 1474 (1st Cir.1996) (internal quotation marks omitted), or when it is **"connected to existing data only by the *ipse dixit* of the expert."** *General Elec. Co.,* 522 U.S. at 146, 118 S.Ct. 512." (emphasis added.)

Most critically, "it is not enough that the proposed expert have expertise in an area of knowledge. The expertise must be relevant to the determination of the facts in issue." *In re Canvas Specialty Inc.,* 261 B.R. 12, 19 (C.D. Cal. 2001) (emphasis added). "Thus, to determine whether a proposed expert is qualified, the court must examine whether the witness's qualifying training, experience, or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion." *Gable*, 727 F. Supp. 2d at 833.

## III.   ANALYSIS

### A.    CATLIN IS UNQUALIFIED

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

When presented with a challenge to the admissibility of expert testimony, the Court must determine whether the expert witness is qualified and has "scientific, technical or other specialized knowledge [that] will 'assist the trier of fact to understand evidence or to determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (quoting Fed. R. Evid. 702. The Court must initially assess the qualifications of the proposed expert by "knowledge, skill, experience, training or education." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993).

"The trial judge has a gatekeeping duty to determine whether expert testimony may be admitted under Rule 702. See *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999); *General Electric Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993). If the trial judge finds that the requirements of Rule 702 and any other requirements for expert testimony are not met, the expert testimony must be excluded." *In re Canvas Specialty, Inc.*, 261 B.R. 12, 17 (Bankr. C.D. Cal. 2001)

To be admissible, the proffered expert must be qualified to testify competently regarding the matters he intends to address. FRE 702; *Gable,* at 815, 833 (C.D. Cal. 2010). Thus, an expert must have knowledge, skill, experience, training, or education sufficient that can help the trier of fact. FED. R. EVID. 702. Accordingly, an expert "should have achieved a meaningful threshold of expertise" in the given area. *Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc., 405 F.3d 36, 40 (1st Cir. 2005)).* However, experience alone is not necessarily "a sufficient foundation rendering reliable any conceivable opinion the expert may express." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (emphasis in original). Should an expert rely on his experience, he must explain (1) how his experience led to his conclusions; (2) why his experience provides a sufficient basis for his opinions; and (3) how his experience was reliably applied. *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1102-03 (N.D. Cal. 2016) (referencing FED. R. EVID. 702 Advisory Committee's note (2000 amends.)) (emphasis added). The proponent of expert testimony bears the burden of showing, by a preponderance of the evidence, that the expert is qualified under Rule 702. See Fed. R. Evid. 104(a). If an expert is not qualified, a district court should exclude that expert's opinion. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

By his own admission, Prof. Catlin has no footwear experience, and no experience with secondary meaning or likelihood of confusion surveys in that context, if at all. He is a marketing professor. Notably absent from Prof. Catlin's resume is any work related to these topics, as he clearly testified at deposition:

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

Q.· Do any of [your] publications discuss footwear?

A.· Not specifically that I recall. Transcript ("TR") pg. 18, lns 4-6.

Q. Do you have a degree in fashion design?

A. I do not.

Q. Have you ever taken any fashion design courses?

A. I have not. TR pg. 18, lns 10-15.

Q. Have you ever consulted on footwear design?

A. I haven't consulted on footwear design… TR pg. 19, lns 2-5.

Q. Have you ever had any jobs working in footwear?

A. I have not. TR pg. 20, ln 25- pg. 21, ln 2.

Q. Have you ever specifically done a survey to test the secondary meaning of a product?

A. As part of a court case, no. TR p. 27, lns 4-7.

..;.

Q. And, assuming based upon your answer that, is it true then that you've never done a secondary meaning survey on footwear to determine whether a certain type of footwear has achieved secondary meaning in the marketplace?

A. That is correct I have not. TR p. 28, lns 10-15.

Q. Have you ever conducted a likelihood of confusion survey on whether an accused footwear product infringed upon someone else's products or IP?

A. I have not done one specifically for footwear.

Q. And you haven't done any surveys in this case, have you, in connection with this case?

A. No. TR p. 30, lns 4-13.

Declaration of Brent H. Blakely ISO Motion to Strike and Daubert Motions ("Blakely Decl."), ¶ 24, Ex. 21.

Pretermitting whether Prof. Catlin is in fact experienced with trademarks relevant to any industry, Prof. Catlin makes no claim that he has experience with the footwear products, boots, at issue in this case. Prof. Catlin is a marketing professor purportedly serving as a secondary meaning and likelihood of confusion expert for footwear with no experience in footwear design and no experience in trade dress litigation, giving legal conclusions on secondary meaning involving **boots**. As evidenced by Prof. Catlin's legal conclusions, which are contrary to the law and frankly "out in left field," Prof. Catlin has little, if

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

any, understanding of the legal concepts involved in this case. Therefore, Prof. Catlin is unqualified to give any expert testimony relevant here and the entirety of both his rebuttals should be excluded.

> a.    **Professor Catlin Wholly Lacks Relevant Education, Training, or Experience in Footwear**

Prof. Catlin's complete lack of footwear industry experience renders his opinions mere speculation, failing to meet the fundamental reliability standards required by Daubert and Federal Rule of Evidence 702. Here, the Court must look to whether Prof. Catlin has the requisite "knowledge, skill, experience, training, or education" in the relevant subject matter. *Gable*, at 833-34; see also, Fed. R. Evid 702; *Hangarter*, 373 F.3d at 1015. Clearly, he does not. Thus, the entirety of his reports should be struck.

Prof. Catlin is a career marketing professor whose CV confirms he has never worked in the footwear industry. His academic background includes a Ph.D. in Management from UC Irvine (2012), an M.A. in Economics (2007), and a B.A. in Economics with a minor in Business Administration (2005)— none of which provide any specialized training in footwear design, manufacturing, or industry practices. Blakely Decl. ¶ 16-17, Ex. 13-14 at CV p. 74. Since 2012, Prof. Catlin has held exclusively academic positions at California State University, Sacramento and Washington State University Tri-Cities, teaching general marketing courses such as "Principles of Marketing," "Buyer Behavior," and "Marketing Management." *Id.* (CV p. 74, 79).

Examination of his CV reveals that Prof. Catlin's research interests are entirely unrelated to footwear, focusing instead on "consumer misconceptions and beliefs; pharmaceutical labeling and regulation; health communication; sustainable consumption." *Id*. (CV at p. 75).

His journal publications similarly demonstrate no connection to footwear design, manufacturing, or branding within the footwear industry. Rather, they address topics such as recycling behavior, pharmaceutical labeling, climate action, and plant-based eating. *Id*. (CV at p. 75-76).

Even his consulting experience is limited to areas far removed from footwear, with his representative engagements including work with the FDA, analyzing consumer surveys which purportedly includes "likelihood of confusion," and creating a brand identity for an "automotive quick lube chain." *Id*. (CV at p. 74-75).

To be clear, Prof. Catlin dedicates eleven rebuttal report pages to analyzing secondary meaning surveys but there is *no mention whatsoever* of his having experience with such surveys in his CV. (Blakely Decl. ¶ 16, Ex. 13 at p. 33-44.)  In fact, Prof. Catlin has never performed such a survey, has never considered one in connection with litigation, and as detailed below does not understand how they

1  are analyzed. Despite this complete experiential void, Prof. Catlin spills twenty-five pages of ink on

2  secondary meaning in his de Baeäre Rebuttal. *Id*. (p.22-47.)

3  Most crucially, *nowhere* in his eight-page CV does Prof. Catlin list any education, training,

4  employment, research, publication, or consulting experience specific to the subject matter of this case:

   **footwear**. *Id*. (CV at p. 74-81).

5          b.    **Professor Catlin's Total Unfamiliarity with Footwear Requires the Same**

6                **Exclusion as *Gable***

7  In *Gable v. National Broadcasting Co*. the court directly addressed this exact issue of subject

8  matter unfamiliarity. There Judge Steven Wilson from the Central District of California encountered the

9  same total subject matter unfamiliarity. However, it was presented by a renowned mind of legal academia,

10 and Judge Wilson *still* excluded his testimony for the same reason that Prof. Catlin's testimony—coming

   from a far less distinguished source—should be excluded here.

11 In *Gable*, one of the parties sought to offer the testimony of a well-regarded copyright scholar,

12 Professor Nimmer, on the substantial similarity of two screenplays. However, the Court precluded the

13 professor's testimony as he "offer[ed] little explanation as to how his legal expertise qualifies him to

14 compare a screenplay and a television series..." *Gable*, 727 F. Supp. 2d at 833. The Court explained that

15 "absent from Nimmer's report and declarations is any indication that Nimmer has experience, knowledge,

16 training, or education in the literary field..." *Id*. Similarly, in *Russell v. Walmart Inc*., the Court excluded

17 the testimony of Professor Mark McKenna, a "legal expert, [because he was] not an expert in lamp design,

18 sculpture, or marine biology[,]" the subject matter of that case. No. CV 19-5495-MWF (JCX), 2020 WL

   9073046, at *1 (C.D. Cal. Oct. 16, 2020).

19 Here, we have an even more compelling case for exclusion. Professor Nimmer was a towering

20 figure in copyright law—a legendary scholar whose treatise is cited in virtually every copyright case in

21 the country. Yet the Court properly excluded him because, despite his extraordinary scholarly

22 achievements, he lacked *specific subject matter expertise* in the literary field. In stark contrast in terms

23 of achievements, Dr. Catlin is a relatively unknown marketing academic with no scholarly distinction

24 whatsoever in the field of trade dress, recently re-branded as a "consulting expert" with no experience in

25 footwear design and no experience in trade dress litigation. Yet he now purports to give legal conclusions

26 on secondary meaning, likelihood of confusion, and functionality for **boots and clogs**. If the Court

27 rightfully excluded a legal giant of Professor Nimmer's stature in a copyright case for lack of subject-

   matter expertise, then *a fortiori*, Dr. Catlin's testimony must be excluded. The principle is clear: regardless

28

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

of credentials in other areas, courts must exclude witnesses who lack expertise in the specific subject matter at issue. Dr. Catlin is a newly minted consultant whose CV reveals no prior experience with footwear litigation and whose conclusions run contrary to established law. Dr. Catlin has little, if any, understanding of the legal concepts involved in this case. With zero footwear expertise to anchor his analysis, Dr. Catlin's testimony amounts to unsupported conjecture that falls decisively short of the expert reliability threshold established by *Daubert* and mandated by Federal Rule of Evidence 702. Thus, Dr. Catlin is wholly unqualified to give any expert testimony relevant here.

**B.     PROFESSOR CATLIN DEPLOYS UNRELIABLE METHODOLOGIES IN REACHING CONCLUSIONS HE IS UNQUALIFIED TO MAKE.**

Prof. Catlin makes glaringly apparent the reality that he is unqualified to testify here by reaching baseless conclusions or deploying made up methodologies that are unsupported by accepted practice in the field.

**a.     Professor Catlin's Secondary Meaning Opinions are Baseless and Irrelevant as a Matter of Law for Failure to Consider the Actual Trade Dress at Issue**

Prof. Catlin relies on no methodology, let alone proper methodology in reaching conclusions critical to his positions in his rebuttals. For example, regarding secondary meaning he proclaims, "In my opinion the most distinctive differentiating feature for UGG® within the product category of shearling footwear would be the UGG® logo and license plate, which consumers use to distinguish it from other brand options within the category," (Blakely Decl. ¶ 16, Ex. 13, at ¶46). However, Prof. Catlin has never worked with footwear and did not test this assertion with a survey. Crucially, the logo is *not an element of the trade dress at issue*. Thus, this testimony is legally irrelevant. Diluting the proper inquiry with off-point conjecture further underscores his lack of qualification. What's more, the "logo" Prof. Catlin relies on here is a federally registered mark.  The jury does not need help understanding that UGG® trademarks are "distinctive" nor are they at issue in this case. The impropriety of this side-by-side distraction with a Mark that is not part of the asserted Trade Dresses and would not be seen in the context of post-sale confusion is glaringly apparent (Blakely Decl. ¶ 16, Ex. 13, at p.54), which should be excluded.

*Figure 12 – Soles of UGG Classic Ultra Mini and Quince Australian Shearling Mini Boot*



UGG Classic Ultra Mini

Quince Australian
Shearling Mini Boot

The **UGG Sun Logo and
Sun Tread outsole** are
featured on the sole of its
product

There is no corresponding
logo or pattern on the sole
of the Quince product

**b.    Professor Catlin's Made Up "Eyesight" Likelihood of Confusion Methodology is Legally Improper and Thus Cannot Help the Trier of Fact.**

Prof. Catlin should not be allowed to testify about the differences between Plaintiff's trade dresses and Defendant's Accused Products.

Rather than employing any accepted analytical framework for his likelihood of confusion analysis, Prof. Catlin relies solely on his personal visual assessment of boot construction. He heavily relies on legally irrelevant side-by-side comparisons without any demonstrated technical expertise in analyzing these elements or explanation as to how Prof. Catlin's purported experience led to his conclusions reached. (Blakely Decl. ¶ 16, Ex. 13 at ¶82-88).

The Advisory Committee notes for Rule 702 emphasize that experience may "provide a sufficient foundation for expert testimony. The text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702, 2000 Advisory Committee Notes. However, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, 2000 Advisory Committee Notes

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

(emphasis added); *see Lucido v. Nestle Purina Petcare Co*., 217 F. Supp. 3d 1098, 1102-03 (N.D. Cal. 2016). Prof. Catlin cannot satisfy this requirement as he has no relevant footwear experience whatsoever.

Rule 702 requires that expert testimony assist the trier of fact "through the application of scientific, technical, or specialized expertise." FED. R.EVID. 702. A trial court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 593. Such testimony is only "admissible if it concerns matters that are beyond the understanding of the average layperson." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004).

Here, Prof. Catlin merely catalogs visually apparent differences between Plaintiff's trade dress and Defendant's Accused Product including logos, license plates, and soles. He provides no scientific methodology to examine these features—because he employs none. The differences he identifies are plain to the naked eye, offering nothing more to jurors than their own observations. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262.

Quince clearly hopes that by putting a Ph. D in the witness box to proclaim, "the trade dress is different, and therefore not protectable," the jurors will defer to his credentials. This creates substantial risk of undue prejudice.

With zero footwear expertise to anchor his analysis, Prof. Catlin's testimony amounts to unsupported conjecture that falls decisively short of the expert reliability threshold established by Daubert and mandated by Federal Rule of Evidence 702. For the foregoing reasons, Prof. Catlin's testimony in paragraphs 82-88 should be excluded.

<b>c.    Professor Catlin Fails to Assess Confusion in the Proper Context</b>

Prof. Catlin's analysis fails to properly assess post-sale confusion, which is critical in trademark infringement cases involving footwear. While Prof. Catlin makes passing, conclusory mention of post-sale confusion, his actual analysis focuses almost exclusively on point-of-sale comparisons. This

approach fundamentally misses how consumers encounter and perceive footwear products in real-world settings after purchase. (Blakely Decl. ¶ 16, Ex. 13, at ¶82-88).

**Point-of-sale confusion** is purchaser confusion of source which occurs at the time of purchase. McCarthy at §23:5.

**Post-sale confusion** occurs when consumers see defendant's products outside the retail context and mistakenly associate them with the plaintiff's mark. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co*., 799 F.2d 867, 873-84 (2d Cir. 1986)

Under a post-sale analysis, strength of mark, similarity of the mark, and similarity of goods are of primary importance, whereas actual confusion, the junior user's intent, marketing channels, and degree of purchaser care are less significant. See *Payless* at 988-89; *adidas-America, Inc. v. Payless Shoesource*, Inc., 546 F.Supp.2d at 1055*; K-Swiss, Inc. v. USA Aisiqi Shoes Inc*., 291 F. Supp. 2d 1116, 1125 (C.D. Cal. 2003) ("Post-purchaser confusion is likely to occur in this case despite the fact that the price ranges and types of stores that sell the shoes are dissimilar.")

The failure to approximate actual market conditions can provide grounds for inadmissibility. *Gucci America, Inc. v. Guess*, 831 F. Supp. 2d 723, 739 (SDNY 2011).  In *Gucci Am v. Guess* the court excluded a survey that tested point-of-sale confusion in a case involving post sale confusion:

> "Dr. Simonson argues at great length that because of the vast differences between consumer behavior in the point-of-sale marketplace and the post-sale marketplace, and because of the methodological differences involved in assessing whether a consumer is confused in either situation, a survey whose stated purpose is to assess point-of-sale confusion will have nothing relevant to say about post-sale confusion. This analysis is convincing, and I agree with it. Accordingly, I find that methodological flaws in a point-of-sale confusion survey need not be discussed to exclude that survey as irrelevant to the issue of post-sale confusion. Guess does not dispute that the Helfgott Surveys were conducted with the purpose of measuring point-of-sale confusion. As such, the Helfgott Surveys must be excluded under Rule 402 as irrelevant to the extent that they are offered to counter Gucci's theory of post-sale confusion."

*Gucci v. Guess* 831 F. Supp. 2nd at 745.

The same logic applies here. Prof. Catlin's laboratory-like examination of the footwear products, analyzing minute details side-by-side, fails to approximate actual market conditions where post-sale

confusion occurs. (*See*, the **entirety** of Prof Catlin's Likelihood of Confusion: similarly of trade dress analysis at Blakely Decl. ¶ 16, Ex. 13, at ¶83-88). His approach does not account for how the products appear when worn in public settings, where observers typically see the products from a distance, in motion, and without the benefit of direct comparison. This methodological flaw renders his opinions regarding likelihood of confusion largely irrelevant to a key aspect of the case.

Prof. Catlin's superficial treatment of post-sale confusion, coupled with his lack of footwear industry expertise, renders his opinions on likelihood of confusion fundamentally flawed and unhelpful to the trier of fact. For these additional reasons, Prof. Catlin's de Baëre Rebuttal testimony, at ¶¶ 83-88 should be excluded. Blakely Decl. ¶ 16, Ex. 13.

### d. Professor Catlin Creates Rules the Ninth Circuit Does Not Recognize

#### 1. *"Look For" Advertising is Not Required*

UGG® undertakes extensive and legitimate advertising to promote the quality and design of its trade dress at issue. In attempting to undermine that reality, Prof. Catlin offers a blatant misstatement of the law. [Ms.] de Baëre's analysis of UGG promotional efforts provides no illustrations of what is referred to as "look for" advertising. That is, advertising that tells consumers to "look for" specific elements of the trade dresses as identifying its brand. **It is my understanding that use of "look for" advertising is typically regarded as critical evidence in establishing secondary meaning**. (Blakely Decl. ¶ 16, Ex. 13, at ¶54). Not only is this factually untrue, but it is false as a matter of law.

However, the Ninth Circuit has repeatedly said that "image advertising"—advertising that "'feature[s] in' some way the trade dress itself"—supports an inference of secondary meaning, *even if* the advertisement does not explicitly "urge[ ] the customer to '**look for**' the ... claimed "elements" of [the] trade dress." *Sunburst Prod., Inc. v. Derrick Law Co.*, 922 F.2d 845, 845 (9th Cir. 1991); *see also Paramount Farms Int'l LLC*, 2012 WL 5974169, at *7 ("Significantly, all of these commercials contain elements to educate viewers about the Claimed Trade Dress") Prof. Catlin's de Baëre Rebuttal testimony at ¶54, which is based upon an erroneous legal conclusion, should be excluded. Blakely Decl. ¶ 16, Ex. 13.

#### 2. *Professor Catlin Erroneously Qualifies the "Copying" Factor towards a Finding of Secondary Meaning*

To falsely and artificially reduce the "copying" factor towards finding secondary meaning, Catlin provides: *"Copying.* Whether the defendant intentionally copied the alleged trade dress. I am informed that evidence of copying **is relevant only if** probative of an accused infringer's efforts to poach its

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

competitor's superior reputation, rather than to copy a superior or more aesthetically appealing design" (Blakely Decl. ¶ 16, at ¶42 (emphasis added)).

This interpretation is legally incorrect and deliberately undervalues the significance of copying evidence. The Ninth Circuit has consistently held that "[P]roof of copying strongly supports an inference of secondary meaning." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989). The rationale is clear: competitors generally copy "to realize upon a secondary meaning that is in existence." *Audio Fid., Inc. v. High Fid. Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960).

Catlin's attempt to restrict the relevance of copying only to instances where there is proof of "efforts to poach a competitor's superior reputation" imposes a limitation that the Ninth Circuit has expressly rejected. In *P & P Imports LLC v. Johnson Enterprises, LLC*, the court specifically addressed and rejected this exact argument, noting that while "some circuits have adopted Johnson's argument about an intent to confuse requirement... we have not done so." 46 F.4th 953, 962 (9th Cir. 2022).

By imposing a qualification not recognized in Ninth Circuit law, Prof. Catlin once again demonstrates a fundamental misunderstanding of the legal standards governing secondary meaning, further undermining the reliability and relevance of his opinions.  Given the clear and extensive record of copying which significantly weighs on the secondary meaning analysis here, and because Prof Catlin has wholly misconstrued the copying analysis, his testimony as to copying (Blakely Decl. ¶ 16, Ex. 13, at ¶43, 46) should be excluded, if not his entire opinion on secondary meaning for failure to properly frame the analysis.

      e.    **Professor Catlin's 'Dupes' Analysis Lacks Methodological Rigor and Factual Foundation"**

Catlin's analysis of so-called "dupes" versus category competition further highlights his lack of qualifications, methodological flaws, and willingness to engage in rank speculation at the behest of Quince's attorneys. (Blakely Decl. ¶ 16, Ex. 13, at p. 44-46). Without any footwear industry experience, Prof. Catlin makes sweeping judgments about marketplace dynamics, product quality, and competitive positioning—areas that require specialized knowledge he simply does not possess. "My review of marketplace offerings suggests a robust array of choices for consumers when it comes to products that share general design features with UGG's [asserted designs]." (Blakely Decl. ¶ 16, Ex. 13, at ¶77).

First, Prof. Catlin offers no factual basis for his classification of which products constitute "dupes" versus legitimate category competition. (Blakely Decl. ¶ 16, Ex. 13, pp. 44-46). He provides no industry

standards, no objective criteria, and no methodology for making these determinations. This classification appears entirely subjective and arbitrary, reflecting his amateur opinion rather than any expert analysis.

Second, Prof. Catlin fails to establish any factual foundation regarding the alleged "dupes." (Blakely Decl. ¶ 16, Ex. 13, pp. 44-46). His report contains no information about: a) when these alleged "dupes" were introduced into the marketplace, b) how many units were sold, c) where they were distributed, d) whether they represent knockoffs of authentic UGG® products, d) what market segments they target, what price points they occupy relative to the original products, and most importantly, e) what exactly this testimony is in furtherance of.[2]

Third, Prof. Catlin's conclusions about Quince's product quality and positioning rely on marketing materials rather than any technical evaluation of the footwear itself. (Blakely Decl. ¶ 16, Ex. 13, at ¶76). Without footwear design or manufacturing expertise, Prof. Catlin cannot credibly assess whether Quince's products share merely "generic design features" or actually replicate distinctive, protectable trade dress elements.

Fourth, Prof. Catlin's "review of marketplace offerings" lacks any clear methodology (Blakely Decl. ¶ 16, Ex. 13, at ¶77-78). He acknowledges that his research consisted of "information provided to me by counsel and my own search," but provides no details about search parameters, selection criteria, or sampling methods. This ad hoc approach falls well short of the systematic rigor required under Rule 702.

In sum, Prof. Catlin's "dupes" analysis epitomizes why his testimony should be excluded: he ventures far beyond his marketing credentials to make technical footwear assessments without any expertise in the field, applies no discernible methodology, and fails to provide the factual foundation necessary to support his conclusions. His opinion on this matter is precisely the kind of unreliable speculation that Daubert and Rule 702 are designed to exclude thus his de Baëre Rebuttal testimony at pages 44-46 should be excluded. Blakely Decl. ¶ 16, Ex. 13.

## C.  CATLIN'S FUCTIONALITY ANALYSIS SHOULD BE EXCLUDED

---

[2] Courts routinely exclude similar unauthenticated evidence as hearsay, lacking foundation, and rank speculation. *Vans, Inc. v. Walmart, Inc.*, 2022 U.S. Dist. LEXIS 95244 at *18 (C.D. Cal. March 31, 2022) (merely providing a list of thirdparty uses is not sufficient to establish a lack of secondary Meaning); *adidas America v. Skechers Inc.*, 149 F. Supp. 3d 1222, 1236 (D. Or. 2016) (asserting that, in the context of evaluating exclusive use, "standing alone, a list of third party shoes that use parts of the Stan Smith trade dress are not sufficient to undermine adidas's trademark rights.")

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

Dr. Prof. Catlin is fundamentally unqualified to render opinions on footwear functionality, and his methodology is legally and scientifically flawed. These deficiencies render his testimony inadmissible under Daubert and Rule 702.

### a.    Professor Catlin is Unqualified to Give Opinions on Functionality

Prof. Catlin has zero footwear industry experience. *Passim*. His CV reveals no education, training, or professional background related to footwear design, manufacturing, or industry practices. This complete lack of relevant expertise prevents him from reliably analyzing the functional aspects of footwear products. Thus, the entirety of this functionality testimony should be excluded. (Blakely Decl. ¶ 16, Ex. 13, at p. 10-22.)

### b.    Professor Catlin Fails to Apply the Proper Legal Framework

The Ninth Circuit has clearly established a four-factor test for analyzing utilitarian functionality in *Disc Golf Association, Inc. v. Champion Discs, Inc*., 158 F.3d 1002 (9th Cir. 1998) and reaffirmed in *Blumenthal Distrib., Inc. v. Herman Miller, Inc*., 963 F.3d 859, 865 (9th Cir. 2020): (1) whether the design yields a utilitarian advantage (2) whether alternative designs are available (3) whether advertising touts the utilitarian advantages of the design and, (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture.

As the court stated, "No one factor is dispositive; all should be weighed collectively." *Id*. at 1130.

Here, Prof. Catlin's analysis fails because he improperly focuses on only one of the four required factors—advertising—and even then, analyzes the wrong advertising evidence. (Blakely Decl. ¶ 16, Ex. 13, at ¶26-36). Significantly, Prof. Catlin incorrectly focuses on *Quince's* marketing rather than how Deckers advertises its own products. (Blakely Decl. ¶ 16, Ex. 13, at ¶37-39). The third Disc Golf factor requires examination of *Deckers'* advertising of its *own* products, not how competitors market theirs.

Prof. Catlin improperly examines consumer perceptions of UGG products rather than Deckers' outward advertising claims. (*Id* at ¶26-39). This inverts the proper analysis—the functionality test examines how a manufacturer presents its products to consumers, not how consumers perceive them.

Prof. Catlin provides no systematic methodology in his review of customer reviews (*Id*. at ¶32-36). Despite claiming to have read thousands of reviews, he offers no systematic analysis, no text-mining techniques, and no summary statistics—only selectively chosen examples that support his predetermined conclusion.

Prof. Catlin's methodology is legally flawed, ignoring three of the four essential *Disc Golf* factors required by Ninth Circuit precedent while misapplying the single factor he does address. His lack of

footwear expertise and fundamentally unsound approach fail to meet Daubert and Rule 702 reliability standards, warranting exclusion of his functionality methodology testimony set forth in in his de Baëre Rebuttal at ¶26-39. (Blakely Decl. ¶ 16, Ex. 13).

### D.  PROF. CATLIN'S JOACHIMSTHALER TESTIMONY FAILS TO SATISFY DAUBERT'S RELIABILITY REQUIREMENTS

#### a.  Professor Catlin's Clairvoyant Methodology Lacks Any Reliability

The Daubert framework requires expert opinions be: "(1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or (4) generally accepted within the specific scientific field." *Robinson v. Davol Inc.*, 913 F3d 690, 695 (7th Cir. 2019); *see also* Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 8F-C, ¶ 8:1507 ff. Prof. Catlin's report fails on all counts.

Once again Professor Catlins lays out legally improper side-by-side analysis and feature-by-feature dissection in his "Visual Product Comparisons" section. (Blakely Decl. ¶ 17, Ex. 14 at ¶66-69). Most egregiously, Professor Catlin claims to analyze "**features beyond what is visible**"—a rather mystical approach that assumes potential buyers can view all faces of a product at once. While this may explain Prof. Catlin's emphasis on irrelevant trademarks on the bottom of the shoe, there is nothing "tested" or "generally accepted" about this "analysis."

In paragraph 87, he concludes "I do not find compelling evidence that UGG's brand has or will experience harm" without establishing what constitutes "compelling evidence" or explaining his evaluation criteria. Such unscientific assertions cannot satisfy Rule 702. *See, Mission Viejo Florist*, 2019 WL 13045054, at *3. (Blakely Decl. ¶ 17, Ex. 14 at ¶ 87).

Prof. Catlin conducts none of his own consumer surveys, offers no quantitative market analysis, and applies no established brand evaluation frameworks. His visual comparison of products lacks any structured methodology. (Blakely Decl. ¶ 17, Ex. 14 at ¶¶51-53). As *Daubert* emphasizes, "scientific knowledge... implies a grounding in the methods and procedures of science," 509 U.S. at 589-90. Prof. Catlin's methodology has not been tested, has no known error rate, has not been subject to peer review, and does not represent generally accepted practices in brand analysis.

Furthermore Prof. Catlin makes critical assertions without sufficient factual foundation. In paragraph 69 of his Joachimsthaler Rebuttal, he declares "visible brand elements provide strong buffers against confusion" without explanation and without conducting or relying on any consumer surveys— standard practice in brand analysis cases. For the foregoing reasons Prof. Catlin's Joachimsthaler testimony at ¶51-53, 66-69; and 87 should be excluded. Blakely Decl. ¶ 17, Ex. 14.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b.    Professor Catlin Fails to Reliably Apply Any Principles to the Facts of This Case

Even accepting arguendo that Prof. Catlin employed reliable principles—which he did not—Rule 702(d) requires that an expert "has reliably applied the principles and methods to the facts of the case." FRE 702(d); see *Lucido v. Nestle Purina Petcare* at 1098, 1103 (requiring principles "applied reliably to the facts").

This failure is evident in paragraph 65 of his Joachimsthaler Rebuttal, where Catlin opines that due to "identifying factors like UGG [®] logo and license plate, there should be minimal confusion." To reiterate, these elements are not part of the asserted trade dress. They are thus legally irrelevant. Furthermore, this improperly focuses on point-of-sale confusion while ignoring the critical post-sale confusion.

The Advisory Committee notes emphasize that experts relying primarily on experience must "explain how that experience leads to the conclusion reached" and "how that experience is reliably applied to the facts." Fed. R. Evid. 702, 2000 Advisory Committee Notes. Prof. Catlin provides no such explanation. He does however rely on outdated articles that have nothing to do with the footwear of this case[3]. Thus, Prof. Catlin's Joachimsthaler Rebuttal testimony (¶65) regarding logos toward consumer psychology should be excluded. (Blakely Decl. ¶ 17, Ex. 14 at ¶65).

### c.    Professor Catlin's Testimony Would Not Help the Trier of Fact

Expert testimony must "help the trier of fact" understand evidence or determine facts at issue. Fed. R. Evid. 702(a); *Robinson v. Davol Inc*., 913 F3d at 695. To be relevant, expert testimony must "logically advance a material aspect of the party's case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

---

[3] Catlin's extensive footnotes *see*, Blakely Decl. ¶ 17, Ex. 14 at p.16.

14 Sproles, George B. and Elizabeth L. Kendall (*1986*), "A Methodology for Profiling Consumers' Decision-Marking Styles," Journal of Consumer Affairs, 20 (2), 267-279.

15 Nelson, Michelle R. and Laurie Ellis McLeod (*2005*), "Adolescent Brand Consciousness and Product Placements: Awareness, Liking and Perceived Effects on Self and Others," International Journal of Consumer Studies, 29 (6), 515–28.

16 Workman, Jane E. and Seung-Hee Lee (*2013*), "Relationships Among Consumer Vanity, Gender, Brand Sensitivity, Brand Consciousness and Private Self-Consciousness," International Journal of Consumer Studies, 37 (2), 206–13.

17 Lichtenstein, Donald R., Richard G. Netemeyer, and Scot Burton (*1990*), "Distinguishing Coupon Proneness from Value Consciousness: An Acquisition-Transaction Utility Theory Perspective," Journal of Marketing, 54 (3), 54–67.

18 Babin, Barry J. and Eric G. Harris (2022), CB (9th ed.), Cengage, pg. 120.

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF PROFESSOR CATLIN**

Prof. Catlin's testimony fails this standard. His visual analysis in paragraphs 51-53 of his Joachimsthaler Rebuttal focuses on minute details without providing any framework to understand their significance from a consumer perspective. (Blakely Decl. ¶ 17, Ex. 14). In paragraph 16, Catlin states "My own review of the product mixes for both Quince and UGG suggest that such a narrow characterization of UGG's offerings is inaccurate" without explaining his methodology or criteria. (Blakely Decl. ¶ 17, Ex. 14).

Rather than helping jurors understand complex brand analysis, Catlin's testimony would actively mislead them by ignoring established methodologies in the field. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier* at 1244, 1262. Prof. Catlin's unsupported opinions simply "invite the jury to speculate," which courts have consistently deemed "unhelpful." *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, No. 17CV1388KPFRWL, 2021 WL 673479, at *20 (S.D.N.Y. Feb. 22, 2021).

The court's gatekeeping function is designed precisely to exclude such testimony. *See*, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (courts must ensure expert testimony is "not only relevant, but reliable"). Given Prof. Catlin's multiple methodological failures and the misleading nature of his conclusions, his testimony should be excluded under Rule 702 and Daubert. Thus, for these additional reasons, his Joachimsthaler testimony at ¶¶16, 51-53 should be excluded. (Blakely Decl. ¶ 17, Ex. 14).

## IV.    **CONCLUSION**

Plaintiff Deckers respectfully requests that this Court to exclude Prof. Catlin's Rebuttal testimony in its entirety. His complete lack of footwear expertise renders his opinions unreliable under Rule 702 and *Daubert*. He misapplies legal standards on secondary meaning and functionality, disregards critical Ninth Circuit precedent, and employs methodologies without scientific rigor or reliability. For the foregoing reasons, this Court should exclude Prof. Catlin's rebuttals of de Baeäre and Joachimsthaler in their substantive entirety, as his complete lack of relevant expertise and unreliable methodology would serve only to confuse rather than assist the jury.

DATED:        March 10, 20255        BLAKELY LAW GROUP


By:    */s/Brent Blakely*
       Brent H. Blakely
       ***Attorneys for Plaintiff***
       ***Deckers Outdoor Corporation***