# Exhibit 12

UNEDITED REALTIME TRANSCRIPTION DISCLAIMER

**When you order and receive a ROUGH draft, you are also ordering a certified copy of the final transcript. Please, contact the office if you have questions.**

The following is a rough draft of the deposition transcript which has been provided upon request with the specific understanding and acknowledgment that:

The following transcript of proceedings, or any portion thereof, is being delivered UNEDITED and UNCERTIFIED by the court reporter.

The purchaser agrees not to disclose this realtime, unedited transcription in any form (written or electronic) to anyone who has no connection to this case.  This is an unofficial transcription which should NOT be relied upon for purposes of verbatim citation of testimony.

This transcription has not been proofread. It is a draft transcript, NOT a certified transcript.  As such, it may contain

computer-generated mistranslations of stenotype code or electronic transmission errors, resulting in inaccurate or nonsensical symbols

Page 2

which cannot be deciphered by non-stenotypists.

Corrections will be made in the preparation of the certified transcription, resulting in differences in content, page and line numbers, punctuation, and formatting.

THE VIDEOGRAPHER:  Good morning.  And we're now on the record.  The time is 9:04 a.m. Pacific time on February 25, 2025.  And this begins the video-conferenced deposition of Caroline de~Baere.  And this is taken in the matter -- taken in the matter of Deckers Outdoor Corporation versus Last Brand, Inc. dba Quince.

And this is filed in the United States District Court, Northern District of California, San Francisco division.  Case No. 23-CV-04850.

My name is Laura Velasco, and I'm the remote videographer for today.  And our court reporter is Elizabeth Borrelli.  and we are with Esquire Deposition Solutions.

And, Counsel, can you please introduce

yourselves and state whom you represent, after which

our court reporter will swear in the witness.

MS. FOUNTAIN:  Jamie Fountain for Blakely

Law Group on behalf of Decker Corporation.

MR. YUAN:  Lawrence Yuan on behalf of                    09:05

                                                            Page 3

Defendant.                                                 09:05

                        CAROLINE DE BAERE,

                having been duly administered

                an oath in accordance with CCP 2094,

                was examined and testified as follows:    10:01

        MR. YUAN:  I want to add, my colleague

Xinlin Morrow is also on the line.

                        EXAMINATION

BY MR. YUAN:

        Q.   All right.  Good morning, Ms. de Baere.      09:05

             Can you please state your full name for

the record.

        A.   Yes, Caroline de Baere.

        Q.   Where are you located today for this

deposition?                                                09:05

        A.   Mill Valley, California.

        Q.   Do you understand that you're testifying

under oath today?

A.    Yes.

Q.    The same oath as your testifying in a     09:05
court of law?

A.    Yes.

Q.    If you don't understand a question I ask,
please let me know.  If you answer my question, I'll
assume you understand the question; is that fair?     09:06

Page 4

A.    Yes.     09:06

Q.    And during the course of today's
deposition your counsel may object.  Unless you are
instructed not to answer, you will still need to
answer, okay?     09:06

A.    Can you repeat that.  Sorry, I just was
turning up the volume a little bit.

Q.    Sure.  In the course of today's
deposition, your counsel may object.  Unless you are
instructed not to answer, you will still need to     09:06
answer; is that okay?

A.    Yes, I understand.

Q.    We have a court reporter who is taking
down a transcript here.  So let's try not to talk
over each other.  I'll complete my question.  I'll     09:06

give you the opportunity to complete your responses to my question.  Is that okay?

A.   Yes.

Q.   We will need you to answer verbally, so clear "yes" or "no" instead of nodding or shaking your head.                                                                09:06

Is that okay?

A.   Yes.

Q.   We'll regularly take breaks today.  And if you need a break, please say so.  The only thing I                    09:07

Page 5

ask is if there's a question pending, you'll answer    09:07
my question before taking the break; is that fair?

A.   Absolutely.

Q.   Is there any reason you can think of why you will not be able to give your best, most                  09:07
complete, and most accurate testimony here today?

A.   No.  I'm good to go.

Q.   Okay.  Is there any software that you open up on your end besides Zoom?

A.   No.                                                09:07

Q.   Okay.

A.   I closed -- I think I closed everything.

I can double-check.

Q.    Okay.

A.    Yeah.  Yeah.  Everything is closed.          09:07

Q.    Good.  Do you have any paper documents in front of you?

A.    Yes, I have my rebuttal report and my original report.

Q.    Okay.  I will probably share my screen to          09:07
show you some paragraphs.  You may also feel free to refer to your own paper copies, whichever works for you.

A.    Okay.  Sometimes I think it's good to have the paper copy because, you know, an isolated          09:08

Page 6

paragraph is sometimes something I might need to          09:08
look at, see what was before or after so that I understand the context that I wrote it in, if that's okay with you.

Q.    Of course.  How did you prepare for          09:08
today's deposition?

A.    I read both of my reports a couple of times.

Q.    Did you meet with anyone in order to prepare --          09:08

complaint as well as on page what was that 11 of my

report so I believe I have answered the question at

this point.                                              15:52

BY MR. YUAN:

Q.   Did you see the tufting somewhere else

besides the top of the boots?

MS. FOUNTAIN:  Again, objection as to

which -- vague as to which boot you're talking          15:53

about.

MR. YUAN:  The Classic Ultra Mini by UGG.

THE WITNESS:  I don't.

MS. FOUNTAIN:  Objection.  Asked and

answered.  But go ahead Karen.                          15:53

THE WITNESS:  I don't know what you mean.

Are you trying to ask me if I see it on the outsole

bottom erelong the space I don't.

BY MR. YUAN:

Q.   Yeah, please answer.                            15:53

Page 218

A.   So I don't see it on the bottom perimeter       15:53

of the boot.  I don't see it on the outsole,

obviously.  So I don't understand what else I'm

supposed to say.  It's exposed and I see it and I've

showed you multiple places where it is visible and      15:53

exposed.

Q.   Do you see tufting along the horizontal seam of the Classic Ultra Mini?

MS. FOUNTAIN:  Objection as to horizontal seam.  Also objection as to asked and answered and argumentative.  She's already answered where she sees the exposed tufting counsel.                    15:53

MR. YUAN:  I'm confirming whether that's the only place that she saw.

MS. FOUNTAIN:  And I believe that she's already answered that that's where she.         15:54

MR. YUAN:  Is her answer yes?

MS. FOUNTAIN:  Again.

THE WITNESS:  Go ahead, Jaime.

MS. FOUNTAIN:  Argumentative and asked and answered.                                    15:54

BY MR. YUAN:

Q.   Is your answer yes, Ms. de Baere, you only saw tufting on the top of the booth of the Classic Ultra Mini?                                   15:54

Page 219

A.   I've showed you multiple views multiple images of the same product where I see it exposed.    15:54

Here there's a medial view, a lateral view, a perspective view, and I see it there are all of the views.  I don't see it on outsole bottom, if that's    15:54 what you're asking.  Ditto.  I don't know what else to say.  I've told you multiple times in multiple ways that I see exposed tufting.  It's one aspect of the asserted trade dress and I see it as I believe all of you probably do as well.    15:55

Q.    Okay.

MR. YUAN:  Let me mark this as Exhibit 9.

(Whereupon Exhibit 9 was marked for

identification.)

BY MR. YUAN:    15:55

Q.    And is there a color that you saw of the exposed tufting?

MS. FOUNTAIN:  Objection.  vague.

THE WITNESS:  I don't see color specified as part of the asserted trade dress.    15:55

BY MR. YUAN:

Q.    No, no.  I'm just asking whether -- what's the color of the exposed tufting you saw on the Classic Ultra Mini?

MS. FOUNTAIN:  Objection.  Vague.    15:55

Page 220

THE WITNESS:  There I -- this lore happens    15:55
to be what a cream, off-white, beige well, I don't
know what you want to call it, cream off-white,
something to that have that nature.

I have a -- my work -- weekly work call    15:55
that starts in five minutes and I need to say that I
am not going to be there.  I know that I need to
finish answering the question.  Here I see
off-white.

BY MR. YUAN:    15:56

Q.   Okay.

A.   And but I know -- but I know in looking at
the asserted trade dress that will chore is not
specified.

Q.   Okay.  Thank you we can we'll be tasting    15:56
taken?

A.   We can just like five.  That's fine.

MR. YUAN:  Okay, great.

THE WITNESS:  Yeah.  I just need to e-mail
them and let them no I am not going to make it.    15:56
Okay.  Thank you.  I really appreciate --

THE VIDEOGRAPHER:  We'll be back in five.

THE VIDEOGRAPHER:  Off the record.  The
time is 3:57 p.m.

(Recess.)    15:56

Page 221

THE VIDEOGRAPHER:  Back on the record.        15:56

The time is 4:08 p.m.

BY MR. YUAN:

Q.   Okay.  Ms. de Baere, did you talk with counsel during the break?                              16:08

A.   No.

Q.   Okay.  How would you explain the difference between tufting and stitching to your students just generally speaking as a former expert?

A.   Stitching can be described many ways.        16:08
Stitching can be decorative stitching.  It can be a seam.  It can be something that connects to pieces.  It can be embroidery.  It can be, you know, something in apparel or accessories or many different things.  Stitching yeah, stitching goes a        16:08
long way.  Let's just put it that way.

Q.   Okay.  And tufting?

A.   In my opinion or based on my experience tufting is, you know, based on my experience or, you know, just my opinion, would be that if it was        16:09
fluffy if I had to pick one word.

Q.   That's it tufting is fluffy?

MS. FOUNTAIN:  Objection.  Argumentative. Mischaracterizes prior testimony.

BY MR. YUAN:                                          16:09

Page 222

Q.   Do you have anything else to add by sides    16:09
tufting besides fluffy?

A.   Fuzzy, fluffy, you know, a bit of texture,
tufting has would have more texture whereas
stitching, you know, is more thread related that's    16:10
just say that.

Q.   Okay so on page -- well, let me share my
screen.

Showing you 282 opening report?

A.   282?                                            16:10

Q.   Yes.

A.   Okay.

Q.   Do you see a diamond pattern on the braid
of the UGG Tasman Slipper?

A.   A.                                              16:10

Q.   A diamond pattern.

MS. FOUNTAIN:  Objection.  Vague.

Go ahead, Caroline.

THE WITNESS:  I don't see a diamond.

BY MR. YUAN:                                          16:11