UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DECKERS OUTDOOR                                    CASE NO.: *3-23-04850-AMO*

CORPORATION, a Delaware Corporation,

(Plaintiff,)

v.

LAST BRAND, INC. D/B/A QUINCE,

(Defendant).

**REBUTTAL OF DAVID FRANKLYN REPORT**

**Prepared by Rob Wallace**

January 7, 2025

1

## I.    Introduction

1.    I was engaged by counsel for Defendant, Last Brand, Inc. d/b/a Quince to review the expert report and survey design/findings that David Franklyn submitted in this matter.  I was asked to provide my expert opinion on Mr. Franklyn's survey to determine if it was reliable and if its results are accurate reflections of whether there is a relevant likelihood of confusion between the UGG Tasman Slipper and the Quince Australian Shearling Clog Slippers in question. I note that Mr. Franklyn did not conduct a survey on any purported secondary meaning of the alleged UGG Tasman trade dress.

2.    In addition, I was also asked to provide my expert opinion on the UGG Tasman Slipper's alleged secondary meaning and the likelihood that the relevant public confuses their source with that of the Quince products in question.  Among other things, I was asked to conduct an empirical, court-compliant survey designed to determine the relevant consuming public's perception of the issues at hand in this case. Please reference a detailed overview of my survey and its findings as reported in my rebuttal to Matthew G. Ezell 's reports as well as the survey conducted and its findings all filed with my rebuttal report to Mr. Ezell's reports.

3.    It is important to note that Mr. Franklyn did not conduct surveys on the UGG Bailey Button Boot nor the UGG Classic Ultra Mini products' purported secondary meaning nor their possible likelihood of confusion with the Quince products in question.  I ask that the factfinder refer to my rebuttal of Mr. Ezell's reports and surveys, outlined above, to review my opinion on those matters.

4.    My opinions consider the information provided to me, as cited, publicly available information, as cited, the results of the survey findings, as cited, my over 45 years of brand identity and brand communications expertise for a large number of consumer brands, as cited in Appendix 3 of this report, and my 24 years of work as an expert witness, as summarized in Appendix 4 of this report. This report constitutes my findings as outlined below.

5.      I reserve the right to supplement my opinions based on any additional information that would affect the outcome of my work or provide greater insight into the matters examined.

## I.      Summary of Opinions: Mr. Franklyn's survey did not test Secondary Meaning and therefore Likelihood of Confusion cannot be claimed

6.      There are several critical failures in the Mr. Franklyn's survey that invalidate it from being reliable and relevant to the issues in this case. Perhaps most importantly, Mr. Franklyn's survey did not confirm that the Deckers Uggs Tasman Slipper's alleged trade dress has acquired distinctiveness nor established secondary meaning, in that the relevant consuming public associates it with one unique source.  While I am not an attorney, it has been my understanding that the accusing party must first establish that its product's alleged trade dress is associated with one unique source before any claims of likelihood of confusion are even considered[1]. Mr. Franklyn's own report states, "I conducted an analysis on whether there is a likelihood of post-sale confusion between Quince's Australian Shearling Clog Slippers and Decker's Ugg slippers."[2]  It states nothing about conducting a survey or offering any opinion on the alleged Tasman trade dress's secondary meaning.

7.      Proving that the accusing party's trade dress has achieved relevant secondary meaning is required before proceeding to any potential likelihood of confusion claim.[3] And since Mr. Franklyn's survey failed to do so, his conclusions about any purported likelihood of confusion between the UGG Tasman Slippers and the Quince Australian Shearling Clog Slippers should not be considered.

## II.      Summary of Opinions: Mr. Franklyn's survey questions are improper and possibly biasing

8.      Mr. Franklyn's survey's first primary question asks what source the respondent identifies with the stimuli. This is not a valid likelihood of confusion question.  And since it

---

[1] Likelihood of confusion "issue is never reached if secondary meaning is not proved." Vincent Palladino "Secondary Meaning Surveys" citing *Spraying Systems Co. v. Delavan, Inc.*, 762 F. Supp. 772, 779, n.6 (N.D. Ill. 1991); *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 2009 WL 6812111 (S.D. Fl. Oct. 13, 2009).
[2] Franklyn report, pg. 4
[3] *See supra* n. 1.

3

precedes the main question about potential source confusion, it could well bias the primary question responses. For example, if the respondent believed the product comes from Isotoner (as some did) then respondents may have this in mind when they are answered further questions about source confusion, thereby biasing these responses.

9.      In addition to the findings outlined above, there are some open-ended responses from those that responded that the product is from UGGS which suggest respondents are not basing their answers on the alleged trade dress in question or were guessing.  For example: (please note that the following are extracted from the data document provided. Misspellings appear as they were recorded)

"They make other products that look very similar in design or style just a guess really

"They look comfortable"

"That‚Äôs them lol"

"I am not sure why i said that to be honest"

"They look like the same material as Ugg but if I'm wrong I wouldn't be surprised I think these are slippers that a lot of companies could sell"

"I don‚Äôt know. Just a gues"

"I enjoy this and think others would too."

"Ugh maybe?"

"Having a special thing"

"The color of fabric "

10.     The proper questions, and their non-biasing sequence, would have asked:

*"From the design of this product, do you believe that this shoe design comes from one source/ manufacturer or is it a generic design that is used by different casual shoe manufacturers?"*

4

with closed ended responses being:

*I believe that these shoe designs come from only one unique source/manufacturer*

*I believe that these shoe designs are generic and is available from more than one source/manufacturer*

*Don't know/can't tell*

**11.**    The Franklyn survey did not ask this question, and therefore, not only did it fail to establish secondary meaning, but it also possibly biased later responses about likelihood of confusion issues.

III.    **Summary of Opinions: Non-compliant likelihood of confusion question**

12.    The Franklyn survey's primary question asked:

"Do you believe that these slippers:
1. *Are sponsored or approved by another company.*

2. *Are not sponsored or approved by another company*

3. *Don't know/not sure"*

13.    This question presents two concerns. Firstly, it does not direct respondents to base their perceptions on the shoe's design/trade dress. Equally importantly, the question is not based on the source of these or their manufacturer. The proper question would have been:

*"Based on the designs of these shoes, do you believe that they:*

   • *are the same products?*

• *come from the same or affiliated sources/manufacturers?*

• *or are **not** the same products nor come from the same or affiliated*

*sources/manufacturers?"*

as was asked in the survey I conducted for this issue.

14.    The open ended responses to this Franklyn question indicate that some respondents were confused and perhaps did not provide their honest answers.  For example: (again, please note that responses are captured as recorded, including misspellings)

"Not sure"

"They look good quality"

"I'm really not sure"

"just a guess"

"I am not sure about this question right now "

"I just asked if"

"The only brand that came to mind "

"I seen plenty knock offs "

"I don‚Äôt know much about it"

"i‚Äôm not really sure"

15.    Again since Mr. Franklyn's primary survey questions are improper, the responses to these improper may well have resulted in inaccurate perceptions on likelihood of confusion of the products in question based on their alleged trade dress.

## IV.    Summary of Opinions: Mr. Franklyn's survey did not test point of sale confusion

16.     Mr. Franklyn's report states "In particular, I conducted an analysis on whether there is a likelihood of post-sale confusion that may arise between Quince's Australian Shearling Clog Slippers and Decker's UGG® slippers"[4].  His survey tested the trade dress of the Quince

---

[4] Franklyn report p. 2

6

shoes alone and not in the context of the retail environment through which the Quince or UGG shoes are sold. The court should decide if this is a relevant test of likelihood of confusion, however, I address its attention to the survey that I conducted for this matter which tested both point of sale and post-sale confusion for what may be a more accurate measure of how consumers engage the products in question. My report shows that there is no relevant point of sale nor post-sale confusion between the products in question.

## V.    Conclusion

17. The numerous flaws in the Franklyn survey invalidate its relevance to this matter and Mr. Franklyn's opinions based on it. I refer the court to the proper survey conducted for the report that I filed in this matter which proves that the UGG shoes in question have not acquired relevant distinctiveness nor secondary meaning, nor is there meaningful likelihood of confusion between the products in question.

18. I hold these opinions within a reasonable degree of certainty based on the survey results and my 40-plus year experience in the branding industry. I respectfully reserve the right to amend this declaration with further comments in the event that additional information becomes available.

19. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 5, 2025

*Rob Wallace*

Rob Wallace

7

**Appendix 1:   Documents submitted with this report**

**Exhibit A:  Filed Report**

RWallaceLastBrandEzellRebuttal

**Exhibit B: Survey screeners/questionnaire**

RWallaceDeckervLastBrand SM-L-OC Survey 9_27_24.pdf

**Exhibit C. Survey Results**

UGG Shoes Final Freqs 10-5-24.xlsx

UGG Shoes Final Data 10-5-24.xlsx

**Appendix 2:   Documents Cited**

Second Amended Complaint

Vincent Palladino "Secondary Meaning Surveys" citing *Spraying Systems Co. v. Delavan, Inc.*, 762 F. Supp. 772, 779, n.6 (N.D. Ill. 1991)

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 2009 WL 6812111 (S.D. Fl. Oct. 13, 2009).

*1-800 CONTACTS, INC. v. Lens. com, Inc.,* 722 F. 3d 1229, 1248-49 (10th Cir. 2013)

**Appendix 3:  Curriculum Vitae of Robert Wallace**

**Rob Wallace   Expert Witness: Brand identity**

917-860-0319

Rob@bestofbreedbranding.com

www.RobWallaceExpert.com

As the former managing partner of Wallace Church, Inc., one of the most recognized and accomplished brand identity strategy and design consultancies, I have more than thirty years of expertise in all aspects of branding strategy and design analysis for national and global brands. My core expertise is the ability to create and differentiate brand experiences that drive consumer awareness and purchase behavior.

Clients include Procter & Gamble, Coca-Cola, Unilever, Pfizer, Dell, Pepsico, Revlon, Target, The Home Depot, Johnson & Johnson, Bacardi, E&J Gallo, Mattel, Anheuser Busch, PNC Bank, Kroger, L'Oreal, s/Miracle Gro and more than 40 national/global consumer product marketers of equal caliber.

**Areas of Expertise:**

| | | |
|---|---|---|
| Trademark/Trade Dress | Intellectual Property | Advertising Claims |
| Package/Product Design | Marketing Strategy | Consumer Research |
| Licensing | Brand Communications | Copyright Damages |
| | Visual Brand identity | Consumer Research |

10

Planning/Analysis

11

**Industry Experience:**

| | |
|---|---|
| Food | Personal Care |
| Beverage | OTC and Rx Drugs |
| Home Products | HBA/Beauty Care |
| Wellness | Technology Brands |
| Toys/Sporting Goods | Hard Goods |
| Beer/Wine/Spirits | B to B |
| Apparel | Retailer Brands |
| Financial Services | |

**Background:**

Best of Breed Branding Consortium, LLC                    June 2014 – Present

Managing Partner

- Actively manage a consortium of branding communications consultancies.

- Provide strategic consulting on all branding issues including brand name development, brand identity, graphic and structural package design, trademark and copyright development, and integration across advertising and all other brand communications.

Wallace Church, Inc.,                    1985 – June 2014

Managing Partner, Strategy

- Actively manage one of the world's most respected brand identity design consultancies.

12

• Provide strategic consulting on all branding issues including brand name development, brand identity, graphic and structural package design, trademark and copyright development, and integration across advertising and all other brand communications.

Peter Cris Advertising, Inc., New York, NY                1984 – 1985

Vice President, Marketing

• Provided both the strategic and creative force for this regional advertising agency.

• Acted as primary liaison between clients and creative department.

Modular Marketing, Inc., New York, NY                1982 – 1984

Senior Account Manager

• Managed select client relationships through all creative and strategic aspects of project management for this marketing communications consultancy.

• Designed and developed brand promotion programs, corporate communications and brand identity assignments.

Grey Advertising, Inc., New York, NY                1981 – 1982

Senior Account Manager

• Actively participated in one of the world's largest advertising agencies through the Market Horizons function, consulting with core clients on advertising and new brand communications opportunities.

**Education:**

13

MBA coursework, The New School, New York, NY        1981 – 1983

BA, English, Gettysburg College, Gettysburg, PA        1977 – 1981

**Professional Activities:**

- Expert speaker on brand identity design at more than 40 marketing, design and research industry events across the US, UK, Europe, Latin America and Asia

- Author of numerous articles and published case histories on brand identity design in the Wall Street Journal, Forbes, Marketing Week, Design Management Journal, Package Design Magazine and numerous other publications,

- Co-Author "Really Good Package Design Explained," Rockport Press, 09

- Lecturer on brand identity at Columbia Business School, Georgetown University, Seton Hall, University of Texas, School of Visual Arts Masters in Branding and other MBA programs of leading universities

- Board of Directors, Design Management Institute, 2010-Current

- Co-Chair of the Design Management Institute Design Value Project, 2012

- Distinguished Faculty Member, Path to Purchase Institute, speaker at national conference for the last 8 years

- Founder "The Strategic Design Firm Leadership Summit" BXP Live event

**Professional Memberships:**

Board of Directors, the Design Management Institute,

Co-Chair Design Value Project, the Design Management Institute

Distinguished Faculty, Path to Purchase Institute

American Marketing Association

Color Marketing Group

American Institute of Graphic Arts

**Appendix 4: Partial List of Prior Cases**

I have served as an expert witness on branding related issues on more than 95 prior occasions. In the last five years, I have been served on:

•        GDM Enterprises, LLC (Pure Cosmetics) v Astral Health & Beauty, INC., (PUR Cosmetics), U.S. District Court, Western District of Missouri, 2019

•        BAMA ICEE LLC et al v J&J Snack Foods Corp et al., US District Court, Northern District of Alabama, 2019

•        The Black & Decker Corporation, et al v HARBOR FREIGHT TOOLS USA, INC., Report for Mediation, 2019

•        1231 Barrage Inc et al v. Automobile Dealers Assoc of Greater Philadelphia et al, Philadelphia County Court of Common Pleas, 2019

•        Christopher Hayden v. Eagles Nest Outfitters, Inc. et al US District Court Western District of North Carolina, 2019

•        Chantel Ray Finch v Weigh Down Workshop Ministries, Inc. et al, US District Court, Eastern District of Virginia, Norfolk Division, 2019

16

• Mambu Bayoh v. AfroPunk Fest 2015, et al., U.S. District Court, Southern District of New York, 2019

• Scorocs LLC v. Innovations for Poverty Action Inc., US District Court, Western District of Missouri, At Kansas City, 2019

• Good L Corp v. Fasteners for Retail, Inc., US District Court, Middle District of Tennessee, 2019

• Sunny Days Entertainment LLC v. Traxxas L.P., US District Court, District of South Carolina Greenville Division, 2019

• Venus Et Fleur, LLC v. Affordable Luxury NY, Inc dba Pret a Fleur, et al, US Court, Southern District of New York, 2019

• Rhino Metals Inc, v Sturdy Gun Safe Inc, US District Court, District Idaho, 2019

• American Customer Satisfaction Index, LLC v Genesys Telecommunications Laboratories, et al, US District Court, Eastern District of Michigan, Southern Division, 2020

• I.M. Wilson, Inc v Obchtchestvo S Ogranitchennoy Otvetsvennostyou "Grichko", et al, US Distinct Court, Eastern District of Pennsylvania, 2020

17

• Country Life v. The Hain Celestial Group, Inc, US District Court, Eastern District of New York, 2020

• New NGC, Inc, et al v. Alpinebay, Inc, US District Court, For the Northern District of Illinois, Eastern Division, 2020

• P&P Imports v. Johnson Enterprises, LLC et al, US District Court for the Central District of California, 2020

• New NGC, Inc, et al v. Alpinebay, Inc, US District Court, for the Northern District of Illinois, Eastern Division, 2020

• Otter Products, LLC et al v. Bigbirds, LLC et als, US District Court, for the District of Colorado, 2020

• Sulzer Mixpak, A.D. v. DXM Co LTD et als, US District Court, for the Southern District of New York, 2020

• Jalinski Advisory Group, Inc. v. JBL Financial Services, Inc., US District Court, for the Eastern District of Missouri, Eastern Division, 2020

• American Customer Satisfaction Index, LLC v ForeSee Results, et al, US District Court, Eastern District of Michigan, Southern Division, 2021

18

• Jalinski Advisory Group, Inc. v. Franklyn Advisory Group, Inc., US District Court, for the Eastern District of Pennsylvania, 2021

• Restoration Hardware, Inc., *et al*., v. Bugalow Home, LLC, US District Court, for the Southern District of Ohio, Eastern Division, 2020

• American Medical Experts, LLC v. Ronny Nizar Hamad, Prime Medical Experts, LLC et al, US District Court, for the Eastern District of Virginia, 2020

• American Customer Satisfaction Index, LLC v ForeSee Results, et al, US District Court, Eastern District of Michigan, Southern Division, 2021

• Thrive Natural Care Inc. v. Thrive Causemetics, Inc, US District Court, Central District of California, 2021

• BMC Software, Inc v. Baker Hughes, a GE Company et al, US District Court, Southern District of California, 2021

• Abbott Laboratories, Freestyle Libre, Reexamination Trade Dress Proceedings in the United States Patent and Trademark Office (USPTO), 2021

• Orange Bang, Inc. and Monster Energy Company v. Vital Pharmaceuticals, Inc., American Arbitration Association, Los Angeles Regional Office, 2021

19

• Diamond Assets v Device Cycles, et al., US District Court, Western District of Wisconsin, 2021

• I&I Hair Corp v Beauty Plus Trading Co, Inc. et al., US District Court, Northern District of Texas Dallas Division, 2022

• Glam & Glitz Nail Design Inc. v. IGel Beauty, LLC, et al., US District Court for the Central District of California, 2022

• Certain Casual Footware and Packaging Thereof, et al., US International Trade Commission, Washington DC, 2022

• Simpson Strong-Tie Company, Inc v Mitek, Inc, US District Court for the Northern District of California, 2022

• Opulent Treasures, Inc v Portofino International, US District Court for the Central District of California, 2022

• Macy's IP Holdings, LLC v Aroma350, Inc., US District Court for the Southern District of New York, 2022

• Independent BDSI Owners Association et. al v. Super Bee Holdings, American Arbitration Association, 2022

20

• Ace Group International, LC and Ace Group Bowery LLC v. 225 Bowery, LLC, Arbitration Administered by the International Chamber of Commerce, 2022

• Woodstock Ventures et al v. Woodstock Roots, LLC., US District Court for the Southern District of New York, 2022

• Pecararo Latteria, LLC Trademark Application., United States Patent and Trademark Office, 2022

• Purple Innovation, LLC v. Responsive Surface Technology et al, U.S. District Court for the District of Utah, 2023

• Harmony Hospice Care LLC., V. Comfortbrook Hospice Et Al. Court of Appeals Eighth District Cuyahoga County Ohio, 2023

• Santa Barbara Polo Club, Inc. and Sb Members, LLC v. Lifestyle Licensing B.V. And Lifestyle Equities C.V., American Arbitration Association International Centre for Dispute Resolution, 2023

o • FoxFactory v Dong Yongqiang United States Patent and Trademark Office, Trademark Trial and Appeal Board, 2024

o

• Rebel Athletic v. Jim Lundberg D/B/A Cs Athletic D/B/A Cheerstix et al., U.S. District Court for the Northern District of Illinois, Eastern Division, 2024

21

o

•	Laguinitas Brewing Co. et al v. Solura. LLC D/B/A Bucanero, U.S. District Court for the Southern District of Florida, 2024

o

•	Ray Scott Fuss v. Fredrick M Bensch, U.S. District Court for the Northern District of Georgia, Atlanta Division, 2024

o

•	Enviodigm Inc v. Apple Inc, et als, Superior Court for the State of California, for the County of Santa Clara, 2024

•	Skims Body, Inc v. Vaughn Associates, Inc Trademark Application., United States Patent and Trademark Office, 2024

•	Deckers Outdoor v. Primark US Corp, U.S. District Court for the Northern District of Massachusetts, 2024

22

**Appendix 5:**

**Partial List of Authored Books and Articles**

I have written a number of peer-reviewed brand identity articles, contributed to branding texts, and have been interviewed by The Wall Street Journal, The New York Times, and more than a dozen branding and marketing communications industry publications. I have spoken at more than 30 marketing communications and design industry events across North and South America, the UK, Europe and Asia.  I have lectured on brand identity at Columbia Business School, Georgetown University, The University of Texas, and other leading universities. I have conducted webinar events with more than 1,600 participants on the topic of design process and design thinking.

I was on the Board of Directors of the Design Management Institute, the most prominent global design industry association, and I co-chair its Design Value Project. I am a Distinguished Faculty Member of the Path to Purchase Institute.  Please see my current CV for a listing of these and other accomplishments.

I coauthored a book entitled "Really Good Packaging Explained", released in 2009 by Rockport Publishers.  I was also a contributing author with Robin Landa and the book" Build Your Own Brand", Rockport, 2013.  I also wrote the forward to Christopher Durham's book, "52 The My Private Brand Project", Folio28, 2014

In the past 15 years I have written the following articles:

- "The Tropicana Trouble and How It May Have Been Prevented", Package Digest, 2009

- "Blood, Sweat and Tiers, Building Optimal Brand Identity Architectures", GAIN, AIGA Journal of Business and Design, June 2008

- "Heinz Turns Iconic Authenticity into Fresh Relevance", The Hub, September 2007

- "Design ROI Envisioned", Step Inside Design, July/August 2007

- "Be Smart Be Simple", Design Management Review, Spring 2006

- "Proving our Value: Measuring Package Design's Return on Investment", Design Management Journal, Summer 2001

- "The High Cost of Saving Money", Package Digest, Summer 2000

- "Icons, Your Brand's Visual Essence, Brandweek, Spring 2000

I have coauthored an article with Pamela De Cesare, former Associate Director of Package Communications, Kraft Foods, Inc., entitled "Amazing Pace, Shared Views on the Design Process", Design Management Journal, Spring 2000.

In the past several years I have posed more than two dozen articles and posts on Wallace Church's web site: http://wallacechurch.tumblr.com/ these include but are not limited to:

• "Quantifying Design's Value"

• "Design RI Re-Envisioned",

• "Cutting through the Sea of Sameness"

• "Architecting a Brand Experience"

• "The National Color" and more

24

I am the founder of the Linked In Group- "Relevant Disruption in Branding"

https://www.linkedin.com/groups?home=&gid=7422931 where I have posted more than 10

articles including:

• "Right Here, Right NOW!"

• "Fashion Touchdown"

• "Color is Key"

• "Cool Customization"

• "Relevance for Right Now"

• "Shape Language"

• "Visual Vampires"

_____