Xinlin Li Morrow (SBN 281707)
Ryan McMenamin (*pro hac vice*)
Lawrence Yichu Yuan (*pro hac vice*)
**Morrow Ni LLP**
xinlin@moni.law
ryan@moni.law
lawrence@moni.law
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Defendant Last Brand, Inc. d/b/a Quince*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, | Case No. 23-cv-04850-AMO-LJC |
| *Plaintiff*, | Hon. Araceli Martínez-Olguín |
| v. | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES** |
| LAST BRAND, INC. d/b/a QUINCE, | |
| *Defendant*. | |
| | [Filed concurrently with Declaration of Xinlin Li Morrow] |
| | Date: June 12, 2025 |
| | Time: 2:00 p.m. |
| | Place: Courtroom 10 |
| | Complaint Filed: June 12, 2023 |
| | Trial Date: October 14, 2025 |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 2

III.    RESPONSES TO DECKERS' "BACKGROUND" AND "UNDISPUTED FACTS" ...... 6

        A. Evidence Relating to the Overall UGG Brand Is Irrelevant ........................................ 6

        B. Unsolicited Media Attention ....................................................................................... 7

        C. Sales .......................................................................................................................... 7

        D. Flawed Secondary Meaning Surveys and Significant Evidence Showing No Secondary
           Meaning ..................................................................................................................... 8

        E. Invalid Likelihood of Confusion Surveys and Significant Evidence Showing No
           Likelihood of Confusion ............................................................................................. 9

        F. Emails and Testimony from Quince Taken Out of Context ........................................ 10

        G. Functionality of The Asserted Trade Dresses ........................................................... 13

IV.     LEGAL STANDARD ............................................................................................. 14

V.      ARGUMENTS ........................................................................................................ 15

        A. Deckers Is Not Entitled to Summary Judgment for Its Failure to Establish Non-
           Genericness of the Asserted Trade Dresses as a Matter of Law. ................................ 15

        B. Genuine Disputes Over Functionality Preclude Summary Judgment. ........................ 15

        C. Genuine Disputes Over Secondary Meaning Preclude Summary Judgment. ............. 18

        D. Genuine Disputes Preclude Summary Judgment on Likelihood of Confusion. ......... 22

        E. Summary Judgment on Deckers' State Law Claims Should Be Denied. .................... 25

VI.     CONCLUSION ....................................................................................................... 26

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
    722 F.3d 1229 (10th Cir. 2013)..................................................................................22

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
    280 F.3d 619 (6th Cir. 2002)......................................................................................14

*Adidas Am., Inc. v. Skechers USA*,
    No. 3:15-CV-01741-HZ, 2017 WL 3319190 (D. Or. Aug. 3, 2017) .........................17

*Adidas-Am., Inc. v. Payless Shoesource, Inc.*,
    546 F. Supp. 2d 1029 (D. Or. 2008).................................................................17, 22, 23

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................14

*Apple Inc. v. Samsung Elecs. Co.*,
    786 F.3d 983 (Fed. Cir. 2015), rev'd and remanded on other grounds, 580 U.S.
    53 (2016) ....................................................................................................................16

*Art Attacks Ink, LLC v. MGA Enter. Inc.*,
    581 F.3d 1138 (9th Cir. 2009).....................................................................................14

*Audio Fidelity, Inc. v. High Fidelity Records, Inc.*,
    283 F.2d 551 (9th Cir. 1960).......................................................................................20

*BillFloat Inc. v. Collins Cash Inc.*,
    105 F.4th 1269 (9th Cir. 2024).....................................................................................23

*In re Boston Beer Co.*,
    198 F.3d 1370 (Fed. Cir. 1999)....................................................................................19

*Branding v. By Lee Tillet, Inc.*,
    940 F. Supp. 2d 1178 (C.D. Cal. 2013).........................................................................25

*Cont'l Lab. Prods., Inc. v. Medax Int'l, Inc.*,
    114 F. Supp. 2d 992 (S.D. Cal. 2000) .....................................................................18, 19

*CytoSport, Inc. v. Vital Pharms., Inc.*,
    894 F. Supp. 2d 1285 (E.D. Cal. 2012).....................................................................22, 23

*DayCab Co., Inc. v. Prairie Tech.*,
    LLC, 67 F.4th 837 (6th Cir. 2023) ...............................................................................17

*Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*,
    No. 2:20-CV-09521-FLA (EX), 2024 WL 2208099 (C.D. Cal. Apr. 9, 2024)........18, 20, 21, 24

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

*Deckers Outdoor Corp. v. Wolverine Group Pty Ltd.*,
  Case No. 1:24-cv-03164 (N.D. Ill.)........................................................................................2

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002)..............................................................................................15

*Faberge, Inc. v. Saxony Products, Inc.*,
  605 F.2d 426 (9th Cir. 1979)................................................................................................20

*Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*,
  198 F.3d 1143 (9th Cir. 1999)..........................................................................................14, 15

*Glassybaby, LLC v. Provide Gifts, Inc.*,
  2011 WL 4571876 (W.D. Wash. Sept. 30, 2011) ..............................................................14

*Ironhawk Tech. v. Dropbox, Inc.*,
  994 F.3d 1107 (9th Cir. 2021)..............................................................................................23

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth*,
  58 F.3d 27 (2d Cir. 1995).......................................................................................................1

*Jenny Yoo Collection, Inc. v. Watters Design Inc.*,
  No. 16-CV-2205 (VSB), 2017 WL 4997838 (S.D.N.Y. Oct. 20, 2017)..............................20

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
  150 F.3d 1042 (9th Cir. 1998)..............................................................................................14

*Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*,
  199 F.3d 1009 (9th Cir.1999).................................................................................................1

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
  No. C 07-03752 JSW, 2008 WL 4614660 (N.D. Cal. Oct. 16, 2008) .................................22

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985)..............................................................................................22

*Martinez v. City of Los Angeles*,
  141 F.3d 1373 (1999) ...........................................................................................................14

*Moldex-Metric, Inc. v. McKeon Prods., Inc.*,
  891 F.3d 878 (9th Cir. 2018)................................................................................................15

*Phillips v. Cohen*,
  400 F.3d 388 (6th Cir. 2005)................................................................................................17

*Playboy Enters., Inc. v. Terri Welles, Inc.*,
  78 F.Supp.2d 1066 (S.D. Cal.1999), rev'd in part on other grounds, 279 F.3d
  796 (9th Cir. 2002) ...............................................................................................................22

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

*Ribitzki v. Canmar Reading & Bates, Ltd. P'ship*,
   111 F.3d 658 (9th Cir.1997)...............................................................................................14

*Rodeo Collection, Ltd. v. West Seventh*,
   812 F.2d 1215 (9th Cir.1987)..............................................................................................22

*Scharf v. U.S. Atty. Gen.*,
   597 F.2d 1240 (9th Cir. 1979)............................................................................................15

*Sterilite Corp. v. Olivet Int'l, Inc.*,
   No. 1:22-CV-10327-JEK, 2024 WL 4349271 (D. Mass. Sept. 30, 2024) ................................21

*Sw. MFG. LLC v. Wilmar LLC*,
   No. CV 22-8541-MWF (PDX), 2024 WL 3718371 (C.D. Cal. July 16, 2024)........................15

*T.W. Electric Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987)..............................................................................................14

*TBL Licensing, LLC v. Vidal*,
   98 F.4th 500 (4th Cir. 2024)..................................................................................................8

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001) .........................................................................................1, 16, 20, 21

*Trovata, Inc. v. Forever 21, Inc.*,
   No. SACV0701196JVSMLGX, 2008 WL 11337278 (C.D. Cal. June 13, 2008).....................20

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ...........................................................................................................14

*United States v. Yates*,
   710 F. Supp. 3d 733 (N.D. Cal. 2024) .................................................................................15

*Vans Inc. v. ACI Int'l*,
   No. 8:21-CV-01876-DOC (ADS), 2023 WL 6930323 (C.D. Cal. Oct. 11, 2023) ...................17

*Wal-Mart Stores, Inc. v. Samara Bros.*,
   529 U.S. 205 (2000) ................................................................................................1, 20, 24

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) .........................................................................14, 19

*Watson-Marlow, Ltd v. Changzhou Prefluid Tech. Co*,
   No. CV 14-3225 RGK, 2014 WL 12586432 (C.D. Cal. Aug. 1, 2014)...................................19

*Woodall v. Walt Disney Co.*,
   No. CV 20-3772-CBM, 2024 WL 5329913 (C.D. Cal. Nov. 1, 2024)....................................15

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

**REGULATORY CASES**

*In re Busch Entm't Corp.*,
    60 USPQ2d 1130 (TTAB 2000)..........................................................................................19

*In re Penzoil Prods. Co.*
    20 USPQ 2d 1753 (TTAB 1991).........................................................................................20

**RULES**

Fed. R. Civ. P. 56(e)(1) ......................................................................................................14

**TREATISES**

2 McCarthy on Trademarks and Unfair Competition (5th ed.)......................................8, 19

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

## I.    INTRODUCTION

In filing this case (and hundreds of others) and its partial summary judgment motion, Deckers seeks to monopolize the sheepskin footwear market and undermine its competitors' "fundamental right to compete through imitation of a competitor's product." *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1011–12 (9th Cir.1999). "[O]verextension of trade dress protection can undermine restrictions in copyright and patent[1] law that are designed to avoid monopolization of products and ideas." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth*, 58 F.3d 27, 32 (2d Cir. 1995). ██████████████████████████ ████████████████████████████████████ ████████That is good for consumers. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying. As the Court has explained, copying is not always discouraged or disfavored by the laws which preserve our competitive economy. … Allowing competitors to copy will have salutary effects in many instances."). If Deckers is successful, consumers who wish to buy essential sheepskin shoes will have no other choice but to buy Deckers' high-priced and high-margin products. That is the exact anticompetitive outcome the Supreme Court warned against. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213 (2000) ("Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves…").

Not only does sound policy dictate that Deckers must not prevail, but, on the merits, Deckers' motion fails, too. *First*, as a threshold matter, because Quince has raised genericness as a defense to the trade dress claims, Deckers bears the burden to prove nongenericness of its asserted trade dresses. The motion makes no mention of nongenericness, much less carries the burden to prove it. The motion thus fails because Deckers' complete failure to offer even a scintilla of proof on the issue of nongenericness shows there are, at a minimum, triable issues on this claim. *Second*, on each of the trade dress issues Deckers' motion does address and on which Deckers bears the

---

[1] While Deckers asserts one design patent in this case, its partial summary judgment motion only concerns trade dress claims and related state law claims.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

burden of proof—non-functionality, secondary meaning, and likelihood of confusion—genuine disputes of material facts abound. Summary judgment is not appropriate.

## II.    BACKGROUND

### *Deckers*

Deckers is a multi-billion-dollar footwear company. It owns the UGG brand and sells the UGG-branded shoes, many of which are sheepskin shoes.

Deckers had tried to register its sheepskin boots—the tall versions of the Classic Ultra Mini—for trade dress protection at the USPTO twice. In both cases, the USPTO rejected Deckers' applications because the boots have not acquired distinctiveness, or secondary meaning. Ex. 1[2] ("Registration is refused because the applied-for mark consists of a nondistinctive product design or nondistinctive features of a product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness."); Ex. 2 (same). Thereafter, Deckers abandoned its federal trade dress applications. Exs. 3-4.

Having been defeated at the USPTO, Deckers resorts to litigation to scare off competitors. For example, it recently forced an Australian family-owned company "Ugg Since 1974," which had been selling sheepskin boots five years before Deckers' predecessor existed, to change its name to "Since 1974" outside of Australia[3] and New Zealand.[4] Since 2009, Deckers has filed 397 lawsuits. Ex. 7. All but two[5] of the resolved cases ended in settlement or default judgment. *Id.*

### *The Asserted Trade Dresses*

In this case, Deckers asserts three trade dresses: (1) the Classic Ultra Mini, a shorter version of the sheepskin boot that the USPTO found to be not distinctive; (2) the Bailey Button, which was covered by a design patent that has expired;[6] and (3) the Tasman, which is the basic

---

[2] Unless otherwise specified, all exhibits in this brief refers to the exhibits attached to the concurrently-filed Declaration of Xinlin Li Morrow.

[3] The word "UGG" was found to be generic in Australia. Ex. 5 (Deckers 10-K), at DOC 004217.

[4] *See* Ex. 6 (https://finance.yahoo.com/news/australian-owned-ugg-since-1974-213500595.html). The case is still ongoing. *Deckers Outdoor Corp. v. Wolverine Group Pty Ltd.*, Case No. 1:24-cv-03164 (N.D. Ill.).

[5] The two cases in which Deckers prevailed at trial did not involve trade dresses. One involved the word mark UGG and the other involved two design patents.

[6] Ex. 8 (expired design patent US D599,999).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

form of a sheepskin moccasin/clog slipper. As shown below, many brands produce similar shoes:

| The UGG Classic Ultra Mini and Other Similar Products[7] | | |
|---|---|---|
| UGG | Ugg Boots Made In Australia | Ugg Boots Made In Australia |
| Ugg Since 1974 | The Boston Boots | Cushionaire |
| Dearfoams | UGG Store (unrelated to Deckers) | Lamo |
| Australia Luxe Collective | Bearpaw | Next Group |
| L.L. Bean | Steve Madden | Eddie Bauer |

---

[7] ECF No. 147-7 (Comeau's de Baere Rebuttal) ¶123.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES



Chinese Design Patent No.304964897



Chinese Design Patent No.302792839



EMU Australia



Crazy Trend Expert



Chen



Quince

| The UGG Bailey Button and Other Similar Products[8] |
|---|



UGG



Pegia



Leather-Mocassins

---

[8] ECF No. 147-27 (Catlin de Baere Rebuttal), at 85-86 Appendix 3; ECF No. 147-7 (Comeau's de Baere Rebuttal) ¶ 108 (chart), ¶209.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

| | | |
|---|---|---|
| Eastern Counties Leather | Muk Lux | Vera |


Quince

| The UGG Tasman and Other Similar Products[9] | | |
|---|---|---|
| UGG | DSW Shoe Warehouse | Altar'd State |
| Lamo | Leather-Moccasins | Bearpaw |

---

[9] ECF No. 147-7 (Comeau's de Baere Rebuttal) ¶131.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES



Halflinger

Halflinger

Simple



Stegmann

Quince

### *Quince and Its Products at Issue*

Quince, a San Francisco-based online luxury retailer, focuses on quality, sustainability, and affordability in every product. Its collection spans clothing, footwear, and home goods, all designed with a minimalist, timeless aesthetic. By leveraging a disruptive factory-to-consumer supply chain, Quince delivers high-end products at a fraction of the typical luxury price—often less than half—without compromising on craftsmanship or materials.[10]

Consistent with Quince's product philosophy focusing on essentials, the Quince products at issue feature basic, timeless designs that long existed in the market shown in the charts above.

| Quince Products at Issue |
| --- |



## III.    RESPONSES TO DECKERS' "BACKGROUND" AND "UNDISPUTED FACTS"

### A.    Evidence Relating to the Overall UGG Brand Is Irrelevant

Deckers uses its "Background" section to direct the Court's attention to its UGG brand;

---

[10] *See* About Us, Quince.com, available at https://www.quince.com/about-us.

but this case is not about the UGG brand. Rather, this case concerns whether Deckers can establish that the three specific asserted trade dresses are entitled to trade dress protection, and if so, whether they are infringed.

Despite its clear burden, Deckers instead focuses on the overall UGG brand and irrelevant products. For example, Deckers relies almost exclusively on arguments and evidence related to the popularity of the UGG brand generally. Mot. at 4 ("UGG® is currently one of the world's hottest footwear brands"), 6 (discussing the brand-wise advertising and marketing). Deckers also cites a self-serving and conclusory declaration from its own employee noting that UGG "symbolize[s] a bold free-spirited expression of style." Mot. at 3. Similarly, Deckers seeks to introduce evidence about unrelated shoes, ███████████████████████████

██████████████████████████████████████████████████████████

As discussed in Quince's motion for partial summary judgment and *Daubert* motions, the brand-level evidence from Deckers has minimal relevance because it does not show how the three asserted trade dresses are not generic, have acquired secondary meaning, or are likely to be confused with the Quince products at issue. *See generally* ECF Nos. 147-2 (Quince's MSJ), 147-16 (Quince's MIL No. 2) and 147-22 (Quince's MIL No. 3)).

Thus, evidence on the UGG brand and products not at issue should be disregarded.

### B.    Unsolicited Media Attention

Deckers claims "[t]he UGG® Classic Ultra Mini has received immense *unsolicited* media attention and is often featured on celebrities as seen below." Mot. at 4 (citing Bereda Decl. ¶ 14, Ex. 4). It made the same claim for the UGG Tasman Trade Dress. *Id*. at 5-6 (citing Bereda Decl., ¶¶ 28-29, Ex. 12-13). However, Bereda did not declare that those media attention or celebrity endorsements are "unsolicited." Bereda Decl., ¶¶ 14, 28-29. ████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

### C.    Sales

Deckers claims that its shoes embodying the asserted trade dresses have achieved

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

impressive sales. Mot at 4, 6. But Deckers fails to offer any "proof that the sales were generated by the alleged trade dress, rather than by factors other than source identification." 2 McCarthy on Trademarks and Unfair Competition § 15:49 (5th ed.).

**D.    Flawed Secondary Meaning Surveys and Significant Evidence Showing No Secondary Meaning**

Deckers cites Matthew Ezell's surveys as proof of secondary meaning. Mot. at 6. But the Ezell surveys are fundamentally flawed because they "used ineffective controls that did not properly extract survey noise" and "[a]s a result of using these invalid controls … do not extract relevant survey noise." ECF No. 134-10 (Wallace Rebuttal to Ezell), at 5-8; ECF No. 137-3 (Catlin Rebuttal to de Baere ) ¶¶ 56-70. Indeed, the USPTO had rejected Deckers' secondary meaning survey in support of its trade dress application for using a similarly ineffective control. Ex. 1, at 7 ("[T]he control boot used (Aldo) looks nothing like the test boot (UGG)."). Like the survey rejected by the USPTO, the Ezell surveys also used controls that "look[] nothing like the test boot (UGG)":[11]





Moreover, by using the chestnut color version of the UGG boots as the test images, the Ezell surveys used an unclaimed feature to improperly suggest the boots were UGG boots. *TBL*

---

[11] ECF No. 128-1 (Ezell Bailey Button secondary meaning survey) at 2; ECF No. 128-2 (Ezell Classic Ultra Mini secondary meaning survey) at 2.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

*Licensing, LLC v. Vidal*, 98 F.4th 500, 514 (4th Cir. 2024) (affirming summary judgment of functionality and no distinctiveness of a purported Timberland boot trade dress and noting that "TBL has not claimed the wheat-yellow color or any other. So, the district court found that the survey used features of the boot's design that were not part of the application to improperly suggest the boot was a Timberland.");  ███████████████████████████████

███████████████████████████████

In fact, the proper survey conducted by Mr. Wallace found that the UGG Classic Ultra Mini trade dress and the UGG Bailey Button trade dress have acquired *no* secondary meaning:

- "UGG Classic Ultra Mini boot's 33.5% primary minus its 34.5% control core (Q10a3– Q10b3) results in a **negative 1%** net secondary meaning associating this trade dress with one unique source."
- "UGG Bailey Button boot's 27.5% primary score minus its 43.5% control score (Q10a1 minus Q10b1) results in a **negative 16%** net secondary meaning associating this trade dress with one unique source"

ECF No. 134-10 (Wallace Rebuttal to Ezell), at 11-12.

Notably, Deckers did not conduct a secondary meaning survey on the asserted Tasman trade dress. ECF No. 145-7 (Frankly Tr.) at 20:24-21:4, 21:17-22:3, 63:6-8. Deckers' survey expert David Franklyn also did not offer any affirmative opinions relating to secondary meaning. *Id*. Deckers's attempt to backdoor in belated purported opinions on secondary meaning from Franklyn should be rejected.[12]

### E.    Invalid Likelihood of Confusion Surveys and Significant Evidence Showing No Likelihood of Confusion

Deckers claims that its experts' surveys establish likelihood of confusion. Mot. at 10. But both Ezell and Franklyn surveys on likelihood of confusion are flawed.

First, the Ezell and Franklyn surveys used "ineffective controls." ECF No. 134-10 (Wallace Rebuttal to Ezell), at 5-10; ECF No. 137-3 (Catlin Rebuttal to de Baere) ¶¶ 94-100; ECF No. 147-22 (MIL No. 3), at 1, 4-5.

Second, both surveys improperly suggest an association with UGG by using chestnut-

_____

[12] This improper attempt to introduce undisclosed secondary meaning opinion and other deficiencies of Franklyn's survey are the subject of a *Daubert* motion. ECF No. 147-22.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

colored test images. *Supra*, at 9.

Third, the Franklyn survey "surveyed a much-too-narrow universe that artificially inflated the likelihood of association with UGG." ECF No. 147-22. "With the Franklyn survey, it would be impossible to tell whether the confusion results were due to the difference in material (sheepskin v. wool) between the test and control stimuli." *Id*. at 5.

Indeed, the proper survey conducted by Mr. Wallace found no likelihood of confusion for the asserted trade dress in the initial interest and post-sale context:

- "the net confusion score is negative 9%" for the Asserted Bailey Button Boot Trade Dress;
- "the net confusion score is negative 2%" for the Asserted Classic Ultra Mini Trade Dress;
- "the net confusion score is 2%" for the Asserted Tasman Trade Dress.

ECF No. 134-10 (Wallace Rebuttal to Ezell), at 36-37.

The result for point-of-sale confusion is even more resoundingly clear that there is no likelihood of confusion. *Id*. at 42-44 (3% for the Bailey Button , negative 6.5% for the Classic Ultra Mini, and -13% for the Tasman Trade).

And these results would have to be discounted further as "[l]ogos, labels of brand names on shoes and packaging and purchase channel would further reduce any likelihood of confusion in real life." ECF No. 134-10 (Wallace Rebuttal to Ezell), at 44-49; ECF No. 137-3 (Catlin Rebuttal to de Baere) ¶¶ 83-88 ("Consumers can readily use these brand identifiers to differentiate UGG from other category competitors, including Quince's offerings. These brand identifiers should serve as sufficient buffers from confusion between the three focal UGG products and the corresponding Quince accused products at the point-of-interest, point-of-sale, or post-sale.").

**F.    Emails and Testimony from Quince Taken Out of Context**

Deckers mischaracterizes Quince witnesses' testimonies and claims that "Quince's business model is built on selling knockoffs" and "Quince has built its business on the backs of others' ingenuity" because Quince has no "in-house designers for its footwear, nor does Quince own any design patents for footwear design." Mot. at 7. These assertions are untethered to reality.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

First, Quince does not sell UGG knock-offs—[redacted]

[redacted] Indeed, on the webpages of the three Quince products at issue, Quince used comparative advertising to expressly distinguish its products from Deckers':

BEYOND COMPARE

| | QUINCE | EMU | UGG | CELTIC & CO |
|---|---|---|---|---|
| PRICE | $69.90 | $140.00 | $140.00 | $245.00 |
| SAVINGS (%) | ● | 50% | 50% | 71% |
| 100% AUSTRALIAN SHEARLING LINING | ● | ○ | ○ | ✕ |
| NON-SLIP RUBBER OUTSOLE | ● | ○ | ○ | ○ |
| WATER REPELLENT | ● | ○ | ○ | ✕ |
| FREE SHIPPING | ● | ○ | ○ | ○ |
| FREE RETURNS | 365 days | 30 days | 30 days | 30 days |

ECF No. 142-17, at 1.

[redacted]. These essentials are the basic form of a product. ECF No. 147-7 (Comeau Rebuttal) ¶¶ 118-131 (the Asserted Classic Ultra Mini Trade Dress is the "basic form" of a "quality sheepskin ankle-high boot"; the Asserted Tasman Trade Dress is the "basic form" of "moccasins and clog slippers."). Indeed, the "Asserted Classic Ultra Mini and Tasman Trade Dresses are so common in the industry that it cannot be said to identify a particular source." ECF No. 147-7 (Comeau Rebuttal) ¶¶ 123 (14 competitors in the market that sell a similar ankle-high sheepskin boot), 131 (at least 9 competitors in the market that sell similar moccasin and clog slippers like the Asserted Tasman Trade Dress), 163 (at least 16 similar products predate Plaintiff's

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

launch of the UGG Classic Ultra Mini);

Deckers asserts that Quince knowingly used UGG manufacturers to produce UGG knockoffs. Mot. at 9.

Deckers also relies on one spreadsheet of "Google AdWords" with a few search terms that mention UGG. Mot. at 9. This is a red herring. The UGG word mark is not at issue.

In any case, for the UGG terms, meaning "this didn't get used in any way." *Id*.; ECF No. 125-14 . Indeed,

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

Deckers asserts that "Quince's own witnesses, including its CEO/co-founder and Sr. Merchandising Manager, were unable to tell the Accused Products from authentic UGG® products …." Mot. at 10. Deckers mischaracterizes the testimony. The Quince employees could not name the specific brand based only on images in the complaint (which has only two views for each product) shown to them via Zoom *because the designs are common in the market*.

; Ex. 13 (Burgos Tr.), at 37:12-15 "couldn't say if it was UGG or not", 38:18 ("if the file is saying that [then] it is…).

Indeed, the testimony was elicited in the context where Deckers' counsel struggled to lay a foundation for pictures in the Complaint:

### G.    Functionality of The Asserted Trade Dresses

Deckers' expert's analysis on the functionality of the three asserted trade dresses is invalid because

In contrast, Quince's expert conducted a full analysis and found that the overall appearances of the asserted trade dresses are both

utilitarian and aesthetically functional. ECF No. 147-7 (Comeau Rebuttal) ¶¶ 14 (h)-(j), 132-239.

## IV.    LEGAL STANDARD

Summary judgment is not warranted if a material issue of fact exists for trial. *Ribitzki v. Canmar Reading & Bates, Ltd. P'ship,* 111 F.3d 658, 661 (9th Cir.1997). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Evidence presented by the parties at the summary judgment stage must be admissible. Fed. R. Civ. P. 56(e)(1). In reviewing the record, the court does not make credibility determinations or weigh conflicting evidence (*Martinez v. City of Los Angeles*, 141 F.3d 1373, 1381 (1999)); rather, it draws all interferences in the light most favorable to the nonmoving party. *T.W. Electric Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

"Trade dress protection applies to a combination of any elements in which a product is presented to a buyer, including the shape and design of a product." *Art Attacks Ink, LLC v. MGA Enter. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (cleaned up). "Courts exercise 'particular caution' when extending protection to product designs because such claims present an acute risk of stifling competition." *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007) (citation omitted).

The Lanham Act does not protect generic trade dresses. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1048 (9th Cir. 1998) (affirming summary judgment that grape leaves are generic emblem for wine and not entitled to trademark or trade dress protection). "[T]he plaintiff has the burden of proving nongenericness once the defendant asserts genericness as a defense." *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999) (collecting cases). "[G]eneric product configurations," or "designs regarded by the public as the basic form of a particular item," should not be protectable even upon a showing of secondary meaning. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002); *see also Glassybaby, LLC v. Provide Gifts, Inc.*, 2011 WL 4571876, at *2 (W.D. Wash. Sept. 30, 2011) ("if the object is generic, the question of secondary meaning is irrelevant.") (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992)).

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). Summary judgment is generally inappropriate when there is "conflicting expert testimony." *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979); *Woodall v. Walt Disney Co.*, No. CV 20-3772-CBM, 2024 WL 5329913, at *13 (C.D. Cal. Nov. 1, 2024) ("Since there are dueling expert opinions on the issue, summary judgment on the issue is improper.").

## V.    ARGUMENTS

### A.    Deckers Is Not Entitled to Summary Judgment for Its Failure to Establish Non-Genericness of the Asserted Trade Dresses as a Matter of Law.

Deckers "has the burden of proving nongenericness once [Quince] asserts genericness as a defense." *Filipino Yellow Pages*, 198 F.3d at 1146. Quince pleaded genericness as an affirmative defense. *See* ECF No. 38, ¶ 99. But Deckers' motion, styled as one on both the complaint and Quince's affirmative defenses, is devoid of any attempt to establish nongenericness of the asserted trade dresses. The motion should be denied for the complete failure of proof on nongenericness.

To the extent Deckers injects new evidence and arguments in its reply relating to nongenericness, that would be improper. *United States v. Yates*, 710 F. Supp. 3d 733, 739 n.5 (N.D. Cal. 2024). In any case, Deckers would not be able to establish nongenericness as a matter of law. As discussed in Quince's partial summary judgment motion, undisputed facts prove that at least the Asserted Classic Ultra Mini and Tasman Trade Dresses are generic. ECF No. 147-2 (Quince' MSJ), III(B)-(C), V(B). In addition, the Asserted Bailey Button Trade Dress is also generic because it consists of unprotectable style and unprotectable basic design elements that are overbroad and too generalized. ECF No. 147-7 (Comeau Rebuttal) ¶¶ 85-117.

### B.    Genuine Disputes Over Functionality Preclude Summary Judgment.

Generally, "functionality is a factual question for the jury to decide." *Sw. MFG. LLC v. Wilmar LLC*, No. CV 22-8541-MWF (PDX), 2024 WL 3718371, at *10 (C.D. Cal. July 16, 2024) (denying summary judgment); *see also Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 882 (9th Cir. 2018) (functionality of green ear plugs "is a question for the jury" where defendant argued that the green color "achiev[ed] the function of allowing ear plugs to be seen during safety

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

compliance checks" but manufacturer argued that "numerous color shades are equally or more visible … and would result in the same function of visibility during compliance checks[.]").

Here, genuine disputes exist as to whether the three asserted trade dresses are functional. *See* ECF No. 147-7 (Comeau Rebuttal) ¶¶ 132-239 (analysis of aesthetic and utilitarian functionality for all three asserted trade dresses). Deckers claims that "many designs exist as alternatives," but it fails to analyze the utility or costs of the alternatives. ECF No. 147-16 (MIL No. 2) at 5. This is fatal because "a feature is also functional ... when it affects the cost or quality of the device." *TrafFix*, 532 U.S. at 24; *cf. Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 992 (Fed. Cir. 2015), *rev'd and remanded on other grounds*, 580 U.S. 53 (2016) (applying the *Disc Golf* factors including "whether the design yields a utilitarian advantage," "whether the particular design results from a comparatively simple or inexpensive method of manufacture," in trade dress functionality analysis). Quince's expert analyzed these issues and opined that "the seemingly endless design choices of any boots would be significantly limited by functional constraints like materials, ergonomics, durability and business needs to balance cost and quality; and it is especially true if [designers] are tasked with designing a sheepskin/shearling boot." ECF No. 147-7 (Comeau Rebuttal) ¶ 137. Indeed, Quince's expert opined that the three asserted trade dresses consist of "standard arrangement[s] of utilitarian and/or aesthetic functional components." *Id.*, ¶¶ 135, 203, 220. Deckers' internal documents support that conclusion. *Id.* ¶¶ 202, 219, 239; ECF No. 147-24 at DOC 000011 (█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Deckers is also wrong that it does not "advertise that the overall appearance of UGG® Classic Ultra Mini, UGG® Bailey Button and/or UGG® Tasman (i.e., the combination of elements that make up the Classic Ultra Mini Trade Dress, Bailey Button Boot Trade Dress, and Tasman Trade Dress, respectively) provide any sort of functional advantage." Mot. at 14. It does. For example, "Deckers' website selling the Classic Ultra Mini, the product embodying the Asserted Classic Ultra Mini Trade Dress, also touts its overall design as functional:

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

- Ergonomics, Easy foot insertion ('Built-in flair with a lower shaft which makes for easy on-off wear')
- Dual-functional material ('this Classic features everything you love about the original Classic Boot, like signature UGG sheepskin and a flexible, ultralightweight sole')
- Durability ("At UGG, we design products to last.')"

ECF No. 147-7 (Comeau Rebuttal) ¶ 133; Ex. 14, at 2, 5. Deckers similarly touts functional features for the Bailey Button and Tasman. Ex. 15 (Tasman), at 2 ("ultra-lightweight, durable outsole … an easy slip-on silhouette that will stay timeless forever"),  5 ("At UGG, we design products to last."); Ex. 16 (Bailey Button), at 6 ("Embellished with a wood-button closure, this plush sheepskin boot is more versatile than ever – fasten for extra warmth, or fold down for a full, fluffy collar"), 9 ("At UGG, we design products to last.").

*Adidas Am., Inc. v. Skechers USA* (Mot. at 14) is distinguishable because (1) there appeared to be no competing expert testimony on functionality; (2) defendant Skechers provided "self-defeating evidence as to design alternatives", and "weak advertising evidence." No. 3:15-CV-01741-HZ, 2017 WL 3319190, at *15 (D. Or. Aug. 3, 2017). But here, Deckers' expert's evidence on design alternatives is deficient and inadmissible and Deckers advertised the functional aspects on its own website. Plus, unlike here, *Adidas* did not concern aesthetic functionality, and according to Deckers' own case *Vans Inc. v. ACI Int'l*, "[w]here it is arguable that an asserted trade dress 'serve[s] in part a source-identifying function,' the issue of aesthetic functionality must go to a jury." No. 8:21-CV-01876-DOC (ADS), 2023 WL 6930323, at *7 (C.D. Cal. Oct. 11, 2023).[13]

At a minimum, the "competing expert opinions present the classic battle of the experts and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves." *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (cleaned up); *see also DayCab Co., Inc. v. Prairie Tech.*, LLC, 67 F.4th 837, 849 (6th Cir. 2023) (reversing summary judgment where "the parties have presented conflicting evidence regarding the functionality of [Plaintiff]'s conversion kit pane," raising "genuine issues of material fact remain regarding the nonfunctionality element of

[13]*Adidas-Am., Inc. v. Payless Shoesource, Inc.* is also inapposite here because Payless's expert had conceded on functionality during deposition and the Court found "Payless submits *no* evidence that the combination of unique and stylized Superstar Trade Dress elements, taken as a whole, serve any utilitarian purpose." 546 F. Supp. 2d 1029, 1085 (D. Or. 2008) (emphasis added).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

[plaintiff]'s trade dress claim."); *Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*, No. 2:20-CV-09521-FLA (EX), 2024 WL 2208099, at *7 (C.D. Cal. Apr. 9, 2024) (denying summary judgment on trade dress functionality where plaintiff and defendant presented competing evidence). Here, Quince's expert's opinion that the asserted trade dresses are functional raises a triable issue of fact precluding summary judgment. ECF No. 147-7 (Comeau Rebuttal) ¶¶ 132-239.

### C.    Genuine Disputes Over Secondary Meaning Preclude Summary Judgment.

None of Deckers' evidence on secondary meaning is availing here.

***Sales and Advertising.*** As a starter, "[s]ales success by itself will typically not be as probative of secondary meaning in a product configuration case as in a trademark case, since the product's market success may well be attributable to the desirability of the product configuration rather than the source-designating capacity of the supposedly distinguishing feature or combination of features." *Cont'l Lab. Prods., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1002–03 (S.D. Cal. 2000) (collecting cases and granting summary judgment of non-infringement even though "[t]he chart indicates that Continental sold more than 400,000 units, generating $10,000,000 in revenue."). "And unlike with a trademark, where repeated purchases of a product support an inference that consumers have associated the mark with the producer or source, one can much less confidently presume that a consumer's repeated purchase of a product has created an association between a particular product configuration and the source." *Id*.

Here, Deckers "has failed to provide any supporting data to place these raw sales figures into a coherent evidentiary context." *Id*. at 1003-4. "For example, [Deckers] offers no evidence as to the size of the relevant market or the market share [Deckers] achieved [since the introduction of the three products]." *Id*. "The Court cannot determine whether these sales numbers reflect success in the [footwear] industry or simply the rapid gains achieved by any new product that emerges within a large and growing market." *Id*. Additionally, "[Deckers] makes no attempt to compare its sales to those of its competitors." *Id*. It also "presents no evidence as to the geographic distribution of its sales or the average number of units purchased per customer" and "the frequency of repeat and volume purchases," without which "the Court can only speculate as to the number of distinct customers." *Id*.

Even if these products had achieved some level of success, Deckers has not demonstrated the requisite nexus between the sales success and the asserted trade dresses, as opposed to the UGG brand or functional attributes such as comfort and warmth of the three UGG shoes. 2 McCarthy on Trademarks and Unfair Competition § 15:49 (5th ed.) ("To use the volume of sales to serve as evidence to prove secondary meaning in a trade dress, there must be some proof that the sales were generated by the alleged trade dress, rather than by factors other than source identification."); ECF No. 147-16 (MIL No. 2), at 2-3; *cf*. Mot. at 15. "Without evidence linking Plaintiff['s] products' success to their purported trade dresses, Plaintiffs' sales figures are unavailing." *Watson-Marlow, Ltd v. Changzhou Prefluid Tech. Co*, No. CV 14-3225 RGK, 2014 WL 12586432, at *4 (C.D. Cal. Aug. 1, 2014). In short, "[Deckers] does not attempt to explain how its alleged sales success has any relationship to the attainment of secondary meaning in the minds of the consuming public, nor does it provide any evidence that could permit a reasonable jury, without engaging in speculation and conjecture, to draw such an inference." *Cont'l Lab. Prods., Inc.*, 114 F. Supp. 2d, at 1004 (collecting cases); *cf*. Mot. at 15.

Likewise, because the "███████████████ advertising spend includes spending on the UGG brand and countless other UGG products, the Court can only speculate as to how much are devoted to the three asserted trade dresses. Mot. at 15. And any advertising spend is not indicative of secondary meaning where, as here, "Plaintiff['s] advertisements generally do not direct consumer attention to Plaintiffs' claimed trade dresses." *Watson-Marlow*, 2014 WL 12586432, at *4; *cf*. ECF No. 147-16 (MIL No. 2). "Secondary meaning cannot be proven by advertising that merely pictures the claimed trade dress and does nothing to emphasize it or call attention to it." 2 McCarthy on Trademarks and Unfair Competition § 8:8.50 (5th ed.); *Walker*, 549 F. Supp. 2d 1168 at 1180.

Indeed, the USPTO came to the same conclusion when Deckers cited the same type of evidence in its trade dress applications: "such extensive sales may demonstrate the commercial success of applicant's goods, but not that relevant consumers view the claimed elements of applicant's applied-for design mark as the source of such goods." Ex. 2, at 3 (citing *In re Boston Beer Co.*, 198 F.3d 1370 (Fed. Cir. 1999); *In re Busch Entm't Corp.*, 60 USPQ2d 1130, 1134

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

(TTAB 2000)); Ex. 1, at 6-7 (same). "These advertising expenditures are merely indicative of its efforts to develop distinctiveness; not evidence that the mark has acquired distinctiveness." Ex. 2, at 3-4 (citing *In re Penzoil Prods. Co.* 20 USPQ 2d 1753 (TTAB 1991)); *see also* Ex. 1, at 6 (same). "Furthermore, the submitted advertising evidence and third-party materials continuously reference applicant's applied-for design mark in conjunction with applicant's registered word mark, UGG." Ex. 2, at 4; *see also* Ex. 1, at 6 (same). So Deckers' "evidence of high sales figures and significant advertising expenditures for the goods at issue" "is not dispositive of whether the proposed mark has acquired distinctiveness." Ex. 2, at 3; *see also* Ex. 1, at 6 (same).

*"Unsolicited" Media Coverage.* The media attention and celebrity endorsement are n███ ████████ as Deckers represents. Mot. at 4-5, 15-16; ███████████████ ████████████████████████████████████ They should not be given any weight. *See Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205 (VSB), 2017 WL 4997838, at *9 (S.D.N.Y. Oct. 20, 2017) (claim dismissed where "alleg[ed] facts related to sales success and media coverage (without indicating whether the coverage was solicited or unsolicited").

*Copying.* Deckers's position that "Defendant's intentional and close copying of Deckers' Asserted Trade Dress, alone, is sufficient to establish secondary meaning in the Asserted Trade Dress" is wrong as a matter of law. In a product design trade dress case —unlike in a trademark or product packaging trade dress case—"proof of exact copying" is insufficient, "in and of itself, to establish secondary meaning." *Trovata, Inc. v. Forever 21, Inc.*, No. SACV0701196JVSMLGX, 2008 WL 11337278, at *3 (C.D. Cal. June 13, 2008) (collecting cases). In fact, an identical argument made by Deckers was rejected by the court in the Central District of California recently because "Plaintiff's cited opinions[14] predate *Blumenthal, Samara Bros.*, and *TrafFix* by decades, and involved trade dress claims based on packaging—not product design." *Deckers Outdoor*, 2024 WL 2208099, at *10. As the Supreme Court recognized,

---

[14] Deckers cites the same two opinions here. Mot. at 16 (citing *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 428 (9th Cir. 1979) and *Audio Fidelity, Inc. v. High Fidelity Records, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960)).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

"[a]llowing competitors to copy will have salutary effects in many instances":

> Trade dress protection must subsist with the recognition that *in many instances there is no prohibition against copying goods and products*. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying. As the Court has explained, *copying is not always discouraged or disfavored by the laws* which preserve our competitive economy.

*TrafFix*, 532 U.S. at 29 (emphasis added).

Indeed, the emails cited by Deckers as proof of copying refer to issues such as fit, quality, color, clean look, and material—wholly unrelated to the claimed trade dress elements or Decker's reputation. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Viewed in the light most favorable to Quince as the Court must on summary judgment, "a reasonable jury could find from its contents that the e-mail evidences only Defendant's efforts to copy unprotected, functional elements of the [three asserted trade dresses], rather than to poach Plaintiff's superior reputation." *Deckers Outdoor*, 2024 WL 2208099 at \*10 ("Plaintiff's assertion that Wal-Mart copied the design of the Fluff Yeah Sandal intentionally is insufficient to establish the non-existence of a genuine dispute regarding secondary meaning.").

**Survey.** Deckers' secondary meaning surveys are flawed. *Supra*, at 8-9. At best, Deckers' survey evidence conflicts with Mr. Wallace's survey results, raising a genuine question of fact, precluding summary judgment. *Sterilite Corp. v. Olivet Int'l, Inc.*, No. 1:22-CV-10327-JEK, 2024 WL 4349271, at \*5 (D. Mass. Sept. 30, 2024) ("While Olivet may dispute the conclusions of O'Shea's report and criticize his secondary meaning findings as contrary to the survey of Olivet' s expert, such competing views must be resolved by a jury at trial.") (emphasis added).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

**D.    Genuine Disputes Preclude Summary Judgment on Likelihood of Confusion.**

"Likelihood of confusion requires that confusion be probable, not simply a possibility." *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987); *see also Playboy Enters., Inc. v. Terri Welles, Inc.,* 78 F.Supp.2d 1066, 1083 (S.D. Cal.1999) ("There must be a *substantial* likelihood that the public will be confused.") (citation omitted), *rev'd in part on other grounds,* 279 F.3d 796 (9th Cir. 2002). "The question of likelihood of confusion is routinely submitted for jury determination as a question of fact" because "[w]hether confusion is likely is a factual determination woven into law" and "[t]he presence or absence of a particular [*Sleekcraft*] factor does not necessarily drive the determination of likelihood of confusion." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. C 07-03752 JSW, 2008 WL 4614660, at *15 (N.D. Cal. Oct. 16, 2008) (citing *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 (9th Cir. 1985) and denying summary judgment on infringement).

Contrary to Deckers' mischaracterization, the cases it cited actually show that questions on "actual consumer confusion" in "initial-interest and post-sale confusion" raises "significant issues of material fact" precluding summary judgment. *Adidas-Am.*, 546 F. Supp. 2d at 1059 (summary judgment denied) (Mot. at 19).

Indeed, Courts routinely found that "the competing surveys raise genuine issues of disputed fact on the element of "actual confusion[,]" precluding summary judgment. *Levi Strauss*, 2008 WL 4614660, at *15 (N.D. Cal. Oct. 16, 2008). This is because "[e]vidence of actual confusion, however, may be found by a jury to be de minimis, thus making summary judgment inappropriate on this issue." *CytoSport, Inc. v. Vital Pharms., Inc.*, 894 F. Supp. 2d 1285, 1300 (E.D. Cal. 2012) (denying Plaintiff's summary judgment motion where "the two conflicting expert opinions create a material issue of fact" and concluding that "the experts offer competing surveys which require some technical expertise and familiarity with accepted principles" not appropriate for summary judgment) (citation omitted).

In *1-800 Contacts, Inc. v. Lens.com, Inc.*, the Court noted that a likelihood of confusion survey typically would need to "eliminate the 'general background noise' of confusion in predicting the likelihood of confusion" by subtracting the "rate of confusion" from the "the

control group" and arrive at a "net confusion rate[.]" 722 F.3d 1229, 1247 (10th Cir. 2013) (citation omitted). It noted that 15% would be sufficient for finding infringement and "[t]he great weight of authority appears to be that '[w]hen the percentage results of a confusion survey dip below 10%, they can become evidence which will indicate that confusion is *not* likely.'" *Id*. at 1248–49 (citation omitted); *see also adidas-Am.*, 546 F. Supp. 2d at 1059 (collecting cases and noting that 15% confusion sufficient to find actual confusion).

Here, Mr. Wallace's court-compliant survey found the likelihood of confusion between all three asserted trade dresses and the Quince products at issue are well below 10%—indicating confusion is not likely. *Supra*, at 10. Although Deckers has moved to exclude Mr. Wallace's opinions, any alleged "technical inadequacies' in a survey, including the format of the questions or the manner in which it was taken," and "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions" "bear on the weight of the evidence, not its admissibility." *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1275 (9th Cir. 2024) (affirming district court's decision (1) to not exclude Defendant's survey expert, (2) to allow Plaintiff's expert "to explain the errors in [Defendant's] survey" and (3) to allow "extensive[] cross-examin[ation]" of "both experts" during trial where the jury found that Plaintiff " had not established trademark infringement by a preponderance of the evidence.").

Additionally, any rate of confusion would have to be further reduced by the UGG logo and label prominently displayed on the three UGG shoes (*supra*, at 10), which is a fact issue that can only be resolved by the jury. *See CytoSport*, 894 F. Supp. 2d at 1300 ("[W]hat confusion stems from the similarity of the marks and what confusion stems from trade dress is primarily a question for a jury to answer" "because it requires the determination of disputed factual issues.").

While the actual confusion factor alone could end the analysis for the Court, the rest of the *Sleekcraft* factors discussed by Deckers are similarly unavailing. *Ironhawk Tech. v. Dropbox, Inc.*, 994 F.3d 1107, 1118 (9th Cir. 2021) (reversing summary judgment because "each of [the *Sleekcraft*] presents a highly factual inquiry.").

***Strength of the Trade Dress and Similarity of Trade Dresses and Products.*** The asserted trade dresses are not strong. As a preliminary matter, product design trade dress can never be

inherently distinctive. *Samara Bros.*, 529 U.S. at 213-14. There are genuine issues of material fact that the three asserted trade dress have no secondary meaning. *Supra*, at 8-9. The so-called "extensive advertising" only left the Court speculating on how much is spent on advertising the three asserted trade dresses, not to mention the advertisements do nothing to emphasize or call attention to them. *Supra*, at 18-20. The public recognition is not unsolicited. *Supra*, at 7. In fact, both the Asserted Classic Ultra Mini and Tasman Trade Dresses are generic. ECF No. 147-2 (Quince' MSJ), V(B). The prevalence of similar designs across the marketplace (*supra*, at 2-6) confirms that the asserted trade dresses are generic and cannot serve as identifiers of a single source, much less having any strength as trade dresses. For the same reasons, any similarity between the products is the result of the alleged trade dresses representing basic forms of commonly available product designs, and not indicative of likelihood of confusion.

**Intent.** Quince did not act with bad intent. Deckers alleges that Quince acted with bad intent by knowingly adopting designs similar to the asserted trade dresses, with the intent to deceive the public. Mot. at 21. But the Quince logo is prominently displayed on the product packaging, website, and inside the shoes, ensuring that consumers are fully aware they are purchasing a Quince product, not an UGG product. *Supra*, at 11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Quince's webpages for the three products at issue also expressly distinguish UGG through comparative advertising. *Id*. Quince's clear branding and advertising undermine any claim of intent to deceive or confuse consumers. ▮▮▮▮▮▮▮▮▮▮▮▮▮

The allegation that Quince intended to create "UGG® look-a-likes" is also unfounded. Any alleged "evidence of copying is relevant only if probative of an accused infringer's efforts to poach its competitor's superior reputation, rather than to copy a superior or more aesthetically appealing design." *Deckers Outdoor*, 2024 WL 2208099, at *10 ("[A] reasonable jury could find that Defendant intended to copy only functional, non-protected elements and not to confuse or deceive consumers regarding the origin of the KK Sandal."). Deckers has presented no evidence

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

that Quince made any effort to poach Deckers' reputation, rather than to match its quality or more aesthetically appealing design.[15]

Furthermore, any alleged bad intent would be negated by Quince's agreements with suppliers that include warranties that ███████████████████████████████████ ████████████████. *Supra*, at 12. Whether Quince's due diligence in avoiding potential infringement negates the alleged bad intent is at a minimum an issue for the jury.

***Consumer Care.*** There is a genuine dispute over the degree of consumer care. Deckers argues that the relevant consumers are unsophisticated and unlikely to exercise much care but fails to cite any evidence. Mot. at 24-25. In fact, Deckers' footwear expert stated that "consumers purchasing low ankle boots priced under $75. would normally do so with less care than they may for higher priced items once they hit a threshold over $100. or more." ECF No. 147-11 (de Baere Rebuttal) at 79. That suggests that at least customers of Deckers' higher priced items would exercise more care. Also, Quince's footwear expert opined that potential purchasers of shoes between $70 to $150 are "unlikely to make impulse purchases." ECF No. 147-10 (Comeau Opening Report) ¶ 62. Rather, a purchaser "would likely try on the shoes and compare different shoes to evaluate many aspects such as price, comfort, fit, quality, durability, color, appearance, and intended function before they make the purchase." *Id.* Deckers' internal documents also suggest that ███████████████████████████████████████ ████████████████████████." ECF No. 147-24 (DOC 000003), at DOC 000017. This factual issue precludes summary judgment.

**E.    Summary Judgment on Deckers' State Law Claims Should Be Denied.**

Deckers admits that its state law claims are subject to the same standards governing its federal trade dress claims (Mot. at 25); they should fail for the same reasons.

---

[15] *Boldface Licensing + Branding* is distinguishable because it involved a "federally registered trademark, which significantly changes the Court's balancing." *Boldface Licensing + Branding v. By Lee Tillet, Inc.*, 940 F. Supp. 2d 1178, 1182 (C.D. Cal. 2013). Indeed, the same court denied a request for preliminary injunction involving the same products in another case involving only "an unregistered mark, which were limited in scope." *Id.* Filing a lawsuit against Quince over unregistered trade dresses does not establish Decker's trade dress rights, unlike a case involving federally registered trademark, which enjoys a rebuttable presumption of validity.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES

## VI.    CONCLUSION

For the foregoing reasons, Quince respectfully requests the Court grant its motion.


DATED: March 24, 2025

*/s/ Xinli Li Morrow*

Xinlin Li Morrow (SBN 281707)
Ryan McMenamin (*pro hac vice*)
Lawrence Yichu Yuan (*pro hac vice*)
**Morrow Ni LLP**
xinlin@moni.law
ryan@moni.law
lawrence@moni.law
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Defendant Last Brand, Inc. d/b/a Quince*

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF THE
COMPLAINT AND DEFENDANT'S AFFIRMATIVE DEFENSES