1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    DECKERS OUTDOOR CORPORATION,              Case No.  23-cv-04850-AMO

                  Plaintiff,
8
                                               **ORDER RE MOTIONS FOR**
9          v.                                  **SUMMARY JUDGMENT**

10   LAST BRAND, INC.,                          Re: Dkt. Nos. 124, 142

                  Defendant.
11

12

13         Before the Court is Plaintiff Deckers Outdoor Corporation's ("Deckers") motion for

14   summary judgment, Dkt. No. 124, and Defendant Last Brand, Inc. d/b/a Quince's ("Quince")

15   motion for partial summary judgment, Dkt. No. 142.  The motions are fully briefed and were

16   heard before this Court on September 4, 2025.  Having carefully considered the arguments made

17   in the parties' papers and at the hearing, as well as the relevant legal authority, the Court hereby

18   **GRANTS IN PART AND DENIES IN PART** Quince's motion and **DENIES** Deckers's motion

19   for the following reasons.

20   **I.      BACKGROUND**

21         Deckers designs and markets footwear products under various brands, including UGG.

22   Quince is engaged in the retail of apparel and offered for sale through its website three products

23   relevant here (the "Accused Products"), which Deckers contends infringe on three of its

24   unregistered trade dresses ("Trade Dresses") and one of its patents.  First, Deckers argues the

25   Australian Shearling Mini Boot Accused Product infringes Deckers's Classic Ultra Mini Trade

26   Dress, as well as its U.S. Patent No. D927,161 (" '161 Patent").  Second, Deckers argues the

27   Australian Shearling Button Boot Accused Product infringes its Bailey Button Boot Trade Dress.

28   Third, Deckers argues the Australian Shearling Clog Slipper infringes its Tasman Trade Dress.

United States District Court
Northern District of California

1          Deckers initiated this action by filing a complaint in the Central District of California on

2     June 12, 2023.  Dkt. No. 1.  The parties stipulated to transfer the case to this District, and the case

3     was transferred here on September 19, 2023.  Dkt. No. 19.  On October 12, 2023, Deckers moved

4     to dismiss.  Dkt. No. 23.  On November 2, 2023, Quince filed a first amended complaint, Dkt. No.

5     25, which Quince answered on November 16, 2023, Dkt. No. 26.  On January 25, 2024, the parties

6     stipulated to Deckers filing a second amended complaint ("SAC").  Dkt. No. 34-1.  The SAC

7     asserts the following claims for relief: infringement under the Lanham Act of Deckers's Trade

8     Dresses (Counts 1-3); infringement of its trade dresses under California common law (Count 4);

9     unfair competition (Counts 5-6); and patent infringement (Count 7).  *Id.*

10          Quince answered on February 8, 2024, and then filed an amended answer on February 28,

11     2024, Dkt. No. 40, which asserts 14 affirmative defenses.  Deckers's motion for summary

12     judgment, Dkt. No. 124, and Quince's partial motion for summary judgment, Dkt. No. 142, were

13     filed on March 10, 2024.  Each party also filed *Daubert* motions, which the Court has resolved by

14     separate order.  Additionally, the Court resolved Deckers's motion to strike new work (Dkt. No.

15     131) and its evidentiary objections (Dkt. No. 184-1) at the September 4, 2025 hearing.

16   **II.    DISCUSSION**

17          Deckers moves for summary judgment and Quince moves for partial summary judgment.

18     The Court sets forth the relevant legal standard before considering Deckers's motion and then

19     Quince's.

20          **A.    Legal Standard**

21          Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment

22     on a "claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is

23     no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter

24     of law.  *Id.*  The party seeking summary judgment bears the initial burden of informing the court

25     of the basis for its motion, and of identifying those portions of the pleadings and discovery

26     responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

27     *Catrett*, 477 U.S. 317 (1986).  Material facts are those that might affect the outcome of the case.

28     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

2    party. *Id.*

3         Where the moving party will have the burden of proof at trial, it must affirmatively

4    demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun*

5    *v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving

6    party will bear the burden of proof at trial, the moving party may carry its initial burden of

7    production by submitting admissible "evidence negating an essential element of the nonmoving

8    party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have

9    enough evidence of an essential element of its claim or defense to carry its ultimate burden of

10   persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105-

11   06 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25 (noting a moving party can prevail merely

12   by pointing out to the district court that there is an absence of evidence to support the nonmoving

13   party's case).

14        When the moving party has carried its burden, the nonmoving party must respond with

15   specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P.

16   56(c), (e). The asserted disputed facts must be material – the existence of only "some alleged

17   factual dispute between the parties will not defeat an otherwise properly supported motion for

18   summary judgment." *Anderson*, 477 U.S. at 247-48. "[M]ere allegation and speculation do not

19   create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d

20   1075, 1081-82 (9th Cir. 1996) (affirming summary judgment in favor of defendants where there

21   was "no evidence in the record from which a trier of fact could have" found for plaintiff).

22        When deciding a summary judgment motion, courts must view the evidence in the light

23   most favorable to the nonmoving party and draw all justifiable inferences in their favor. *Id.* at

24   255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). However, when a non-

25   moving party fails to produce evidence rebutting the moving party's showing, then an order for

26   summary adjudication is proper. *Nissan Fire*, 210 F.3d at 1103 ("If the nonmoving party fails to

27   produce enough evidence to create a genuine issue of material fact, the moving party wins the

28   motion for summary judgment."). The court's function on a summary judgment motion is not to

3

United States District Court
Northern District of California

1    make credibility determinations or weigh conflicting evidence with respect to a disputed material

2    fact.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3            **B.**       **Deckers's Motion for Summary Judgment**

4            Deckers moves for summary judgment on its federal and state trade dress infringement

5    claims.  To succeed on a claim for infringement of an unregistered trade dress, "a plaintiff must

6    demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary

7    meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and

8    defendant's products."  *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir.

9    2009); *see also Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 216 (2000).  "As a general

10    matter, trademark claims under California law are 'substantially congruent' with federal claims

11    and thus lend themselves to the same analysis."  *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391

12    F.3d 1088, 1100 (9th Cir. 2004).  The Court begins with nonfunctionality, and finding that

13    Deckers has not met is burden on this factor, concludes it is appropriate to deny its motion for

14    summary judgment on these claims.

15            "[F]or a product's design to be protected under trademark law, the design must be

16    nonfunctional."  *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 864 (9th Cir.

17    2020).  Two types of functionality exist – utilitarian and aesthetic – and if the claimed trade dress

18    has either type, it is unprotectable by trademark law.  *Id.* at 865.  "A claimed trade dress has

19    utilitarian functionality if it is essential to the use or purpose of a product or affects its cost or

20    quality."  *Id.*  "[F]unctionality is generally viewed as an intensely factual issue," *Tie Tech, Inc. v.*

21    *Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) (citation omitted), and is often left to the jury,

22    although "the Ninth Circuit has determined the issue of functionality as a matter of law where the

23    plaintiff sought to protect the shape of a purely utilitarian product," *Sw. MFG. LLC v. Wilmar*

24    *LLC*, No. CV 22-8541-MWF (PDX), 2024 WL 3718371, at *10 (C.D. Cal. July 16, 2024)

25    (collecting cases).  Courts assessing whether utilitarian functionality is present consider "(1)

26    whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3)

27    whether advertising touts the utilitarian advantages of the design, and (4) whether the particular

28    design results from a comparatively simple or inexpensive method of manufacture."  *Blumenthal*,

United States District Court
Northern District of California

1    963 F.3d at 964 (citing *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir.

2    1998)).

3        Deckers asserts its Trade Dresses are nonfunctional. Dkt. No. 124 at 20-22. It contends

4    none of the trade dresses provide a utilitarian advantage over another boot or clog design in the

5    market, that many designs exist as alternatives, and that it does not advertise that the overall

6    appearance of any of the three products provide any sort of functional advantage. *Id.* at 21-22.

7    Deckers argues the design of the products do not result from an inexpensive method of

8    manufacturing. *Id.* at 22. Finally, it contends that the patents it obtained on its Mini and Bailey

9    Button products are presumptive evidence of nonfunctionality. *Id.* at 21 (citing *Govino LLC v.*

10   *White Poles LLC*, 2017 WL 6442187, at *9 (N.D. Cal. Nov. 3, 2017)). Because Deckers will bear

11   the burden of proof at trial on its infringement claims, it carries the burden of establishing that "no

12   reasonable trier of fact could find other than for" it. *Soremekun*, 509 F.3d at 984.

13       Quince has responded with specific facts showing a genuine issue of trial on the issue of

14   utilitarian functionality. Quince cites the opinion of its expert, Dennis Comeau, concluding that

15   the Asserted Products contain features that "affect[] [their] cost or quality" and therefore are

16   functional. Dkt. No. 166 at 22-23. Quince also contests Deckers's argument that it does not

17   advertise that the overall appearance of its products provide any sort of functional advantage

18   because there is evidence that Deckers advertises the Mini has having "built-in flair with a lower

19   shaft which makes for easy on-off wear" and "a flexible, ultralightweight sole," and that Deckers

20   "design[s] products to last." *Id.* Although the parties dispute the weight to be given to their

21   respective experts, Quince's arguments put forward specific facts that preclude summary judgment

22   on this issue.

23       Moreover, Deckers does not address aesthetic functionality. "A claimed trade dress has

24   aesthetic functionality if it serves an aesthetic purpose wholly independent of any source

25   identifying function, such that the trade dress's protection under trademark law would impose a

26   significant non-reputation-related competitive disadvantage on its owner's competitors."

27   *Blumenthal*, 963 F.3d at 964. Because a trade dress with either utilitarian or aesthetic

28   functionality cannot be protected by trademark law, Deckers's motion fails for the independent

1    reason that it has not carried its burden of showing aesthetic nonfunctionality.  The Court thus

2    **DENIES** its motion for summary judgment on its trade dress infringement claims.

3           The parties agree that the standard for trade dress infringement is the same under both state

4    and federal law.  Dkt. No. 124 at 33 ("As the standard for trade dress infringement is the same

5    under both state and federal law . . . Deckers should also prevail on its state law claims for trade

6    dress infringement and unfair competition"); Dkt. No. 161 at 31 ("Deckers admits that its state law

7    claims are subject to the same standards governing its federal trade dress claims; they should fail

8    for the same reasons.").  Because the Court denies Deckers's motion as to its federal trade dress

9    infringement claims, it **DENIES** its motion as to the state law claims, as well.  *Grupo Gigante*,

10    391 F.3d at 1100.

11           Accordingly, Deckers's motion for summary judgment is **DENIED**.

12           **C.**     **Quince's Motion for Partial Summary Judgment**

13           The Court now turns to Quince's motion for partial summary judgment.  Quince moves for

14    summary on the following grounds: (1) that the federal and state law claims for trade dress

15    infringement of the Mini and Tasman Trade Dresses fail because those Trade Dresses are generic;

16    (2) that the unfair competition claim based on the Mini and Tasman fails because there is no

17    protectable trade dress; (3) that Deckers's patent infringement claim fails because the asserted

18    patent is invalid; and (4) that Deckers's "lost profits" damages theory fails for lack of causation

19    and, as to its patent claim, must be barred for failure to disclose.  Dkt. No. 142.  Each argument is

20    addressed in turn below.

21           **1.**     **Trade Dress Infringement**

22           Quince moves for summary judgment on Deckers's claims for the Lanham Act trade dress

23    infringement of the Mini (Count 1) and the Tasman (Count 3).  Quince argues the Mini and

24    Tasman Trade Dresses are generic, and therefore not entitled to protection, because (1) they are

25    overbroad or too generalized; (2) they are the basic form of a type of product; and (3) they are so

26    common in the industry they cannot identify a particular source.  Dkt. No. 142 at 26 (citing

27    *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007)).

28    Quince does not argue the Bailey Trade Dress is generic.

United States District Court
Northern District of California

United States District Court
Northern District of California

1        The Lanham Act does not protect generic trade dresses. *Kendall-Jackson Winery, Ltd. v.*

2    *E. & J. Gallo Winery*, 150 F.3d 1042, 1048 (9th Cir. 1998) (affirming summary judgment that

3    grape leaves are generic emblem for wine and not entitled to trademark or trade dress protection).

4    "[T]he plaintiff has the burden of proving nongenericness once the defendant asserts genericness

5    as a defense." *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1146 (9th

6    Cir. 1999) (collecting cases). "In the Ninth Circuit, courts considering trade dress look to the

7    overall visual impression or total combination of elements as opposed to viewing each element in

8    isolation. This approach applies not only to functionality, but also to the issue of genericness."

9    *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-CV-01741-HZ, 2017 WL 3319190, at \*6 (D. Or.

10    Aug. 3, 2017) (citing *Clicks Billiards v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001)).

11    "Cases addressing product design suggest that the term 'genericness' covers three situations: (1) if

12    the definition of a product design is overbroad or too generalized; (2) if a product design is the

13    basic form of a type of product; or (3) if the product design is so common in the industry that it

14    cannot be said to identify a particular source." *Walker*, 549 F.Supp.2d at 1174.

15        Here, Quince argues both the Mini Trade Dress and the Tasman Trade Dress are "so

16    common in the industry that [they] cannot be said to identify a particular source." Dkt. No. 161 at

17    17. As to the Mini, Quince argues there are at least 14 competitors in the market that sell a similar

18    ankle-high sheepskin boot, and thus, under *Walker*, the Mini Trade Dress is generic. Similarly,

19    Quince argues there are at least 9 competitors that sell moccasin and clog slippers similar to the

20    Tasman. Quince points to the Comeau expert report, which includes screenshots depicting

21    products with similar appearances to Deckers's products and concludes they are competitors.

22        Deckers's arguments in opposition do not hold water. First, Deckers objects to the

23    admission of the screenshots on which Quince's experts rely in determining the number of

24    competitors in the market selling a similar product. The Court found this evidence admissible, and

25    overruled Deckers's objection at the September 4, 2025 hearing. Deckers also argues that the

26    Trade Dresses are not generic because not "a single product closely resembling the UGG Classic

27    Ultra Mini or the Tasman was being sold in commerce prior to the[ir] introduction." Dkt. No. 164

28    at 8. But Deckers has pointed to no authority, neither in its papers nor at the hearing, requiring

United States District Court
Northern District of California

1    that the competitor product must have been sold prior to its products.  Similarly, Deckers offered

2    no authority requiring Quince to provide information as to "where [the goods] were sold, in what

3    quantity, and . . . whether they are knockoffs of" Deckers's products.  Deckers does not otherwise

4    contest that the similar footwear Quince identifies as competitors are, in fact, competitors that can

5    be assessed for purposes of determining genericness.  Deckers has not carried its burden of

6    proving nongenericness.  *See Filipino Yellow Pages, Inc.*, 198 F.3d at 1146.  Consequently, the

7    Court concludes Quince is entitled to summary judgment on its genericness defenses against the

8    trade dress infringement claims.

9         Because the Court finds summary judgment appropriate on the Lanham Act claims as to

10   the Mini and Tasman, so too is it appropriate on the state trade dress infringement and unfair

11   competition claims.  *Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,

12   944 F.2d 1146, 1457 (9th Cir. 1991) ("An action for unfair competition under Cal. Bus. & Prof.

13   Code §§ 17200 *et seq.* is 'substantially congruent' to a trademark infringement claim under the

14   Lanham Act"); *see also Salt Optics, Inc. v. Jand, Inc.* No. SACV 10-0828 DOC, 2010 WL

15   4961702, at *8 (C.D. Cal. Nov. 19, 2010) (finding an unfair competition claim that arose "solely

16   from [defendant's] allegedly unauthorized appropriation of [plaintiff's] trade dress . . . must be

17   dismissed for the same reasons [plaintiff's] trade dress claim must be dismissed").

### 2.    Patent Infringement

19        Finally, Quince argues Deckers's patent infringement claim fails because the '161 Patent is

20   invalid and argues Deckers may not recover lost profits damages for its patent invalidity claim.

21   The Court addresses each in turn below.  Dkt. 147-2 at 20.

### a.    Patent Invalidity

23        Under 35 U.S.C. § 282, patents are entitled to a presumption of validity, which can be

24   overcome only by clear and convincing evidence.  *See, e.g.*, *Microsoft Corp. v. i4i Ltd. P'ship*, 564

25   U.S. 91, 95 (2011).  Patent invalidity is an affirmative defense that the alleged infringer has the

26   burden of proving by clear and convincing evidence.  *Hong Kong uCloudlink Network Tech. Ltd.*

27   *v. SIMO Holdings Inc.*, 548 F. Supp. 3d 916, 921 (N.D. Cal. 2021) (quoting *Impax Labs., Inc. v.*

28   *Aventis Pharm., Inc.*, 468 F.3d 1366, 1378 (Fed. Cir. 2006)).

United States District Court
Northern District of California

1    Quince argues the '161 Patent is invalid as (1) functional and (2) indefinite and non-

2    enabling.  Dkt. N o. 142 at 31.  "A design patent is invalid if the patented design is 'primarily

3    functional,' rather than primarily ornamental, or if function dictates the design." *Eldon Indus.,*

4    *Inc. v. Vanier Mfg., Inc.*, 923 F.2d 869 (Fed. Cir. 1990) (citation omitted).  Quince challenges the

5    following aspects of the claimed design as "dictated by function" and argues they should be

6    excluded from the scope of the claim:  (1) the horizontal butt seam; (2) the vertical butt seams; (3)

7    the thermoplastic imprints at the heel counter; (4) the pull tab; (5) the sloped top opening of the

8    boot; and (6) the binding around the boot collar.  *Id.* at 32.  Citing to its footwear expert's opinion

9    that "functional concerns dictated the claimed design," Quince urges the Court to find that the

10   '161 Patent is primarily functional.  However, "the utility of each of the various elements that

11   compromise the design is not the relevant inquiry. . . .  The elements of the design may indeed

12   serve a purpose, but it is the ornamental aspect that is the basis of the design patent," *L.A. Gear*,

13   988 F.2d at 1123, and Quince's brief treatment of functionality does not satisfy its burden of

14   proving invalidity by clear and convincing evidence.  *Hong Kong uCloudlink Network Tech.*, 548

15   F. Supp. 3d at 921.

16   Quince also argues the patent is invalid for indefiniteness.  Dkt. No. 142 at 32.  "[A] patent

17   is invalid for indefiniteness if its claims, read in light of the specification delineating the patent,

18   and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about

19   the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).  The

20   figures depict two types of solid lines, which both parties' experts agree could represent either

21   "pleats/seams or contours," and Quince argues the depictions are indefinite because the

22   inconsistent use of the lines would make it "impossible for a designer of ordinary skill in the art,

23   viewing the figures from the perspective of an ordinary observer, to understand whether these

24   lines represent pleats/seams or contours or which lines represent pleats/seams and which represent

25   contours." *See* Dkt. No. 142 at 33.  Further, Quince argues that there are "multiple, internally

26   inconsistent drawings" that would prevent a "designer of ordinary skill" from understanding what

27   is claimed or how to make the design.  *Id.* at 34.  A court in this Circuit rejected a similar

28   argument from a defendant about another (now expired) one of Deckers's patents.  There, the

9

1    defendant challenged the patent as indefinite because some of the drawings depict the boot with a

2    V-shaped notch on the top inward-facing side of the boot, whereas others do not. *Deckers*

3    *Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 215CV02812ODWCWX, 2016 WL 7017219, at \*4

4    (C.D. Cal. Dec. 1, 2016). The court found "a reasonable boot designer, in deciding whether the

5    claimed design includes a notch, would look to the drawings that provide the clearer – not the

6    more obscured – view of that part of the boot." *Id.* That reasoning applies here, and is persuasive.

7    The Court thus does not find it "clearly convinc[ing] that these discrepancies are of such

8    magnitude that a boot designer and manufacturer could not determine with reasonable certainty

9    the overall appearance of the boot." *Id.*

10         Quince argues that even if the Court finds the claimed design is not primarily functional, it

11    still has a duty to conduct claim construction in design patent cases. Deckers strongly opposes

12    Quince's suggestion to "essentially reset the scheduling order with a formal claim construction,"

13    and contends a "verbal claim construction is unnecessary and should be avoided." Dkt. No. 164 at

14    30, 31 n.27. "Where a design contains both functional and nonfunctional elements, the scope of

15    the claim must be construed in order to identify the non-functional aspects of the design as shown

16    in the patent. . . . In doing so, however, the Court cannot 'entirely eliminate a structural element

17    from the claimed ornamental design,' for 'design patents protect the overall ornamentation of a

18    design, not an aggregation of separable elements.' " *Romeo & Juliette*, 2016 WL 7017219, at \*5

19    (citing *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016)).

20         Further, designs are "better represented by an illustration" and courts should be mindful of

21    the risks in providing a written construction of a design patent, "such as the risk of placing undue

22    emphasis on particular features of the design and the risk that a finder of fact will focus on each

23    individual described feature in the verbal description rather than on the design as a whole."

24    *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc). Accordingly,

25    courts are "not obligated to issue a detailed verbal description of the design if it does not regard

26    verbal elaboration as necessary or helpful." *Id.* Indeed, courts have found Deckers's boot patents

27    do not require claim construction. *See Deckers Outdoor Corp. v. Rue Servs. Corp.*, No.

28    CV1306303JVSVBKX, 2014 WL 12588481, at \*2 (C.D. Cal. Aug. 29, 2014) ("Upon review, the

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1   Court determines that a detailed verbal description of the claimed designs is unnecessary in this

2   case.").  In sum, Quince has not shown why claim construction is required here.  Its motion for

3   summary judgment on the patent infringement claim is thus **DENIED**.

4                       **b.**       **Lost Profits Damages**

5           Quince argues Deckers's lost profits theory of damages for its patent infringement claim is

6   improper because Deckers did not disclose it, as the first time lost profits was identified as a form

7   of damages Deckers intended to seek was in Deckers's opening expert report.  Deckers does not

8   contest this argument.  *See Namisnak v. Uber Techs., Inc.*, 444 F. Supp.3d 1136, 1146 (N.D. Cal.

9   2020) (quoting *Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal.

10  Feb. 9, 2010)) ("Plaintiff fails to respond to this argument and therefore concedes it through

11  silence.").  The Court therefore **GRANTS** Quince's motion for summary judgment and precludes

12  Deckers from bringing a lost profits theory of damages for its patent infringement claim.

13

14  **III.    CONCLUSION**

15          For the foregoing reasons, the Court **DENIES** Deckers's motion for summary judgment,

16  **GRANTS** Quince's motion for partial summary judgment as to the trade dress infringement

17  claims and lost profits theory of damages and **DENIES** its motion for summary judgment as to the

18  patent infringement claim.

19

20          **IT IS SO ORDERED.**

21  Dated: October 2, 2025

22

23  _____

24  **ARACELI MARTÍNEZ-OLGUÍN**
    **United States District Judge**

25

26

27

28

11