UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DECKERS OUTDOOR CORPORATION,

Plaintiff,

v.

LAST BRAND, INC.,

Defendant.

Case No.  23-cv-04850-AMO

**ORDER RE MOTIONS TO EXCLUDE EXPERT WITNESSES**

Re: Dkt. Nos. 143, 144, 145, 149, 151

This is a trade dress and patent infringement case about UGG boots.  The Court heard the parties' motions to exclude certain expert testimony on September 4, 2025.[1]  Dkt. No. 193. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** in part and **DENIES** in part the motions for the following reasons.

I.    DISCUSSION

Plaintiff Deckers Outdoor Corporation ("Deckers") and Defendant Last Brand, Inc. d/b/a Quince ("Quince") each move to exclude certain expert testimony proffered by the other party. Deckers moves to exclude the testimony of Jesse Wallace and Rob Catlin.  Quince moves to exclude the testimony of Erich Joachimsthaler, Caroline de Baëre, and David Franklyn.  After setting forth the legal standard, the Court addresses each challenge below.

---

[1] Today, the Court issues this Order in addition to one resolving the pending motions for summary judgment, which was also heard on September 4, 2025.  This Order assumes familiarity with the facts and procedural history of the case, which are described in greater detail in the summary judgment order.

United States District Court
Northern District of California

**A.    Legal Standard**

Under Federal Rule of Evidence 702, a qualified expert may testify "in the form of an opinion or otherwise" when: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Where expert testimony it is both relevant and reliable, it is admissible under Rule 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

"Under Daubert, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-49 (1999)). "A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Id.* (citing *Kumho Tire*, 526 U.S. at 152). Courts' gatekeeping function under Rule 702 centers "not [on] the correctness of the expert's conclusions but the soundness of his methodology." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (citation omitted). For example, courts routinely exclude expert testimony where the expert's opinion is not within the scope of his expertise. *See, e.g., Avila v. Willits Envt'l Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011). "The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car*, 738 F.3d at 969-70. Courts should screen "unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Id.* at 969; *see also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("A factual dispute is best settled by a battle of the experts before the fact finder,

1    not by judicial fiat.").  The Ninth Circuit has placed great emphasis on *Daubert*'s admonition that

2    a district court should conduct this analysis "with a 'liberal thrust' favoring admission."  *Messick*

3    *v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

4        In general, flaws in a proffered expert's analysis typically go to the weight, rather than the

5    admissibility, of the expert's testimony.  *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th

6    Cir. 2002) ("In most cases, objections to the inadequacies of a study are more appropriately

7    considered an objection going to the weight of the evidence rather than its admissibility.  Vigorous

8    cross-examination of a study's inadequacies allows the jury to appropriately weigh the alleged

9    defects and reduces the possibility of prejudice." (internal citation omitted)).  "In some cases,

10   however, the analysis may be 'so incomplete as to be inadmissible as irrelevant.' "  *Id.* (quoting

11   *Bazemore v. Friday*, 478 U.S. 385, 400 n.10 (1986)).

12       **B.    Deckers's Motions**

13           **1.    Rob Wallace**

14       Rob Wallace is a branding and survey expert retained by Quince to rebut the surveys and

15   reports by Deckers's experts, Matthew Ezell and David Franklyn.  Dkt. No. 134-10 at 2.  Deckers

16   moves to exclude Wallace's testimony in its entirety on several bases, Dkt. No. 132, none of

17   which persuade the Court.

18       First, Deckers argues Wallace's survey should be excluded because it tests exclusively for

19   point-of-sale confusion rather than post-sale confusion, and the survey is therefore irrelevant and

20   unreliable under FRE 702.  Dkt. No. 132 at 9-10.  Quince counters that point-of-sale confusion is

21   relevant to Deckers's lost profits damages theory.  Dkt. No. 168 at 2.  Deckers contests this,

22   arguing the "case law is clear" that post-sale confusion harms the trademark owner and that

23   Quince is "simply wrong as a matter of law."  Dkt. No. 175 at 3 (citing *Gucci v. Guess*, 843

24   F.Supp.2d 412 (S.D.N.Y. 2012)).  But even if point-of-sale confusion is not necessary to show

25   harm, Deckers fails to explain why it is irrelevant such that its exclusion is warranted despite the

26   " 'liberal thrust' favoring admission."  *Messick*, 747 F.3d at 1196.

27       Deckers further argues Wallace's survey employs an improper hybrid of the two most

28   common survey formats, *Eveready* and *Squirt*.  Dkt. No. 149 at 6.  Specifically, Deckers argues

United States District Court
Northern District of California

3

the survey misapplies the *Squirt* format by showing the parties' products side-by-side, which is problematic because it creates an artificial situation not reflective of the actual marketplace, where consumers do not physically encounter the products next to each other.  However, both parties' experts agree that consumers encounter UGG and Quince products in close proximity online.  *See* Dkt. No. 168-3 at 3 (Dr. Joachimsthaler, in deposition, explaining how an online search for "Australian boot" produced four or five images side-by-side, including images of Quince and UGG products).  Deckers's cited case, *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp.*, LLC, No. 18-CV-81606, 2019 WL 7376782 (S.D. Fla. Sept. 26, 2019), is inapposite. There, the court excluded testimony involving side-by-side comparisons for failure to "conclusively show how the parties' ordinary customers encounter the parties' marks in the actual marketplace," but it had found evidence that consumers first encountered the brands – two advertising and marketing companies – through "referrals of customers, the media, the people in the industry," not the parties' websites.  *Id.* at *6.  Relatedly, Deckers argues Wallace's survey improperly shows the products "simultaneously, not sequentially" in violation of the *Squirt* methodology calling for the senior and junior marks to be shown separately.  Dkt. No. 149 at 6. But Deckers cites no authority for this argument, and courts have found modified *Squirt* surveys appropriate.  *See* 5 McCarthy on Trademarks and Unfair Competition § 32:173 (5th ed.) ("[A] *Squirt* survey is sometimes used when the two marks are likely to be seen in the marketplace sequentially or side-by-side").  Wallace's testimony, therefore, is not an "unreliable nonsense opinion," *Alaska Rent-A-Car*, 738 F.3d at 696, and its exclusion is not warranted.

Finally, Deckers argues Wallace's survey tests the wrong universe, but "courts generally leave the job of determining the significance of a survey's under or over-inclusivity to the jury," *Vans, Inc. v. Walmart, Inc.*, 2023 WL 69273344, at *3 (C.D. Cal. Oct. 11, 2023), and Deckers provides no argument otherwise in its reply.

Accordingly, the Court **DENIES** Deckers's motion to exclude Wallace's testimony.

### 2.    Jesse Catlin

Jesse Catlin is a marketing professor retained by Quince to rebut Deckers's Experts Caroline de Baëre and Erich Joachimsthaler.  Dkt. No. 147-27 ¶ 1.  Deckers moves to exclude the

1  entirety of Catlin's testimony on the basis that Catlin is unqualified to offer testimony and that his

2  methodologies are improper.  Dkt. No. 151.  The Court considers each argument in turn.

3       First, Deckers contends Catlin is unqualified.  Catlin holds a Ph.D. in Management with an

4  emphasis in Marketing and is a Department Chair and Professor of Marketing at California State

5  University, Sacramento.  Dkt. No. 147-27 ¶ 1.  He has published 20 peer-reviewed articles

6  covering topics in marketing and consumer behavior, and has presented his work at 17

7  conferences.  *Id.* ¶ 2.  He has also served as an expert witness in marketing and consumer behavior

8  and has conducted consumer surveys assessing likelihood of confusion.  *Id.* ¶ 4.  Deckers argues

9  Catlin is unqualified due to his "complete lack of footwear industry experience [which] renders his

10  opinions mere speculation."  Dkt. No. 151 at 4.  Deckers's only authority in support of its

11  contention that Catlin must specifically have footwear experience is *Gable v. Nat'l Broad. Co*., in

12  which the court excluded the testimony of a "renowned" copyright lawyer and scholar who was

13  retained to conduct an expert literary analysis, as "to offer an *expert literary analysis* there must be

14  some indication that [the expert] has, in one capacity or another, watched, read, written, compared

15  and/or analyzed literary works."  727 F. Supp. 2d 815, 834 (C.D. Cal. 2010), *aff'd*, 438 F. App'x

16  587 (9th Cir. 2011) (emphasis in original).  Quince argues that "Deckers fails to explain why

17  general principles of marketing, branding, and consumer behavior, which apply across industries,

18  are not applicable to footwear."  Dkt. No. 163 at 3.  The Court agrees.  Challenges to the

19  applicability of Catlin's expertise to the footwear at issue goes to the weight of his testimony, not

20  its admissibility, and can be properly challenged through cross-examination.

21       Second, Deckers challenges Catlin's methodologies, arguing that he "relies on no

22  methodology, let alone proper methodology."  Dkt. No. 151 at 5.  Deckers contends Catlin

23  "merely catalogs visually apparent differences between Plaintiff's trade dress and the Accused

24  Products" and "provides no scientific methodology to examine these features."  *Id.*  But an

25  expert's significant experience in marketing can qualify them to provide such testimony.  *See*

26  *Krommenhock v. Post Foods*, LLC, 334 F.R.D. 552, 580 (N.D. Cal. 2020) (denying motion to

27  exclude marketing expert's testimony where he had "in-depth experience in th[e] field, including

28  attending numerous focus groups centered on marketing [the product] and developing marketing

plans for [the product]" which "qualif[ied] him to opine on the matters addressed in his Report"). Deckers points to no relevant authority to support its argument that Catlin's report amounts to "unsupported conjecture" warranting exclusion, or why the visual comparisons of its own marketing experts are admissible.

The Court therefore **DENIES** the motion to exclude Catlin's testimony.

## C.    Quince's Motions

### 1.    Erich Joachimsthaler

Erich Joachimsthaler, Ph.D., is a branding and marketing professional retained by Deckers to render his expert opinion on the nature, quality, strength, and value of the UGG brand, its relationship to Deckers, and how consumers use brand information to make purchase decisions; the implications for the UGG brand and business due to the presence of Quince's accused products in the U.S. marketplace; and the harm, if any, to the UGG brand and business as a result of Quince's actions.  Morrow Decl. Ex. D (Joachimsthaler Report) ¶¶ 2, 10.  Quince challenges Joachimsthaler's testimony on three bases: Deckers failed to disclose documents that served as the foundation of Dr. Joachimsthaler's report; Dr. Joachimsthaler's methodology is unreliable and speculative; and he misuses legal terms, which risks misleading the jury.  Each basis is considered below.

First, Quince argues Dr. Joachimsthaler's report relies on 25 internal documents of Deckers, most of which Deckers failed to produce during fact discovery.  Dkt. No. 143 at 3. These documents relate to Deckers's internal marketing and trend research, and 18 of the 25 documents were not disclosed to Quince until November 26, 2024, nearly two months after the close of fact discovery.  *Id.* at 4-5.  Quince argues Deckers's failure to disclose these documents violates Federal Rule of Civil Procedure 26(a)(1)(A)(ii), which requires a party to disclose without awaiting a discovery request "all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ."  Failure to make required initial disclosures precludes a party from using the materials at trial except where failure to comply was "substantially justified" or "harmless."  Fed. R. Civ. P. 37(c).  Deckers argues it was not required to disclose these documents and that, in any event, the nondisclosure was harmless.

1  Dkt. No. 158 at 3-4.  The documents were disclosed six weeks prior to Quince's expert rebuttal

2  deadline and nearly 12 weeks prior to Dr. Joachimsthaler's deposition, providing a substantial

3  amount of time for Quince to review the documents, prepare a rebuttal, and prepare for Dr.

4  Joachimsthaler's deposition.  Although Quince contends it was deprived of the opportunity to

5  challenge the materials or conduct additional discovery about them during fact discovery, it does

6  not argue that it has been prejudiced by the alleged delay.  Accordingly, the Court finds the

7  nondisclosure of these documents was harmless and declines to exercise its discretion to exclude

8  Dr. Joachimsthaler's testimony on this basis.  *See Norvell v. BNSF Ry. Co.*, No. 22-35373, 2023

9  WL 3299988, at *1 (9th Cir. May 8, 2023) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,

10  259 F.3d 1101, 1106 (9th Cir. 2001) (affirming district court's declination to exclude undisclosed

11  expert opinions, noting district courts' "particularly wide latitude" in determining whether to

12  impose discovery sanctions).

13       Quince also argues Dr. Joachimsthaler's methodology fails to meet the reliability standards

14  of Federal Rule of Evidence 702 and *Daubert* because his opinions are based on generalized

15  branding principles rather than empirical data.  Dkt. No. 143 at 5-7.  In particular, Quince

16  challenges the fact that Dr. Joachimsthaler asserts Quince's conduct caused harm to the Deckers

17  brand despite not having reviewed relevant data.  However, the Court is not persuaded that his

18  proffered analysis is "so incomplete as to be inadmissible as irrelevant."  *Hemmings v. Tidyman's*

19  *Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (citing *Bazemore v. Friday*, 478 U.S. 385, 400 n.10

20  (1986)).  Quince may expose these shortcomings during cross examination.

21       Finally, Quince argues Dr. Joachimsthaler conflates the concepts of "consumer confusion"

22  and "harm to the brand," and is therefore likely to mislead the jury.  Quince's cited case, however,

23  fails to persuade.  There, a court in the Southern District of New York allowed Dr. Joachimsthaler

24  to testify as to damages, but denied his testimony as to "likelihood of confusion" and "likelihood

25  of association" because there was a risk of confusing or misleading the jury as to those distinct

26  concepts.  *Beastie Boys v. Monster Energy Co.*, 983 F.Supp.2d 354, 365 (S.D.N.Y. 2014).  Here,

27  however, Quince has failed to explain the risk of confusion it contends is present with Dr.

28  Joachimsthaler's use of two, less similar terms, and the Court therefore finds the testimony need

1    not be excluded on this basis.

2        For the foregoing reasons, Quince's motion to exclude Dr. Joachimsthaler's testimony is

3    **DENIED**.

4            **2.        Caroline de Baëre**

5        Quince also moves to exclude certain testimony of Deckers's expert, Caroline de Baëre, on

6    several bases.  Dkt. No. 144.  First, Quince moves to exclude the portion of her opinion that all

7    three Asserted Trade Dresses are "unique and inherently distinctive" as contrary to law.  The

8    Court will grant the motion on this basis, because product design trade dress can never be

9    inherently distinctive, *see Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 216 (2000).

10   Accordingly, the portions of de Baëre's testimony that characterize the Trade Dresses as "unique

11   and inherently distinctive" – on pages 40, 53, and 63 of her opening report – are thus excluded.

12       However, the Court is not persuaded by Quince's remaining arguments.  Quince argues de

13   Baëre has no relevant qualifications to appropriately opine on secondary meaning and likelihood

14   of confusion.  Dkt. 144 at 3.  Quince contends her opinions regarding celebrity recognition and

15   third party publicity lack "reliable basis in the knowledge and experience of the relevant

16   discipline." *Id.* (citing *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014).

17   Even assuming its criticisms are true, Quince has not justified exclusion.  *See Alaska Rent-A-Car*,

18   738 F.3d at 969-70 ("[T]he judge is supposed to screen the jury from unreliable nonsense

19   opinions, but not exclude opinions merely because they are impeachable.  The district court is not

20   tasked with deciding whether the expert is right or wrong, just whether his testimony has

21   substance such that it would be helpful to a jury.").

22       Quince further argues de Baëre's "repeated references to the Inter Partes Review (IPR)

23   filed by Next Step Group . . . should be excluded under Rule 37(c)(1) because she neither

24   disclosed the IPR in the materials considered for her report nor produced the IPR decision."  Dkt.

25   No. 144 at 6-7.  In its opposition, Deckers argues it was in fact disclosed and is also a matter of

26   public record.  Quince does not address this in reply, and thus concedes the point.

27       Finally, Quince moves to exclude de Baëre's opinions on prior art and functionality,

28   arguing that de Baëre did not analyze the advantages or disadvantages of alternatives or do a full

United States District Court
Northern District of California

1    costing analysis when analyzing trade dress functionality.  But Quince provides no authority

2    supporting its position that de Baëre's testimony is inadmissible on this basis, when these

3    shortcomings can be addressed during cross-examination.

4         Accordingly, the Court **GRANTS** the motion to exclude de Baëre's testimony as to the

5    Trade Dresses being "unique and inherently distinctive" and excludes those portions of her

6    opening report.  The Court **DENIES** the motion to exclude the remainder of her testimony.

7              **3.       David Franklyn**

8         Quince also moves to exclude the testimony of David Franklyn, one of Deckers's survey

9    experts.  Dkt. No. 145.  Quince challenges the survey universe Franklyn employs, arguing that his

10   survey of "past or prospective purchasers of slippers that can be worn both indoors and/or

11   outdoors that were either fur-lined slippers and/or clog slippers" was improper, because nothing in

12   the Tasman Trade Dress limits it to a fur-lined shoe or a clog slipper.[2]  *Id.* at 3.  "Selection of the

13   proper universe is a crucial step, for even if the proper questions are asked in a proper manner, if

14   the wrong persons are asked, the results are likely to be irrelevant."  McCarthy on Trademarks and

15   Unfair Competition § 32:159 (5th ed.).  However, as noted above, the general rule is that "disputes

16   about a survey's universe of relevant persons go to its probative value and weight, and so are not

17   typically a basis for exclusion."  *Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d

18   1046, 1050 (N.D. Cal. 2024) (citing McCarthy § 32:162 ("In most cases, the selection of an

19   inappropriate universe will lessen the weight of the resulting survey data, not result in its

20   [inadmissibility]") and *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1275 (9th Cir. 2024)).

21   Accordingly, the jury can assess the weight and probative value of Franklyn's survey at trial and

22   Court denies the motion to exclude it.

23   //

24   //

25   //

26

27   _____

     [2] The Tasman Trade Dress is defined as: (1) "An embroidered braid around the opening of the
     upper"; (2) "A raised prominent seam on the front part of the upper running longitudinally down
28   the center of the upper"; (3) "A raised and rounded dome shape toe"; (4) "Brushed suede-like
     exterior"; and (5) "A thick, flat outsole."

United States District Court
Northern District of California

## II.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Quince's motion to exclude the portion of Caroline de Baëre's testimony that the Asserted Trade Dresses are "unique and inherently distinctive" and **DENIES** the remaining motions.

**IT IS SO ORDERED.**

Dated: October 2, 2025

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge