Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jamie Fountain (SBN 316567)
jfountain@blakelylawgroup.com
BLAKELY LAW GROUP
1108 Manhattan Avenue, Suite B
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*Deckers Outdoor Corporation*

Xinlin Li Morrow (SBN 281707)
Ryan McMenamin (*pro hac vice*)
Lawrence Yichu Yuan (*pro hac vice*)
**Morrow Ni LLP**
xinlin@moni.law
ryan@moni.law
lawrence@moni.law
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone:    (213) 282-8166

*Attorneys for Defendant Last Brand, Inc. d/b/a*
*Quince*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation, | Case No.: 3:23-cv-04850-AMO |
| Plaintiff, | Hon. Araceli Martínez-Olguín |
| v. | **PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL** |
| LAST BRAND, INC. dba QUINCE, a Delaware Corporation; and DOES 1-10, inclusive, Defendants. | |

Pursuant to Local Rule 79-5 and this Court's January 9, 2026 Order [ECF 225] Plaintiff

Deckers Outdoor Corporation ("Deckers") and Defendant Last Brand, Inc. ("Quince") (collectively,

the "Parties") hereby submit this joint motion to file under seal the following documents:

## I.    DOCUMENTS AND INFORMATION CONTAINING THE PARTIES' HIGHLY CONFDENTIAL/CONFIDENTIAL INFORMATION

The following documents contain information designated Highly Confidential/Confidential by

the Parties pursuant to the Parties' protective order and the Parties respectfully request they be filed

under seal:

| | Document title or description | Dkt. No. of redacted version | **Dkt. No. of unredacted version** | Full or partial sealing sought |
|---|---|---|---|---|
| 1. | Excerpts of Burgos Deposition | 125-1<br><br>**Resubmitted: 231-6; 231-7** | **138-4; 138-5**<br><br>**Resubmitted: 231-4; 231-5** | Partial |
| 2. | Defendant's Responses to Interrogatories (Set 1, Set 2, Amendment of Set 1 & 2) | 125-5, 125-6, 125-8, 171-3, 171-4<br><br>**Resubmitted: 232-3, 232-4, 232-5** | **139-2 (Set 1); 139-3 (Set 2) 139-4 (Am'd Set 1 & 2) 172-3 (Set 1) 172-4 (Set 2)**<br><br>**Resubmitted: 232 (Set 1); 232-1 (Set 2); 232-2 (Am'd Set 1 & 2)** | Partial |
| 3. | QUINCE0008812-8815 (Quince's internal email chain from 2022-07-09 to 2022-07-23) | 125-13 | **139-5** | Full |
| 4. | QUINCE0002748-2749 (Quince's internal email chain dated 2022-07-26) | 125-14 | **139-6** | Full |
| 5. | QUINCE0002317-2323 (Quince's internal email chain from 2022-07-01 to 2022-07-21) | 125-15 | **139-7** | Full |
| 6. | QUINCE0008490 (Quince's internal slides) | 125-16 | **140** | Full |
| 7. | QUINCE0001285-1294 (Quince's internal email chain from 2022-10-25 to | 125-17 | **140-1** | Full |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | | | | |
|---|---|---|---|---|---|
| | | 2022-11-19) | | | |
| 8. | | QUINCE0002065-2073 (Quince's internal email chain from 2023-11-23 to 2023-12-10) | 125-18 | **140-2** | Full |
| 9. | | QUINCE0002427-2431 (Quince's internal email chain from 2022-07-01 to 2022-07-11) | 125-19 | **140-3** | Full |
| 10. | | QUINCE0002443-2445 (Quince's internal email chain from 2022-10-04 to 2022-10-14) | 125-20 | **140-4** | Full |
| 11. | | QUINCE0008516-8530 (Quince's internal email chain from 2022-05-10 to 2022-06-30) | 125-21 | **140-5** | Full |
| 12. | | QUINCE0001684-1685 (Quince's internal email chain from 2022-05-10 to 2022-05-11) | 125-22 | **140-6** | Full |
| 13. | | QUINCE0002077-2079 (Quince's internal email chain dated 2024-01-29) | 125-23 | **140-7** | Full |
| 14. | | QUINCE0008963-8967 (Quince's internal email chain from 2022-09-09 to 2022-09-22) | 125-24 | **140-8** | Full |
| 15. | | QUINCE0009038 (Quince's internal email chain dated 2022-05-10) | 125-25 | **141** | Full |
| 16. | | QUINCE0006538 (Quince's internal product design sheet) | 125-26, 125-27 | **141-1; 141-2** | Full |
| 17. | | QUINCE0002872-2874 (Quince's internal email chain from 2022-11-08 to 2022-11-11) | 125-30 | **141-3** | Full |
| 18. | | QUINCE0009995 (Quince's product analysis sheet) | 125-31 | **141-4** | Full |
| 19. | | Initial Expert Report of Caroline de Baere | 127-1, 134-1 144-2 <br><br> **Resubmitted: 228-4; 228-5; 228-6; 228-7** | **136; 136-1; 136-2; 136-3 146-2 147-17** <br><br> **Resubmitted: 228; 228-1; 228-2, 228-3** | Partial |
| 20. | | Initial Expert Report of David Hanson | 134-8 142-4 <br><br> **Resubmitted: 229-1** | **137-1 146-3 147-3** <br><br> **Resubmitted** | Partial |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | | | **: 229** | |
|---|---|---|---|---|---|
| 21. | Rebuttal Expert Report of Richard Brady | 134-12 142-15 **Resubmitted: 229-3** | **137-2 146-5 147-9** **Resubmitted : 229-2** | Partial |
| 22. | Unredacted Plaintiff's Opposition to Defendant's Motion for Summary Judgment | 164 | **165-3, 166-3** | Partial |
| 23. | Defendant's Opposition To Plaintiff's Motion For Summary Judgment Of The Complaint And Defendant's Affirmative Defenses | 161 | **162-2** | Partial |
| 24. | Excerpts of the deposition testimony of Siddhartha Gupta dated August 9, 2024 | 161-10 | **162-3** | Full |
| 25. | Excerpts of the deposition testimony of Siddhartha Gupta dated October 9, 2024 | 161-11 | **162-4** | Full |
| 26. | Exhibit 3 to the deposition testimony of Siddhartha Gupta dated August 9, 2024 | 161-12 | **162-5** | Full |
| 27. | Exhibit 4 to the deposition testimony of Siddhartha Gupta dated August 9, 2024 | 161-13 | **162-6** | Full |
| 28. | Spreadsheets Containing Deckers' Sales Revenue | 126-3, 126-8, 126-12 | **135-4, 135-5, 136-4** | Full |
| 29. | Spreadsheets Containing Deckers' Marketing Expenditures | 126-16 | **137** | Full |
| 30. | DOC 001662-DOC 001670 | 144-5 | **147-19** | Full |
| 31. | DOC 000003-DOC 000042 | 149-9 | **147-24** | Full |
| 32. | Initial Expert Report of Dr. Erich Joachimsthaler | 130-1, 134-2, 142-9, 143-2, 149-10 **Resubmitted: 230-1** | **135-2, 147-5, 147-14, 147-25** **Resubmitted : 230** | Partial |
| 33. | Initial Expert Report of Dennis Comeau | 142-16 **Resubmitted: 231-3** | **147-10** **Resubmitted : 231-2** | Partial |
| 34. | Rebuttal Expert Reports of Jesse Catlin | 134-13, 134-14, 149-11, 149-13 **Resubmitted:** | **137-3, 137-4, 147-26, 147-27** **Resubmitted** | Partial |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | | 230-5; 230-3 | : 230-4; 230-2 | |
|---|---|---|---|---|---|
| 35. | Rebuttal Expert Reports of Dennis Comeau | 134-15, 142-11 **Resubmitted: 230-7** | **137-5, 147-7** **Resubmitted: 230-6** | Partial |
| 36. | Rebuttal Expert Report of Caroline de Baere | 142-18, 144-6, 159-4, 164-11 **Resubmitted: 231-1** | **147-11, 147-20, 166-4** **Resubmitted: 231** | Partial |
| 37. | Unredacted Declaration of Lisa Bereda In Support of Plaintiff's Motion for Summary Judgment | 126 | **135-3** | Partial |
| 38. | Unredacted version of Defendant's MIL No. 2 (Fn. 11 and 15 only) | 144 | **147-16** | Partial |
| 39. | Unredacted version of Defendant's MIL No. 3 | 145 | **147-22** | Partial |
| 40. | Excerpts from the Rule 30(b)(6) deposition transcript of Lisa Bereda | 144-7 | **147-21** | Full |
| 41. | Excerpts of the Deposition Transcript of Dr. Erich Joachimsthaler | 142-10, 143-3, 158-2 | **147-6, 147-15, 166-5** | Full |
| 42. | Excerpts of deposition of David S. Hanson | 142-5 | **147-4** | Full |
| 43. | Excerpts from the rough transcript of the deposition of Caroline de Baere | 144-4 | **147-18** | Full |

Parties seeking to seal documents relating to motions that are "more than tangentially related to the underlying cause of action," *Ctr. for Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1099 (9th Cir. 2016), bear the burden of providing "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). Rule 26(c), in turn, provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed." Fed. R. Civ. P. 26(c).

Courts have found compelling reasons exist to seal confidential financial and business information because of the competitive harm caused by the disclosure of such information. *See*, *e.g.*, *Adtrader, Inc. v. Google LLC*, 2020 WL 6395441, at *2 (N.D. Cal. Feb. 25, 2020) (compelling

reasons support sealing "highly sensitive, confidential, non-public information related to . . . internal strategic business and financial decision-making, including sensitive financial information and accounting practices'" that "could cause competitive harm" if revealed); *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *5 (N.D. Cal. June 30, 2015) (sealing "confidential product and business information which is not intended for public disclosure"); *Finjan, Inc. v. Proofpoint, Inc.*, 2016 WL 7429304, at *1 (N.D. Cal. Feb. 9, 2016) (same for "information about the technical operation of the [party's] products, financial revenue data . . . and related correspondence"); *In re Hewlett-Packard Co. S'holder Deriv. Litig.*, 2015 WL 8570883, at *5 (N.D. Cal. Nov. 18, 2015) (same for "corporate policies and procedures," such as "internal operations information, account assignments and divisions, financial information regarding specific clients, and [the party's] organization structure."); *Apple, Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013) ("One factor that weighs in favor of sealing documents is when the release of the documents will cause competitive harm to a business."); *Davis v. Soc. Serv. Coordinators, Inc.*, 2012 WL 1940677, at *3 (E.D. Cal. May 29, 2012) (noting that "[g]ood cause to seal is generally found where the disclosure of proprietary information could cause a party competitive injury")(internal citations omitted); *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-0282, 2019 WL 1767158, at *2 (N.D. Cal. Apr. 22, 2019) (holding that confidential business information includes "marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other such materials that could harm a party's competitive standing") (collecting cases).

Here, the above-referenced documents reveal sensitive details about Quince's internal finances, business model, brand strategy, advertising and marketing, sourcing process, design process, internal policy, business partnership, internal operation procedure and workflow and other non-public proprietary information that is highly sensitive and not intended for public disclosure. *See* Declaration of Matt Lippert ("Lippert Decl.") [ECF No. 210-1], ¶¶ 4-6. Likewise, the above-referenced documents contain sensitive information related to Deckers' internal finances, including sales data; business strategy; marketing and advertising strategy and model; sourcing and design process; internal policies and procedures; business partnerships, internal operations and other non-public proprietary information that is highly sensitive and not intended for public disclosure. *See* Declaration of Lisa Bereda ("Bereda

Dec.") [ECF 153-1], ¶¶ 3-9. A detailed breakdown of the legitimate interests justifying sealing each

document or portion of document, the injury that will result if sealing is denied, is as follows:

| | Document title or description [**Dkt. No. of unredacted version**] | Legitimate interests justifying sealing each document or portion of document & resulting injury without sealing |
|---|---|---|
| | **Materials Quince Bears The Burden To Seal (Nos. 1-27)** | |
| 1. | Excerpts of Burgos Deposition and exhibits [138-4; 138-5; **Resubmitted: 231-4; 231-5**] | Alyssa Burgos is Quince's Director of Footwear and Accessories.<br><br>The deposition transcript contains detailed description of Quince's product design and selection strategy and process evidenced by Quince's internal emails.<br><br>Exhibit 1 to the deposition transcript (QUINCE0008480-QUINCE0008495) is Quince's internal slides containing Quince's business model, supply chain, marketing strategy, manufacturing partners, and business arrangements and sales data.<br><br>Exhibit 2 to the deposition transcript is the notice of Deckers' 30(b)(6) deposition of Quince, which do not contain any designations from Quince. **Quince does not object to this portion of the document to be filed on public docket.**<br><br>Exhibit 3 to the deposition transcript (QUINCE0008516-QUINCE0008530) is Quince's internal email chain which contains brand coordination across multiple styles with design and quality specs, material/sole requirements, costing breakdown requests, pricing strategy, timing and logistics for approvals/samples, an internal Google Sheet link, and analysis of competitor products.<br><br>Exhibit 3A to the deposition transcript (QUINCE0009995) is Quince's product analysis sheet which contains highly confidential information on Quince's internal product selection and design process, analysis of competitor products, production costs, product inventory, lead time, supply chain and manufacturing information.<br><br>Exhibit 4 to the deposition transcript (QUINCE0002427-QUINCE0002434) is Quince's internal email chain which contains GMV/margin percentages, recommendations to lower cost, status update and timeline on samples, vendor information and lead-times, analysis of competitor |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

products, pricing strategy, and proposed shipping plan and internal IP management strategy.

Exhibit 5 to the deposition transcript (QUINCE0002317-QUINCE0002326) is Quince's internal email chain which contains photoshoot of swatches, timeline for approval for swatches, detailed pricing strategy and margin discussions with competitor comparisons and logistics cost issues, plus vendor information and lead-times and IP management strategy.

Exhibit 6 to the deposition transcript (QUINCE0008812-QUINCE0008815) is Quince's internal email chain which contains Quince's internal design process and IP management strategy, along with vendor sampling status.

Exhibit 8 to the deposition transcript (QUINCE0002748-QUINCE0002749) is Quince's internal email which contains internal sample-review notes for men's canvas and shearling products, internal quality control strategy, analysis of competitor products, request costing/buy-plan details, and pricing strategy.

Exhibit 9 to the deposition transcript (QUINCE0009147-QUINCE0009158) is Quince's internal email chain which contains Quince's internal design process, including naming strategy, photoshoot sample sizing/scheduling, and pricing/margin workups, analysis of competitor products, vendor information and lead-times, IP management strategy.

Exhibit 10 to the deposition transcript (QUINCE0003088- QUINCE0003103) is Quince's internal email chain which contains photoshoot samples and packaging specifications (shoe box design, hangtag/label materials, care-label approach), along with timeline risks and production constraints and contingency plans in product development, vendor information and timeline, pricing strategy, IP management strategy, photoshoot of and discussion on swatches, and analysis of competitor products.

Exhibit 12 to the deposition transcript (QUINCE0001285- QUINCE0001294) is Quince's internal email chain which contains internal design process, product specifications, sample corrections and logistics, specific manufacturers, purchase order timing, launch workflow, and sample sizing for photo shoots.

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | |
|---|---|---|
| | | Exhibit 13 to the deposition transcript (QUINCE0002872- QUINCE0002874) is Quince's internal email chain which contains internal design process for Australian Shearling Mid boot covering colorway and outsole colour matching decisions, delivery feasibility, launch workflow, and an internal Google Sheet link.<br><br>Exhibit 16 to the deposition transcript (QUINCE0008610- QUINCE0008617) is Quince's internal email chain which contains Quince's design process of its product line, analysis of competitor products, costs, margin, shipment/logistics plans, quality assessments and vendor capability<br><br>**Pages 72-77 of ECF No. 138-5 does not contain any designation of confidentiality from Quince. Quince does not object to this portion of the document to be filed on public docket.**<br><br>Quince has expended substantial time, money, manpower and other resources to develop the information contained in the highlighted portions of the deposition transcript and Exs. 1, 3, 3A, 4-6, 8-10, 12-13, 16 attached thereto, none of which is publicly available. The release of this information would enable competitors to learn about Quince's entire business model, marketing and brand strategy, product development playbook, vendor relationships, and its internal operating procedure, resulting in significant competitive harm to Quince. |
| 2. | Quince's Responses to Interrogatories [139-2; 139-3; 139-4; 172-3; 172-4; **Resubmitted: 232 (Set 1); 232-1 (Set 2) ; 232-2 (Am'd Set 1 & 2)**] | The filing contains highly confidential information on Quince's manufacturers (ECF No. 139-2, at 5-6[1]; ECF No. 139-3, at 5-7), profit and cost information of Quince's products (ECF No. 139-2, at 7; ECF No. 139-3, at 9-10), Quince's business model and design process (ECF 139-4, at 2-5).<br><br>ECF No. 172-3; 172-4 are exhibits filed by Deckers and are duplicative of 139-2, 139-3.<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about |

---

[1] All page references are exhibit page number or local page number, not ECF page number/pdf page number.

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | |
|---|---|---|
| | | Quince's business model, supply chain, and pricing strategy, enabling competitors to develop competitor products and diminish the market share of Quince's products, causing competitive harm.<br><br>**Although Deckers submitted these exhibits for full sealing, Quince has resubmitted copies redacting only the above confidential information that Quince has designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| 3. | QUINCE0008812-8815 [139-5] (Quince's internal email chain from 2022-07-09 to 2022-07-23) | This filing is duplicative of item 1 (Exhibit 6 to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's internal email chain containing Quince's internal discussions on internal design process and IP management strategy, along with vendor sampling status. |
| 4. | QUINCE0002748-2749 [139-6] (Quince's internal email chain dated 2022-07-26) | This filing is duplicative of item 1 (Exhibit 8 to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's internal email containing Quince's internal email chain which contains internal sample-review notes for men's canvas and shearling products, analysis of competitor products, request costing/buy-plan details, and pricing strategy. |
| 5. | QUINCE0002317-2323 [139-7] (Quince's internal email chain from 2022-07-01 to 2022-07-21) | This filing is duplicative of item 1 (Exhibit 5 to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's internal email chain containing photoshoot of swatches, timeline for approval for swatches, detailed pricing and margin discussions (including proposed retails and the need to raise price to positive margin) with competitor comparisons and logistics cost issues, plus vendor information and lead-times and IP management strategy. |
| 6. | QUINCE0008490 [140] (Quince's internal slides) | This filing is a subset of item 1 (Exhibit 1 to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's internal slides containing Quince's business model, supply chain, marketing |

| | | strategy, manufacturing partners, and business arrangements. |
|---|---|---|
| 7. | QUINCE0001285-1294 [140-1] (Quince's internal email chain from 2022-10-25 to 2022-11-19) | This filing is duplicative of item 1 (Exhibit 12 to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's internal email chain containing internal design process, product specifications, sample corrections and logistics, specific manufacturers, purchase order timing, launch workflow, and sample sizing for photo shoots. |
| 8. | QUINCE0002065-2073 [140-2] (Quince's internal email chain from 2023-11-24 to 2022-12-10) | The exhibit contains Quince's internal email chain revealing product-development and packaging/logistics strategies for footwear—e.g., box-sizing tests, handling of defects, analysis of competitor products, and concrete cost figures loss.<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's internal workflows, product development strategy, and pricing strategy, enabling competitors to develop competitor products and diminish the market share of Quince's products, causing competitive harm. |
| 9. | QUINCE0002427-2431 [140-3] (Quince's internal email chain from 2024-07-01 to 2022-07-11) | This filing is a subset of item 1 (Exhibit 4 to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's internal email chain containing Quince's internal discussions on GMV/margin percentages, recommendations to lower cost, status update and timeline on samples, vendor information and lead-times, analysis of competitor products and pricing, and proposed shipping plan and internal IP management strategy. |
| 10. | QUINCE0002443-2445 [140-4] (Quince's internal email chain from 2022-10-04 to 2022-10-14) | The exhibit contains Quince's internal email chain detailing Quince's internal launch plans, including image strategy, recycled-material claims, care-tag decisions, and links to internal buy-plan/pricing tools and staging sites.<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about |

| | | Quince's internal workflows, and product development strategy, enabling competitors to develop competitor products and diminish the market share of Quince's products, causing competitive harm. |
|---|---|---|
| 11. | QUINCE0008516-8530 [140-5] (Quince's internal email chain from 2022-05-10 to 2022-06-30) | This filing is duplicative of item 1 (Exhibit 3 to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's internal email chain containing brand coordination across multiple styles with design and quality specs, material/sole requirements, costing breakdown requests, timing and logistics for approvals/samples, an internal Google Sheet link, and competitor reference matching. |
| 12. | QUINCE0001684-1685 [140-6] (Quince's internal email chain from 2022-05-10 to 2022-05-11) | The exhibit contains Quince's internal email chain containing product test plans and an internal Google Sheet link.<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's test plans, enabling competitors to develop competitor products and diminish the market share of Quince's products, causing competitive harm. |
| 13. | QUINCE0002077-2079 [140-7] (Quince's internal email chain dated 2024-01-29) | The exhibit contains Quince's internal email containing analysis of competitor products, marketing strategy, detailed metrics from a subscription analysis.<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's product development process, enabling competitors to develop competitor products and diminish the market share of Quince's products, causing competitive harm. |
| 14. | QUINCE0008963-8967 [140-8] (Quince's internal email chain from 2022-09-09 to 2022-09-22) | The exhibit contains Quince's internal email chain containing information on specific suppliers and product categories Quince is pursuing (e.g. geographies, manufacturer names, and price targets and timelines).<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's sourcing network, expansion roadmap, and pricing strategy, enabling competitors to develop |

| | | |
|---|---|---|
| | | competitor products and diminish the market share of Quince's products, causing competitive harm. |
| 15. | QUINCE0009038 [141] (Quince's internal email chain dated 2022-05-10) | The exhibit contains Quince's internal email chain containing Quince's specific factory partners, production lead times, links to internal workflows.<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would give competitors to a roadmap to Quince's supply chain and assortment plans and confidential information of Quince's vendor relationships, enabling competitors to develop competitor products and diminish the market share of Quince's products, causing competitive harm.<br>. |
| 16. | QUINCE0006538 [141-1; 141-2] (Quince's internal product design sheet) | These exhibits contains Quince's internal product design sheet which captures product specs, sustainability and recycled-material information on product tags, factory/worker program details, and costing breakdowns.<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's business model, design and manufacturing process, and its internal operating procedure, and diminish the market share of Quince's products, causing competitive harm. |
| 17. | QUINCE0002872-2874 [141-3] (Quince's internal email chain from 2022-11-08 to 2022-11-11) | This filing is duplicative of item 1 (Exhibit 13 to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's internal email chain containing internal design process for Australian Shearling Mid boot covering colorway and outsole colour matching decisions, delivery feasibility, launch workflow, and an internal Google Sheet link. |
| 18. | QUINCE0009995 [141-4] (Quince's product analysis sheet) | This filing is duplicative of item 1 (Exhibit 3A to Excerpts of Burgos Deposition) filed by Deckers. Quince requests its sealing for the same reasons stated above.<br><br>This exhibit contains Quince's product analysis sheet containing highly confidential information on Quince's internal product selection and design process, analysis of competitor products, production costs, product inventory, lead-time supply chain and manufacturing information. |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| 19. | Initial Expert Report of Caroline de Baere [136; 136-1; 136-2; 136-3; 146-2; 147-17; **Resubmitted: 228; 228-1; 228-2, 228-3]** | The Initial Expert Report of Caroline de Baere contains highly confidential information—cost information (ECF No. 136, at 68). |
|---|---|---|
| | | ECF Nos. 146-2 and 147-17 are filings of the same report. |
| | | Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of these sensitive financial information would enable competitors to learn about Quince's pricing strategy and diminish the market share of Quince's products, causing competitive harm. |
| | | **Quince does not object to the release of the appendix to the Initial Expert Report of Caroline de Baere (ECF Nos. 136-1; 136-2; 136-3) filed by Deckers which contains survey reports that are already publicly available.** |
| | | **Although both Deckers (ECF No. 136, 136-1, 136-2, 136-3, 147-17) and Quince (ECF No. 146-2) submitted these exhibits in connection with its filing, Quince has resubmitted copies redacting only the above confidential information that Quince has designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| 20. | Initial Expert Report of David Hanson [137-1; 146-3; 147-3; **Resubmitted: 229]** | The Initial Expert Report of David Hanson contains highly confidential information on costs of Quince's products (ECF No. 137-1, at 25), sales and profits of Quince's products (ECF No. 137-1, at 18, 19, 23, 24 [1st highlight], 26, 27 [1st, 2nd, 4th – 6th highlight], 28, 29). The Court has granted sealing of the rough deposition transcript of the deposition of David S. Hanson reflecting the same information. *See* ECF No. 205, at 11. |
| | | ECF Nos. 137-1, 146-3, and 147-3 are filings of the same report. |
| | | Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's pricing strategy and diminish the market share of Quince's products, causing competitive harm. |

| | | |
|---|---|---|
| | | **Although both Deckers (ECF No. 137-1, 147-3) and Quince (ECF No. 146-3) submitted these exhibits in connection with its filing, Quince has resubmitted copies redacting only the above confidential information that Quince has designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| 21. | Rebuttal Expert Report of Richard Brady [137-2; 146-5; 147-9; **Resubmitted: 229-2]** | The Rebuttal Expert Report of Richard Brady contains highly confidential information on costs of Quince's products (ECF No. 137-2, at 10, 11 [1st and 3rd highlight], 54 [1st-3rd highlight], 55 [3rd highlight], 57, 58, 61-64, 74 [3rd, 5th, and 6th highlight], 75 [4th, 6th and 7th highlight], 76, 82 [1st-3rd highlight], 88, 109-111, 113-118, 135, and 149-151), sales and profit of Quince's products (ECF No. 137-2, at 11[3rd highlight], 24, 29, 30-32 [1st-3rd, 6th and 7th highlight], 36 [2nd-8th highlight], 54 [1st-3rd highlight], 58, 59, 60, 64, 65, 73, 76, 86 [3rd-5th highlight], 88, 111-113, 115, 117-118, 135, 149-151), Quince's manufacturers (ECF No. 137-2, at 13) business model and pricing strategy(ECF No. 137-2, at 37 [3rd, highlight], 38 [2nd, 3rd, and 5th highlight], and 39), marketing strategy (ECF No. 137-2, at 55).<br><br>ECF No. 146-5 and 147-9 are filings of the same report.<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's pricing strategy and diminish the market share of Quince's products, causing competitive harm.<br><br>**Although both Deckers (ECF No. 137-2, 147-9) and Quince (ECF No. 146-5) submitted these exhibits in connection with its filing, Quince has resubmitted copies redacting only the above confidential information that Quince has designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| 22. | Unredacted Plaintiff's Opposition to Defendant's Motion for Summary Judgment [165-3;166-3] | The redacted/highlighted portions of Defendant's Opposition To Plaintiff's Motion For Summary Judgment Of The Complaint And Defendant's Affirmative Defenses contains the same information listed in item 1 (*see*, *e.g.*, ECF No. 165-3, at 10, 20 (redacting the same information from Excerpts of Burgos Deposition and |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | |
|---|---|---|
| | | exhibits)) or items that the Court has already granted sealing. *Compare* ECF No. 205, at 4 (granting sealing of Excerpts of Gupta Deposition [125-2, 125-3] and Excerpts of Lippert Deposition [125-4]) with ECF No. 165-3, at 10, 20 (redacting the same information from the exhibits granted sealing).<br><br>ECF No. 166-3 is filing of the same brief.<br><br>For the same reasons stated in item 1, Quince requests sealing the highlighted portions in this exhibit. |
| 23. | Defendant's Opposition To Plaintiff's Motion For Summary Judgment Of The Complaint And Defendant's Affirmative Defenses [162-2] | The redacted/highlighted portions of Defendant's Opposition To Plaintiff's Motion For Summary Judgment Of The Complaint And Defendant's Affirmative Defenses contains the same information listed in items 24 through 27 (*see*, *e.g.*, ECF No. 162-2, at 17-19 (redacting the same information from Excerpts of the deposition testimony of Siddhartha Gupta dated August 9, 2024 and Excerpts of the deposition testimony of Siddhartha Gupta dated October 9, 2024) and item 1 (*see*, *e.g.*, ECF No. 162-2, at 19 (redacting the same information from Excerpts of Burgos Deposition and exhibits).<br><br>For the same reasons stated herein, Quince requests partial sealing of the redacted/highlighted portions of this document. |
| 24. | Excerpts of the deposition testimony of Siddhartha Gupta dated August 9, 2024 [162-3] | Siddhartha Gupta is Quince's Founder and CEO.<br><br>The deposition transcript contains detailed description of Quince's business model, internal IP management strategies, internal product design process and manufacturing process (including vendor and warehouse information) (ECF No. 162-3, at 16-41), marketing, advertising and brand strategy (including advertising partners and vendors) (ECF No. 162-3, at 43-45) and organizational information (ECF No. 162-3, at 45).<br><br>Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's entire business model, marketing and brand strategy, and its internal operating procedure, causing significant competitive harm and diminishing the market share of Quince's products. |
| 25. | Excerpts of the deposition testimony of Siddhartha Gupta dated | The deposition transcript contains detailed description of Quince's marketing, advertising and brand strategy (including advertising partners and vendors, and advertising costs), which has been designated by Quince |

| | | October 9, 2024 [162-4] | as highly confidential, Attorneys' Eyes Only pursuant to the Court's protective order. |
|---|---|---|---|
| | | | Quince has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Quince's entire business model, marketing and brand strategy, and its internal operating procedure, causing significant competitive harm and diminishing the market share of Quince's products. |
| | 26. | Exhibit 3 to the deposition testimony of Siddhartha Gupta [162-5] | This exhibit contains Quince's contract with one of its manufacturing partners. The contract contains the parties' business arrangements, which has been designated by Quince as highly confidential, Attorneys' Eyes Only pursuant to the Court's protective order.<br><br>Quince has expended substantial time, money, manpower and other resources to source its manufacturing partner, negotiate and develop business arrangement (including but not limited to payment terms, logistics, products quality, representations and warranties, etc.), none of which is publicly available. The release of this information would enable competitors to learn about Quince's entire business model, manufacturing process, its internal operating procedure, and manufacturing partners, causing significant competitive harm and diminishing the market share of Quince's products. |
| | 27. | Exhibit 4 to the deposition testimony of Siddhartha Gupta dated August 9, 2024 [162-6] | This exhibit contains Quince's contract with one of its manufacturing partners. The contract contains the parties' business arrangements, which has been designated by Quince as highly confidential, Attorneys' Eyes Only pursuant to the Court's protective order.<br><br>For the same reasons stated in item 26, Quince requests sealing in its entirety. |
| **Materials Deckers Bears The Burden To Seal (Nos. 28-50)** | | | |
| | 28. | Spreadsheets Containing Deckers' Sales Revenue [135-4, 135-5, 136-4] | These documents contain Deckers' sales revenue with respect to the three UGG® products at issue, including total number of units sold and revenue. *Bauer Bros. LLC v. Nike, Inc.*, 2012 WL 1899838, at *4 (S.D. Cal. May 24, 2012) (granting motion to seal non-public financial data); *See also Algarin v. Maybelline, LLC,* 2014 U.S. Dist. LEXIS 23882, *10 (S.D. Cal. Feb. 21, 2014) (where the plaintiff wanted to file under seal documents including sales and advertising data and the court determined that revealing such information to the public "could result in improper use by business competitors seeking to replicate |

[the plaintiff's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."). For the following reasons, Deckers requests sealing in its entirety.

Compelling reasons exist for granting this Motion where the referenced documents contain confidential business material, the public filing of which could result in improper use by business competitors. *See* Declaration of Lisa Bereda ("Bereda Dec."), ¶¶ 3-5. Documents that contain sales data could result in improper use by business competitors seeking to replicate Deckers' business practices and circumvent the time and resources necessary in developing their own practices and strategies. Bereda Dec., ¶ 3-5. The documents containing revenues of various UGG® products are detailed spreadsheets setting forth the revenues earned and the number of units sold for all styles embodying the Trade Dress and/or Patents-In Suit. Bereda Dec., ¶ 3-5.

Moreover, the aforementioned documents are not generally disseminated within Deckers and only employees who require access to this information to perform their duties are given access to same. Bereda Dec., ¶ 6. Furthermore, those at Deckers who have access to this information are under a strict contractual and ethical obligation to maintain their confidentiality. Bereda Dec., ¶ 6.

The documents contain sensitive product-specific financial information, and if this information were made publicly available, competitors of Deckers may use it to copy Deckers' business practices rather than spending the time and resources to develop their own. *See Algarin v. Maybelline, LLC*, 2014 U.S. Dist. LEXIS 23882, *10 (S.D. Cal. Feb. 21, 2014) (where the plaintiff wanted to file under seal documents including sales and advertising data and the court determined that revealing such information to the public "could result in improper use by business competitors seeking to replicate [the plaintiff's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."). Such a situation would harm Deckers' competitive standing, and therefore, this information should be sealed. *Apple v. Samsung*, 727 F.3d at 1226, 1228 (where Federal Circuit concluded that under Ninth Circuit law, detailed product-specific financial information are appropriately sealable under the "compelling reasons" standard where such information

| | | |
|---|---|---|
| | | could be used to the company's competitive disadvantage); *Arnaudov v. Cal. Delta Mech., In*c., 2015 U.S. Dist. LEXIS 45495, *6 (N.D. Cal. Apr. 7, 2015) ([""[S]ources of business information that might harm a litigant's competitive standing' may also give rise to a compelling reason to seal.") (citing *Nixon v. Warner Communications, Inc*., 435 U.S. 589, 598 (1978)); *see also Delfino Green & Green v. Workers Comp. Solutions, LLC*, 2015 U.S. Dist. LEXIS 90774, *4 (N.D. Cal. July 13, 2015) (where court applied the "compelling reasons" standard to a request to seal portions of a complaint and an answer, and determined references to a confidential settlement agreement, a confidential financial agreement, and confidential financial information were all "sealable information") (citing *Transperfect Global, Inc. v. MotionPoint Corp*., No. 10-cv-02590-CW, 2014 U.S. Dist. LEXIS 135891 (N.D. Cal. Sept. 25, 2014) (granting motion to seal documents containing confidential financial information). |
| 29. | Spreadsheets Containing Deckers' Marketing Expenditures [137] | These documents contain Deckers' advertising and marketing expenditures for the UGG® brand. *See Algarin v. Maybelline, LLC,* 2014 U.S. Dist. LEXIS 23882, *10 (S.D. Cal. Feb. 21, 2014) (where the plaintiff wanted to file under seal documents including sales and advertising data and the court determined that revealing such information to the public "could result in improper use by business competitors seeking to replicate [the plaintiff's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."). This document has been designated by Deckers as highly confidential, Attorneys' Eyes Only pursuant to the Court's protective order.<br><br>For the same reasons stated in item 28, Deckers requests sealing in its entirety. |
| 30. | DOC 001662-DOC 001670 [147-19] | These documents contain Deckers' pricing information, and reveal marketing and advertising strategy as well as brand strategy. *Bauer Bros. LLC v. Nike, Inc*., 2012 WL 1899838, at *4 (S.D. Cal. May 24, 2012) (granting motion to seal non-public financial data); *See also Algarin v. Maybelline, LLC,* 2014 U.S. Dist. LEXIS 23882, *10 (S.D. Cal. Feb. 21, 2014) (where the plaintiff wanted to file under seal documents including sales and advertising data and the court determined that revealing such information to the public "could result in improper use by business competitors seeking to replicate [the plaintiff's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."). For the following reasons, Deckers |

| | | |
|---|---|---|
| | | requests sealing in its entirety. |
| | | These documents contain advertising and marketing strategy for the UGG® brand and products at issue, pricing strategy, and information related to Decker's business strategy regarding branding, and promotion of products. Bereda Dec., ¶¶ 3-5. All of this information, sales, marketing, and brand strategy are highly sensitive and could undermine Deckers' competitive market strategy if disclosed. Bereda Dec., ¶ 5-7. Because these documents are not publicly available, public dissemination of such proprietary information could materially affect Deckers' ability to increase its competitive advantages and differentiate itself from competitors. Bereda Dec., ¶ 5-7. |
| | | If this information were made publicly available, competitors of Deckers may use it to copy Deckers' business practices rather than spending the time and resources to develop their own. *See Algarin v. Maybelline, LLC*, 2014 U.S. Dist. LEXIS 23882, *10 (S.D. Cal. Feb. 21, 2014) (where the plaintiff wanted to file under seal documents including sales and advertising data and the court determined that revealing such information to the public "could result in improper use by business competitors seeking to replicate [the plaintiff's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."). Such a situation would harm Deckers' competitive standing, and therefore, this information should be sealed. *Apple v. Samsung*, 727 F.3d at 1226, 1228 (where Federal Circuit concluded that under Ninth Circuit law, detailed product-specific financial information are appropriately sealable under the "compelling reasons" standard where such information could be used to the company's competitive disadvantage); *Arnaudov v. Cal. Delta Mech., In*c., 2015 U.S. Dist. LEXIS 45495, *6 (N.D. Cal. Apr. 7, 2015) (["'[S]ources of business information that might harm a litigant's competitive standing' may also give rise to a compelling reason to seal."). |
| 31. | DOC 000003-DOC 000042 [147-24] | These documents are part of Deckers' internal strategy related to branding, marketing, advertising, and design process. *See also Algarin v. Maybelline, LLC*, 2014 U.S. Dist. LEXIS 23882, *10 (S.D. Cal. Feb. 21, 2014) (where the plaintiff wanted to file under seal documents including sales and advertising data and the court determined that revealing such information to the public |

| | | |
|---|---|---|
| | | "could result in improper use by business competitors seeking to replicate [the plaintiff's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."). For the following reasons, Deckers requests sealing in its entirety.<br><br>For the same reasons stated in item 30 Deckers requests sealing in its entirety. |
| 32. | Initial Expert Report of Caroline de Baere [136; 136-1; 136-2; 136-3; 146-2; 147-17 **Resubmitted: 228; 228-1; 228-2, 228-3**] | The Initial Expert Report of Caroline de Baere contains highly confidential information related to Deckers' brand strategy including advertising, marketing, and design process.<br><br>ECF Nos. 136, 136-1, 136-2; 136-3; 146-2; 147-17 are filings of the same report.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of these sensitive financial information would enable competitors to learn about Deckers' brand strategy, advertising and marketing strategy, and design process would diminish the market share of Deckers' products, causing competitive harm.<br><br>**Deckers does not object to the release of the appendix to the Initial Expert Report of Caroline de Baere (ECF Nos. 136-1; 136-2; 136-3) which contains survey reports that are already publicly available.**<br><br>**Although both Deckers  (ECF No. 136, 136-1, 136-2, 136-3, 147-17) and Quince (ECF No. 146-2) submitted these exhibits in connection with its filing, the parties have resubmitted copies redacting only the above confidential information that the parties have designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| 33. | Initial Expert Report of David Hanson [137-1; 146-3; 147-3; **Resubmitted: 229**] | David Hanson is Deckers' damages expert. His report necessarily contains highly confidential information on pricing information, business revenue, sales revenue for the products at issue, and profit margins. For the reasons set forth above in item 28, Deckers requests that the parts of the report discussing the foregoing be sealed.<br><br>ECF Nos. 137-1, 146-3, and 147-3 are filings of the same report. |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | | |
|---|---|---|---|
| | | | Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Deckers' pricing strategy, total revenue, business strategy, profit margins, and diminish the market share of Deckers' products, causing competitive harm.<br><br>**Although both Deckers (ECF No. 137-1, 147-3) and Quince  (ECF No. 146-3) submitted these exhibits in connection with its filing, the parties have resubmitted copies redacting only the above confidential information that both parties have designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| | 34. | Initial Expert Report of Dr. Erich Joachimsthaler [135-2, 147-5, 147-14, 147-25; **Resubmitted: 230**] | Dr. Erich Joachimsthaler is Deckers' expert who opines in part regarding the harm caused to Deckers' UGG® brand by Defendants' sale of the Accused Products. His report necessarily contains highly confidential information on brand strategy. For the reasons set forth above in items 28-31, Deckers requests that the parts of the report discussing the foregoing be sealed.<br><br>ECF Nos. 135-2, 147-5, 147-14, 147-25 are filings of the same report.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Deckers' pricing strategy, total revenue, business strategy, and diminish the market share of Deckers' products, causing competitive harm.<br><br>**Although Deckers submitted these exhibits in connection with its filing, the parties have resubmitted copies redacting only the above confidential information that both parties have designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| 35. | Initial Expert Report of Dennis Comeau [147-10; **Resubmitted: 231-2**] | The Initial Expert Report of Dennis Comeau contains highly confidential information related to Deckers' brand strategy including advertising, marketing, and design process. |
|---|---|---|
| | | Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of these sensitive financial information would enable competitors to learn about Deckers' brand strategy, advertising and marketing strategy, and design process would diminish the market share of Deckers' products, causing competitive harm. |
| | | **Although Deckers submitted these exhibits in connection with its filing, the parties have resubmitted copies redacting only the above confidential information that both parties have designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| 36. | Rebuttal Expert Report of Richard Brady [137-2; 146-5; 147-9; **Resubmitted: 229-2**] | The Rebuttal Expert Report of Richard Brady contains highly confidential information highly confidential information on pricing information, business revenue, sales revenue for the products at issue, and profit margins. For the reasons set forth above in item 28, Deckers requests that the parts of the report discussing the foregoing be sealed. |
| | | ECF No. 137-2. 146-5 and 147-9 are filings of the same report. |
| | | Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Deckers' pricing strategy and diminish the market share of Deckers' products, causing competitive harm. |
| | | **Although both Deckers  (ECF No. 137-2, 147-9) and Quince (ECF No. 146-5) submitted these exhibits in connection with its filing, the parties have resubmitted copies redacting only the above confidential information that the parties have designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the** |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | |
|---|---|---|
| | | above-mentioned portions. |
| 37. | Rebuttal Expert Reports of Jesse Catlin [137-3, 137-4, 147-26, 147-27; **Resubmitted: 230-4; 230-2**] | The Rebuttal Expert Reports of Jesse Catlin to Caroline de Baere and Erich Joachimstaler contains highly confidential information related to Deckers' brand strategy including advertising, marketing, and design process.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of these sensitive financial information would enable competitors to learn about Deckers' brand strategy, advertising and marketing strategy, and design process would diminish the market share of Deckers' products, causing competitive harm.<br><br>**Although Deckers submitted these exhibits in connection with its filing, the parties have resubmitted copies redacting only the above confidential information that both parties have designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| 38. | Rebuttal Expert Reports of Dennis Comeau [137-5, 147-7; **Resubmitted: 230-6**] | The Rebuttal Expert Report of Dennis Comeau contains highly confidential information related to Deckers' brand strategy including advertising, marketing, and design process.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of these sensitive financial information would enable competitors to learn about Deckers' brand strategy, advertising and marketing strategy, and design process would diminish the market share of Deckers' products, causing competitive harm.<br><br>**Although Deckers submitted these exhibits in connection with its filing, the parties have resubmitted copies redacting only the above confidential information that both parties have designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on** |

| | | |
|---|---|---|
| | | **the public docket if the Court grants sealing to the above-mentioned portions.** |
| 39. | Rebuttal Expert Report of Caroline de Baere [147-11, 147-20, 166-4; **Resubmitted: 231**] | The Rebuttal Expert Report of Caroline de Baere contains highly confidential information related to Deckers' brand strategy including advertising, marketing, and design process.<br><br>ECF Nos. 147-11, 147-20, 166-4 are filings of the same report.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of these sensitive financial information would enable competitors to learn about Deckers' brand strategy, advertising and marketing strategy, and design process would diminish the market share of Deckers' products, causing competitive harm.<br><br>**Although Deckers submitted these exhibits in connection with its filing, the parties have resubmitted copies redacting only the above confidential information that both parties have designated highly confidential-AEO under the protective order to replace the placeholder for the fully sealed exhibits on the public docket if the Court grants sealing to the above-mentioned portions.** |
| 40. | Unredacted Declaration of Lisa Bereda In Support of Plaintiff's Motion for Summary Judgment [135-3] | The redacted/highlighted portions of Ms. Bereda's declaration in support of Plaintiff's Motion for Summary Judgment contain the same information listed in items 28-39, including information related to sales revenue and advertising expenditure, brand strategy, and design process.<br><br>For the same reasons stated in items 28-39, Deckers requests sealing the highlighted portions in this Motion. |
| 41. | Unredacted Plaintiff's Opposition to Defendant's Motion for Summary Judgment [165-3, 166-3] | The redacted/highlighted portions of Plaintiff's Opposition to Defendants' Motion For Summary Judgment contain the same information listed in items 28-39.<br><br>For the same reasons stated in items 28-39, Deckers requests sealing the highlighted portions in this Opposition. |

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

| | | |
|---|---|---|
| 42. | Defendant's Opposition To Plaintiff's Motion For Summary Judgment Of The Complaint And Defendant's Affirmative Defenses [162-2] | The redacted/highlighted portions of Defendant's Opposition to Plaintiff's Motion For Summary Judgment contain the same information listed in items 28-39.<br><br>For the same reasons stated in items 28-39, Deckers requests sealing the highlighted portions in this Opposition. |
| 43. | Unredacted version of Defendant's MIL No. 2 (Fn. 11 and 15 only) [147-16] | The redacted/highlighted portions in footnotes 11 and 15 of Defendant's MIL No. 2 contain the same information listed in items 28-39.<br><br>For the same reasons stated in items 28-39, Deckers requests sealing the highlighted portions in this Motion. Plaintiff only requests that footnotes 11 and 15 remain sealed and does not oppose the public filing of the remainder of the document. |
| 44. | Unredacted version of Defendant's MIL No. 3 [147-22] | The redacted/highlighted portions of Defendant's MIL No. 3 contain the same information listed in items 28-39.<br><br>For the same reasons stated in items 28-39, Deckers requests sealing the highlighted portions in this Motion. |
| 45. | Excerpts from the Rule 30(b)(6) deposition transcript of Lisa Bereda [147-21] | The excerpts of the deposition transcript contains detailed description of Deckers' marketing, advertising and brand strategy (including advertising partners and vendors, and advertising costs), sales revenue, profit margins, pricing information, and design process which has been designated by Deckers as highly confidential, Attorneys' Eyes Only pursuant to the Court's protective order.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Deckers' entire business model, marketing and brand strategy, and its internal operating procedure, causing significant competitive harm and diminishing the market share of Deckers' products. |
| 46. | Excerpts of the Deposition Transcript of Dr. Erich Joachimsthaler [147-6, 147-15, 166-5] | The excerpts of the deposition transcript contains detailed description of Deckers' marketing, advertising and brand strategy (including advertising partners and vendors, and advertising costs), sales revenue, profit margins, pricing information, and design process which has been designated by Deckers as highly confidential, Attorneys' Eyes Only pursuant to the Court's protective order.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above |

| | | |
|---|---|---|
| | | information, none of which is publicly available. The release of this information would enable competitors to learn about Deckers' entire business model, marketing and brand strategy, and its internal operating procedure, causing significant competitive harm and diminishing the market share of Deckers' products. |
| 47. | Excerpts of deposition of David S. Hanson [147-4] | The excerpts of the deposition transcript contains detailed description and information on pricing information, business revenue, sales revenue for the products at issue, and profit margins. For the reasons set forth above in item 28, Deckers requests that the parts of the report discussing the foregoing be sealed.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Deckers' entire business model, marketing and brand strategy, and its internal operating procedure, causing significant competitive harm and diminishing the market share of Deckers' products. |
| 48. | Excerpts from the rough transcript of the deposition of Caroline de Baere [147-18] | The excerpts of the deposition transcript contains highly confidential information related to Deckers' brand strategy including advertising, marketing, and design process.<br><br>Deckers has expended substantial time, money, manpower and other resources to develop the above information, none of which is publicly available. The release of this information would enable competitors to learn about Deckers' entire business model, marketing and brand strategy, and its internal operating procedure, causing significant competitive harm and diminishing the market share of Deckers' products. |

**Materials Quince Bears The Burden To Seal:** Quince employs careful measures to ensure this information remain protected and out of the public eye, in order to prevent competitors from gaining insight into or the benefit of Quince's confidential information. *See* Lippert Decl, ¶¶ 4-6. Compelling reasons exist for granting the Motion because public dissemination of such proprietary information could materially affect Quince's ability to increase its competitive advantages and differentiate itself from competitors. *See id.* The proposed redactions are narrowly tailored to seal only the information that would cause competitive harm to Quince should it be disclosed. *See, e.g., Sazerac Co. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1038 n.4 (N.D. Cal. 2017) (granting administrative

motion to seal documents which contained "highly sensitive information about [party]'s marketing strategy, target consumers, … the manner in which [party] fields and reviews consumer inquiries"); *In re Qualcomm Litig.,* No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (observing that sealing is warranted to prevent competitors from "gaining insight into the parties' business model and strategy"); *ImprimisRx, LLC v. OSRX, Inc.,* No. 21-CV-01305-BAS-DDL, 2024 WL 1269474, at *5 (S.D. Cal. Mar. 25, 2024) (finding compelling reason to allow sealing because disclosure would "give insight into how [Defendant] compete[s] and how they manage their logistics and ordering process" and have some "sensitivity to Defendants' business model").

**Materials Deckers Bears The Burden To Seal:** Likewise, the aforementioned documents are not generally disseminated within Deckers and only employees who require access to this information to perform their duties are given access to same. Bereda Dec., ¶ 8. Furthermore, those at Deckers who have access to this information are under a strict contractual and ethical obligation to maintain their confidentiality. Bereda Dec., ¶ 8. The above-referenced documents contain sensitive product-specific financial information, and if this information were made publicly available, competitors of Deckers may use it to copy Deckers' business practices rather than spending the time and resources to develop their own. *See Algarin v. Maybelline, LLC*, 2014 U.S. Dist. LEXIS 23882, *10 (S.D. Cal. Feb. 21, 2014) (where the plaintiff wanted to file under seal documents including sales and advertising data and the court determined that revealing such information to the public "could result in improper use by business competitors seeking to replicate [the plaintiff's] business practices and circumvent the time and resources necessary in developing their own practices and strategies."). Such a situation would harm Deckers' competitive standing, and therefore, this information should be sealed. *Apple v. Samsung*, 727 F.3d at 1226, 1228 (where Federal Circuit concluded that under Ninth Circuit law, detailed product-specific financial information are appropriately sealable under the "compelling reasons" standard where such information could be used to the company's competitive disadvantage); *Arnaudov v. Cal. Delta Mech., In*c., 2015 U.S. Dist. LEXIS 45495, *6 (N.D. Cal. Apr. 7, 2015) ("'[S]ources of business information that might harm a litigant's competitive standing' may also give rise to a compelling reason to seal.") (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)); *see also Delfino Green & Green v. Workers Comp. Solutions, LLC*, 2015 U.S. Dist. LEXIS 90774, *4 (N.D. Cal. July 13, 2015) (where court applied the

"compelling reasons" standard to a request to seal portions of a complaint and an answer, and determined references to a confidential settlement agreement, a confidential financial agreement, and confidential financial information were all "sealable information") (citing *Transperfect Global, Inc. v. MotionPoint Corp.*, No. 10-cv-02590-CW, 2014 U.S. Dist. LEXIS 135891 (N.D. Cal. Sept. 25, 2014) (granting motion to seal documents containing confidential financial information); *Sazerac Co. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1038 n.4 (N.D. Cal. 2017) (granting administrative motion to seal documents which contained "highly sensitive information about [party]'s marketing strategy, target consumers, … the manner in which [party] fields and reviews consumer inquiries"); *In re Qualcomm Litig.*, No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (observing that sealing is warranted to prevent competitors from "gaining insight into the parties' business model and strategy"); *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-CV-01305-BAS-DDL, 2024 WL 1269474, at *5 (S.D. Cal. Mar. 25, 2024) (finding compelling reason to allow sealing because disclosure would "give insight into how [Defendant] compete[s] and how they manage their logistics and ordering process" and have some "sensitivity to Defendants' business model").

DATED: January 23, 2026                    */s/ Brent H. Blakely*

Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jamie Fountain (SBN 316567)
jfountain@blakelylawgroup.com
BLAKELY LAW GROUP
1108 Manhattan Avenue, Suite B
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

Attorneys for Plaintiff
Deckers Outdoor Corporation

*/s/ Xinlin Li Morrow*

Xinlin Li Morrow (SBN 281707)
Ryan McMenamin (*pro hac vice*)
Lawrence Yichu Yuan (*pro hac vice*)

**Morrow Ni LLP**
xinlin@moni.law
ryan@moni.law
lawrence@moni.law
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

**PARTIES' JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL**