Xinlin Li Morrow (SBN 281707)
Ryan McMenamin (*pro hac vice*)
Lawrence Yichu Yuan (*pro hac vice*)
**Morrow Ni LLP**
xinlin@moni.law
ryan@moni.law
lawrence@moni.law
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Defendant Last Brand, Inc. d/b/a Quince*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>LAST BRAND, INC. d/b/a QUINCE,<br><br>*Defendant.* | Case No. 4:23-cv-04850-AMO-LJC<br><br>Hon. Araceli Martínez-Olguín<br><br>**DEFENDANT QUINCE'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS**<br><br>Date:     October 1, 2026<br>Time:     2:00 p.m.<br>Courtroom:  Courtroom 5, 2nd Floor (Oakland Courthouse) |

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 1

    A. THE COURT NEED NOT DEFER THE FEE MOTION. ................................................ 1

    B. DECKERS' LITIGATING POSITIONS WERE OBJECTIVELY WEAK. ......................... 2

        1. Secondary Meaning Does Not Save Deckers' Generic Trade Dresses. ................. 3

        2. Deckers' Patent Position Is Weak. ............................................................ 4

    C. DECKERS LITIGATED IN AN UNREASONABLE MANNER. .................................... 5

        1. Deckers Did Not Dismiss the Bailey Button Claim "at an Appropriate Time." ...... 6

        2. Deckers Relitigated Decided Issues, and Does So Again in Its Opposition. ........... 6

        3. Deckers' Local Rule Violations Were Repeated and Were Cured Only at Quince's Expense ................................................................................................. 7

        4. Deckers Abandoned Its Meet-And-Confer Representations on the Eve of Trial in Bad Faith ............................................................................................... 9

        5. Deckers' Broader Litigation Pattern Confirms Exceptionality .............................. 9

    D. DECKERS' OBJECTIONS TO THE AMOUNT ARE MERITLESS ............................. 11

        1. The Local Rules Do Not Require Contemporaneous Timesheets ........................ 11

        2. No Apportionment Is Required. ............................................................... 12

        3. Quince's Rates and Hours Are Reasonable .............................................. 13

        4. There Is No Duplication Between Taxable and Non-Taxable Costs .................... 15

        5. Expert Fees Are Recoverable Under § 1117(a) and Court's Inherent Authority .. 15

III. CONCLUSION ................................................................................................ 16

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

# TABLE OF AUTHORITIES

**Cases**

*10Tales, Inc. v. TikTok Inc.,*
No. 21-cv-03868-VKD, 2024 WL 4775745 (N.D. Cal. Nov. 12, 2024)...........................11

*Acosta v. Sw. Fuel Mgmt., Inc.,*
No. 16CV4547FMOAGRX, 2017 WL 8941166 (C.D. Cal. May 31, 2017) ......................9

*Applied Underwriters, Inc. v. Lichtenegger,*
2020 WL 5107627 (E.D. Cal. Aug. 31, 2020) ...................................................................10

*BillFloat Inc. v. Collins Cash Inc.,*
105 F.4th 1269 (9th Cir. 2024)......................................................................................2, 3

*BoxNic Anstalt v. Gallerie degli Uffizi,*
2020 WL 2991561 (D. Ariz. June 4, 2020).......................................................................15

*Caiz v. Roberts,*
2017 WL 830386 (C.D. Cal. Mar. 1, 2017) ......................................................................10

*Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.,*
293 F. Supp. 3d 1038 (N.D. Cal. 2018), *aff'd*, 756 F. App'x 997 (Fed. Cir. 2019)..........12

*Cisco Sys., Inc. v. Dynamic Mesh Networks, Inc.,*
No. 25-CV-06441-NW, 2026 WL 891837 (N.D. Cal. Apr. 1, 2026) .........................11, 13

*Covarrubias v. Ford Motor Co.,*
No. 19-CV-01832-EMC, 2021 WL 3514095 (N.D. Cal. Aug. 10, 2021)..........................14

*Deckers Outdoor Corp. v. Primark US Corp.,*
2025 WL 1424586 (D. Mass. May 16, 2025) .................................................................3, 7

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.,*
No. 2:25-cv-04220-RGK-SK (C.D. Cal.).......................................................................5, 7

*Dropbox, Inc. v. Thru Inc.,*
No. 15-cv-01741-EMC, 2017 WL 914273 (N.D. Cal. Mar. 8, 2017), *aff'd*, 728 F. App'x 717 (9th Cir. 2018) ...........................................................................................................15

*eDekka LLC v. 3balls.com, Inc.,*
No. 2:15-CV-541 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015).............................9

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.,*
946 F.3d 1367 (Fed. Cir. 2020) .........................................................................................5

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

*Energy Heating, LLC v. Heat On-The-Fly, LLC,*
	15 F.4th 1378 (Fed. Cir. 2021) ....................................................................................... 6

*Facebook, Inc. v. Holper,*
	No. 20-CV-06023-JCS, 2022 WL 17167958 (N.D. Cal. Sept. 27, 2022) ........................ 13

*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.,*
	198 F.3d 1143 (9th Cir. 1999) ....................................................................................... 3

*G.P.P., Inc. v. Guardian Prot. Prods., Inc.,*
	2018 WL 932087 (E.D. Cal. Feb. 16, 2018) ................................................................... 2

*Gracie v. Gracie,*
	217 F.3d 1060 (9th Cir. 2000) ....................................................................................... 12

*Gypsum Res., LLC v. Clark Cnty.,*
	2023 WL 7355662 (D. Nev. Oct. 3, 2023) ...................................................................... 2

*Hawk Tech. Sys., LLC v. Castle Retail, LLC,*
	No. 2024-1116, 2025 WL 3182552 (Fed. Cir. Nov. 14, 2025) ........................................ 4

*Hensley v. Eckerhart,*
	461 U.S. 424 (1983) ................................................................................ 11, 12, 13, 14

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,*
	572 U.S. 559 (2014) ..................................................................................................... 2

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC,*
	576 F. App'x 1002 (Fed. Cir. 2014) ............................................................................... 4

*ICU Med., Inc. v. Alaris Med. Sys., Inc.,*
	558 F.3d 1368 (Fed. Cir. 2009) ..................................................................................... 5

*In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.,*
	2009 WL 3834034 (D. Or. Nov. 13, 2009) ..................................................................... 2

*In re Nat'l Sec. Agency Telecomms. Recs. Litig.,*
	No. C 07-0109 VRW, 2010 WL 11475732 (N.D. Cal. Dec. 21, 2010) ................ 11, 14, 15

*Indonesian Imports, Inc. v. Old Navy, Inc.,*
	No. C98-2401 FMS, 1999 WL 179680 (N.D. Cal. Mar. 30, 1999) .............................. 3, 7

*Kilopass Tech., Inc. v. Sidense Corp.,*
	82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...................................................................... 12, 14

*Last Brand, Inc. v. Deckers Outdoor Corp.,*
	No. 3:26-cv-01540-SVK (N.D. Cal.) .............................................................................. 10

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

*Lewis v. Activision Blizzard, Inc.,*
    No. C 12-1096 CW, 2014 WL 4953770 (N.D. Cal. Sept. 25, 2014) ................................. 9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
    134 S. Ct. 1749 (2014) ........................................................................... 1, 4, 5, 9

*P&P Imports LLC v. Johnson Enters., LLC,*
    46 F.4th 953 (9th Cir. 2022) ........................................................................... 3

*P2i Ltd. v. Favored Tech USA Corp.,*
    No. 23-cv-01690-AMO, 2025 WL 3539260 (N.D. Cal. Dec. 10, 2025) ........................... 2

*Paul v. PG&E Corp.,*
    No. C 09-4751 RS (JSC), 2011 WL 13376925 (N.D. Cal. July 20, 2011) ........................ 9

*People.ai, Inc. v. SetSail Techs., Inc.,*
    2022 WL 1556416 (N.D. Cal. May 17, 2022) ...................................................... 11

*PersonalWeb Techs. LLC v. EMC Corp.,*
    No. 5:13-CV-01358-EJD, 2020 WL 3639676 ...................................................... 11

*SFA Sys., LLC v. Newegg Inc.,*
    793 F.3d 1344 (Fed. Cir. 2015) .................................................................... 10

*SRI Int'l, Inc. v. Cisco Sys., Inc.,*
    14 F.4th 1323 (Fed. Cir. 2021) .................................................................... 6, 7

*SynQor, Inc. v. Vicor Corp.,*
    2026 WL 410931 (Fed. Cir. Feb. 13, 2026) ......................................................... 5

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,*
    549 F.3d 1381 (Fed. Cir. 2008) .................................................................... 15

*Taurus IP, LLC v. DaimlerChrysler Corp.,*
    726 F.3d 1306 (Fed. Cir. 2013) ..................................................................... 5

**Statutes**

15 U.S.C. § 1117(a)............................................................................. 10, 12, 13, 15

35 U.S.C. § 285 ...........................................................................................*passim*

35 U.S.C. § 311(b)............................................................................................... 4

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

**Rules**

Civil L.R. 3-12........................................................................................................................9

Civil L.R. 54-5(a) ....................................................................................................................1

Civil L.R. 54-5(b)(2) .............................................................................................................11

Civil L.R. 79-5.......................................................................................................................14

Fed. R. Civ. P. 16 ....................................................................................................................8

Fed. R. Civ. P. 41 ..................................................................................................................13

Fed. R. Civ. P. 54(d)(2)(B)(i) .............................................................................................1, 2

Fed. R. Evid. 103(b) ................................................................................................................6

Fed. R. Evid. 402 ....................................................................................................................9

Fed. R. Evid. 403 ....................................................................................................................9

**Other Authorities**

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:1.......................3

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

## I.    INTRODUCTION

Deckers does not dispute that it lost every claim it brought. It asks the Court to defer the fee motion and, failing that, to deny it. Neither request has merit.

First, the motion is timely and should not be stayed. The rules gave Quince 14 days from judgment; Quince filed on the fourteenth day. Deckers never sought a stipulation to extend that deadline and never moved for a stay. It shows no likelihood of success on appeal, no injury from paying now, and no efficiency in waiting.

Second, Deckers agrees that the question is whether "the case as a whole stands out." Opp. at 13. It does. Under *Octane*'s totality inquiry, no single factor need carry that conclusion alone: Deckers lost two unregistered trade dresses at the threshold after failing to prove non-genericness—a burden Deckers never disputes it bore; it pushed a third trade dress claim it valued below the cost of trying it to the eve of trial; its patent was invalidated after merely two hours' jury deliberations; and it litigated in a manner this Court has already admonished on the record and continues to press unreasonable and tenuous arguments (even in its opposition).

Lastly, Deckers' objections to the requested amount fail. The Local Rules require a statement of services and a summary of time by timekeeper—not contemporaneous timesheets. No apportionment is required: Quince prevailed on every claim, and the claims shared an accused product, the same fact witnesses, and largely the same experts. The rates are supported by survey evidence and by comparable rates awarded in other cases. Nothing is claimed twice. And Quince's expert fees are recoverable under the Lanham Act and this Court's inherent authority.

Quince respectfully requests that the Court find this case exceptional and grant this motion.

## II.    ARGUMENT

### A.    The Court Need Not Defer the Fee Motion.

Deckers calls the motion "premature." Opp. at 7-8. Rule 54(d)(2)(B)(i) requires filing of a fee motion within 14 days of entry of judgment, and Civil L.R. 54-5(a) is the same, adding that "[f]iling an appeal from the judgment does not extend the time for filing a motion." Quince filed within that time. Deckers filed no stipulation to enlarge or motion to stay.

Deckers' authorities concern deferral pending appeal, and each rested on circumstances

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

absent here. *Gypsum* deferred because the finality of the judgment was itself uncertain: the court stated that it "would welcome the opportunity to revisit its Order granting summary judgment" on a motion for reconsideration. *Gypsum Res., LLC v. Clark Cnty.*, 2023 WL 7355662, at *1 & n.1 (D. Nev. Oct. 3, 2023). *G.P.P.* deferred where more than twenty claims and counterclaims had produced a judgment entered partly in favor of each side, so the appeal could reshape who had prevailed. *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 2018 WL 932087, at *2 (E.D. Cal. Feb. 16, 2018). And *In re Farmers* deferred because the Ninth Circuit's decision in the first round of appeals reversing and remanding the lower court decision "carr[ied] a significant potential that the Ninth Circuit's disposition may greatly affect [the] consideration of plaintiffs motions for attorney fees and costs." *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 2009 WL 3834034, at *3 (D. Or. Nov. 13, 2009).

This Court has already declined to defer on stronger facts. In *P2i Ltd. v. Favored Tech USA Corp.*, No. 23-cv-01690-AMO, 2025 WL 3539260 (N.D. Cal. Dec. 10, 2025), an appeal was pending in the Federal Circuit, and this Court, acknowledging the same Rule 54(d) advisory note Deckers invokes, held that "the usual course is for the Court to consider attorneys' fees promptly after the merits decision" because "judicial economy is better served by determining attorneys' fees promptly while the details of the proceedings are still fresh." *Id.* at *1–2 (citations omitted). Deckers satisfies no *Hilton* factor for deferral. It never asserts a likelihood of success, claiming only that this Court's ruling is "neither settled law nor is it uncontroversial," Opp. at 3; it identifies no irreparable harm; no other party is affected; and its lone public-interest argument, "judicial efficiency," Opp. at 8, is precisely what *P2i* held favors deciding now. *Highmark* agrees, resting on the district court's advantage in assessing exceptionality because it "lives with the case over a prolonged period of time," *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014), which counsels deciding while that familiarity is fresh.

### B.    Deckers' Litigating Positions Were Objectively Weak.

Deckers argues that merely prevailing is not enough. Opp. at 8 (citing *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269 (9th Cir. 2024)). While that is true, *BillFloat* held only that a district court did not abuse its discretion in *declining* to find exceptionality, and that determination

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

is reviewed deferentially in both directions. 105 F.4th at 1278. Nothing in *BillFloat* caps this Court's discretion. The trademark claim there was "hardly 'meritless.'" Here every claim Deckers brought failed. Two trade dresses were struck at the protectability stage, without this Court or jury reaching functionality, secondary meaning, or likelihood of confusion (ECF 203 at 6–8); [1] the third was dismissed with prejudice; and the patent was invalidated. The conduct *BillFloat* found insufficient included an unindexed production and "copious objections" at a deposition, without any violation of a court order or any judicial admonition. *Id.* Here the record contains both.

### 1.    *Secondary Meaning Does Not Save Deckers' Generic Trade Dresses.*

Deckers claims that "[a] design that has acquired secondary meaning cannot be generic." (Opp. at 13). On the contrary, a generic designation "cannot be the subject of trademark protection under any circumstances, even with a showing of secondary meaning." *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999); *Indonesian Imports, Inc. v. Old Navy, Inc.*, No. C98-2401 FMS, 1999 WL 179680, at *3 (N.D. Cal. Mar. 30, 1999) ("If Indonesian's claimed dress is generic—no amount of secondary meaning evidence can save it."); *accord* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:1 ("[A] generic term cannot become a trademark merely by the acquisition of secondary meaning."). Even the case Deckers cites stands for no such proposition. *See P&P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) (addressing secondary meaning, not genericness; the genericness defense was not raised or decided). Likewise, the *Primark* defendant there never raised the genericness defense on summary judgment, so the *Primark* court had no occasion to rule on it. *Deckers Outdoor Corp. v. Primark US Corp.*, 2025 WL 1424586, at *11–15 (D. Mass. May 16, 2025). Yet, Deckers tells this Court that *Primark* denied summary judgment "on identical grounds" or "identical evidence." Opp. at 9, 13. Indeed, Deckers' willingness to mischaracterize *Primark* and controlling Ninth Circuit law—forcing Quince to spend yet more attorney time to correct the record—reinforces the unreasonable litigation conduct that supports exceptionality.

Likewise, Deckers' answer to the USPTO's two refusals to register its sheepskin boot

---

[1] All citation to ECF refer to PDF page number, not local page number.

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

design is that those applications involved "different Deckers' products." Opp. at 11. This is unavailing because both USPTO-rejected designs concerned the tall version of the Classic Ultra Mini with the same list of "nondistinctive product design or nondistinctive features of a product design" which "are pervasive in the boot industry." ECF 182 (Reply ISO Quince's Motion for Partial Summary Judgment), at 17-19 (citing ECF 161-2; ECF 161-3 (USPTO refusals)). In fact, the USPTO also used website screenshots of similar boots to deny Deckers' applications. *Id*. Deckers abandoned both applications—an election that speaks directly to what Deckers understood about the protectability of these designs. ECF 161 at 8.

### 2. *Deckers' Patent Position Is Weak.*

Deckers is wrong on the standard. The standard is not whether its claims were "objectively baseless or frivolous" (Opp. at 8, 10) because "[t]he Supreme Court abrogated both the clear and convincing evidence standard and the two-part test for objective baselessness and subjective bad faith of *Brooks Furniture*." *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1004 (Fed. Cir. 2014) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,134 S. Ct. 1749, 1757–58 (2014)). Quince need not meet the high bar of baselessness or frivolousness— only whether Deckers' patent position, viewed on the full record and under the totality of the circumstances, was exceptionally weak. And none of Deckers' arguments changes that conclusion.

First, the statutory presumption of patent validity does not automatically defeat a section 285 motion. If that were the case, no prevailing accused infringer could ever recover § 285 fees and *Octane*'s totality-of-the-circumstances inquiry would be meaningless. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, No. 2024-1116, 2025 WL 3182552, at *3 (Fed. Cir. Nov. 14, 2025) (affirming fee award where "the '091 patent was 'demonstrably weak on its face, despite the initial presumptions created when the patent was issued by the PTO.'").

Second, the PTAB's denial of a third party's petition is not a merits determination sustaining the '161 Patent over the evidence presented here. Deckers itself explains that the PTAB rejected internet-sourced material about prior art products because they did not qualify as "printed publication," a specific requirement in an *inter partes* review ("IPR") but not in district court litigation. Opp. at 10; 35 U.S.C. § 311(b) ("only on the basis of prior art consisting of patents or

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

printed publications"). Whatever the PTAB's decision may show about that petitioner's proof, it did not adjudicate the validity of the '161 Patent over Quince's admitted prior art. *See* ECF 308 (granting Quince's MIL No. 1 excluding IPR from evidence).

Next, Deckers suggests that because "this Court denied Defendant's Motion for Summary Judgment challenging the validity of the '161 Patent," it is "the opposite of exceptional." Opp. at 10. But the Federal Circuit has rejected the very argument that "the district court's denial of summary judgment conclusively established the reasonableness of its litigation position." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1375 (Fed. Cir. 2020); *see also SynQor, Inc. v. Vicor Corp.*, 2026 WL 410931, at *9 (Fed. Cir. Feb. 13, 2026) ("The fact that the district court found that genuine factual disputes precluded summary judgment prior to trial does not mean … that Vicor's positions were not weak." (citing *Eko Brands*, 946 F.3d at 1375)).

So too here. This Court's summary-judgment ruling did not adjudicate the '161 Patent as valid or Deckers' litigation position as reasonable. At trial, the invalidity question was not close. The jury, on the full record, found the patent invalid after about two hours of deliberation. The patent, on its face, covers a basic, common, and generic ankle-high sheepskin boot design dictated by function, unclear in its drawings, and obvious over prior art. Indeed, Deckers itself stipulated to dismiss the same patent claim in *Romeo* on the eve of trial there—conduct that underscores Deckers' awareness of the patent's weakness. *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:25-cv-04220-RGK-SK (C.D. Cal.), ECF 417.

## C.    Deckers Litigated in an Unreasonable Manner.

As an initial matter, Deckers again invokes cases suggesting that Quince must show its arguments were "baseless, frivolous, or intended primarily to mislead," and that tactics merely "overzealous or overly creative" cannot support an award. Opp. at 16 (quoting *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327–28 (Fed. Cir. 2013), and *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1381 (Fed. Cir. 2009)). But those decisions all predate *Octane* and applied the *Brooks Furniture* framework that *Octane* abrogated. *Octane* controls here, and under its totality-of-the-circumstances test, the conduct Quince has documented readily supports exceptionality.

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

**1.    *Deckers Did Not Dismiss the Bailey Button Claim "at an Appropriate Time."***

Deckers defends its handling of the Bailey Button Boot Trade Dress claim on the ground that it dismissed "at an appropriate time" and violated no order. Opp. at 14. The record says otherwise. Mot. at 2-3. As this Court observed, Deckers "could have determined that the costs of trying its Bailey Button Boot trade dress claims outweighed the potential recovery" at least once the other trade dress claims were resolved, and that the resulting trade dress work was "not useful in continuing litigation between the parties." ECF 273 at 2–3. Deckers does not dispute that it internally valued the claim below the cost of trying it; what it disputes is the consequence. But carrying a low-value claim to the eve of trial for the evident purpose of imposing defense costs on Quince is a paradigmatic example of unreasonable litigation conduct. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1332 (Fed. Cir. 2021).

**2.    *Deckers Relitigated Decided Issues, and Does So Again in Its Opposition.***

Deckers' opposition itself exemplifies the misconduct at issue. It argues that it did not relitigate the YouTube prior art references—by recycling the very objection this Court has already rejected: that "Defendant subpoenaed Google after fact discovery closed in violation of this Court's Scheduling Order" and made a "belated production of evidence." Opp. at 16. The Court rejected that argument three times. Mot. at 5. This opposition makes a fourth. Deckers' alternative framing—that it was merely "preserv[ing] objections to an opponent's violation of a Scheduling Order" and that "this court deferred its hearsay rulings to trial" (Opp. at 15)—fails on both the rule and the record. On the rule: "[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b). Deckers objected; the Court ruled. Nothing required Deckers to object again, let alone three more times. On the record: had Deckers been merely preserving objections, this Court would not have directed it to "do better" and to "stop attempting to relitigate the Court's rulings." ECF 324 at 3; *cf.* Mot. at 17 (collecting cases on relitigation); *see also Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1384 (Fed. Cir. 2021) (party was "unreasonable" in "persisting in its positions"). And Deckers concedes the second instance: it says it challenged Quince's costs-and-deductions evidence "through three ordinary procedural vehicles

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

at three different stages." Opp. at 16. Three challenges to the same evidence at three stages—each time rejected for the same reason—is relitigation by definition.

Deckers relitigated this Court's summary judgment ruling too. Its opposition claims the authority this Court relied on is "neither settled law nor is it uncontroversial" and faults this Court for being "the first court to depart from *Primark*"—a case that never touched on genericness. Opp. at 3-4. It claims both *Romeo* and this Court's genericness finding ignore "the proof the Ninth Circuit holds sufficient for finding of secondary meaning" (*id*.) when it is long-settled that "no amount of secondary meaning evidence can save [a generic trade dress]." *See*, *e.g.*, *Indonesian Imports, Inc.*, 1999 WL 179680, at *3.

### 3. *Deckers' Local Rule Violations Were Repeated and Were Cured Only at Quince's Expense.*

Deckers does not dispute that it violated local rules and this Court's orders. Instead, it asserts that these were "minor isolated issues" that "caused no prejudice." Opp. at 17. That characterization is belied by the record. Deckers cured each violation only after Quince objected or the Court struck the filing. *See* Mot. at 7-8; ECF 148, 150 (Deckers' withdrawal of Daubert motions exceeding page limits); ECF 73 (order striking Deckers' reply "filed in violation of the Court's Standing Order Section F(5)"). Deckers' untimely motion for leave to file a third amended complaint (ECF 64) drew a 13-page opposition (ECF 79) and a hearing (ECF 97) before Deckers withdrew it (ECF 99). The sequence repeated on Deckers' Motion in Limine No. 1 (ECF 268 at 7-8): Quince briefed a full opposition (ECF 268 at 16–19), and Deckers withdrew arguments one day before the pretrial conference in a filing that the Court deemed an improper reply (Mot. at 7-8). These are not "minor isolated issues"—they are a pattern. And the pattern imposed waste of judicial and party resources warranting fees. *SRI Int'l*, 14 F.4th at 1332 (where "Cisco's litigation strategies ... created a substantial amount of work for both SRI and the court, much of which work was needlessly repetitive or irrelevant or frivolous[,]" affirming § 285 fee award and the finding that "Cisco's entire case was weak, yet it pursued the case aggressively and in an unreasonable manner anyway.").

Deckers claims that Quince "violated the Scheduling Order on multiple occasions." Opp. at 17. That charge relitigates the authentication and admissibility rulings on Quince's Chinese patent

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

and YouTube video prior art, and this Court has already resolved it twice in Quince's favor. Quince produced the Chinese patent apostilles after the discovery cutoff because Deckers first objected to authentication in March 2026, three months before trial; this Court held the production "justified" because "[e]ven if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic." ECF 297 at 4. As to the Google materials, this Court held that "Quince's lack of diligence [in subpoenaing Google for authentication materials on the YouTube videos] is minimal" and that "preventing Quince from obtaining evidence merely to confirm an issue of date and authenticity that does not appear (from the limited record before the Court) to be reasonably subject to dispute would not serve the interests of justice." ECF 115 at 3. Deckers identifies no prejudice, because there was none: authenticity was never genuinely in dispute; it is but Deckers' "game of gotcha." ECF 115 at 2.

Deckers also faults Quince for "twice s[eeking] leave during trial to obtain evidence it had failed to secure during discovery." Opp. at 17. Both requests were necessary, and neither was improper. The *Romeo* subpoena was a trial subpoena seeking impeachment materials (i.e., deposition transcripts of Deckers' trial witnesses) that did not exist before discovery cutoff. Quince could not have sought them during discovery. And Quince moved to compel privileged communications at trial only because Deckers elicited testimony from its own Vice President and General Counsel touching those communications after withholding them throughout fact discovery. *See* Mot. at 9–10; ECF 366 (Trial Tr.) 303:19–304:24.

Additionally, the Court's denial of leave to reopen discovery under Rule 16 did not sanitize Deckers' conduct. Nor was Quince required to raise waiver as an objection during testimony. Waiver is not a ground for excluding testimony; it is the consequence of testifying about privileged communications. Here, Deckers withheld its prosecution-counsel communications throughout discovery, then at trial elicited testimony that such communications "during that process" were used to "finalize the drawings" and determine which ornamental features were claimed. Quince raised the resulting waiver the next day. Quince does not now seek to reopen discovery or relitigate the Court's procedural ruling; it asks the Court to consider, under the

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

totality of the circumstances, the gamesmanship that necessitated the motion and deprived Quince of material discovery in the first place.

### 4. *Deckers Abandoned Its Meet-And-Confer Representations on the Eve of Trial in Bad Faith.*

Deckers characterizes its misconduct as "press[ing] its objections" after "the parties negotiated the subpoena's scope and exchanged materials." Opp. at 18. But reversing representations made during meet-and-confer violates the local rules. *See*, *e.g.*, *Paul v. PG&E Corp.*, No. C 09-4751 RS (JSC), 2011 WL 13376925, at *2 (N.D. Cal. July 20, 2011) ("[T]he parties met and conferred over a several month period during which time Defendant consistently maintained that it would produce the mirror image of the hard drive. … If the meet and confer process is to have any meaning, then parties must adhere to representations made during the process and agreements reached as a result of the process."). Indeed, Deckers' eve-of-the-trial reversal of its previous representations and partial production that Quince had relied on for three weeks "raises serious questions about Defendants' good faith participation in the [meet and confer] process." *Acosta v. Sw. Fuel Mgmt., Inc.*, No. 16CV4547FMOAGRX, 2017 WL 8941166, at *6 (C.D. Cal. May 31, 2017). There is no place for bad faith in ordinary advocacy.

### 5. *Deckers' Broader Litigation Pattern Confirms Exceptionality.*

Deckers first contends that its broader litigation pattern is irrelevant because this Court has declined to entertain Quince's antitrust theory "three times." Opp. at 2, 19-20. The premise conflates three questions decided under three different standards: relatedness under Civil Local Rule 3-12, admissibility before a jury under Rules 402 and 403, and exceptionality under *Octane*. *Octane* directs the Court to weigh "the totality of the circumstances," expressly including a litigant's "motivation." *Octane Fitness,* 134 S. Ct. at 1756 & n.6. That evidence of Deckers' other suits would not go to a jury on factual questions relating to infringement and invalidity says nothing about whether this Court may weigh it now on a question reserved for the Court. And federal courts routinely infer bad faith from a party's history of filing meritless lawsuits. *See* Mot. at 19–20 (citing *eDekka LLC v. 3balls.com, Inc.,* 2015 WL 9225038, at *4 (E.D. Tex. Dec. 17, 2015); *Lewis v. Activision Blizzard, Inc.*, 2014 WL 4953770, at *3 (N.D. Cal. Sept. 25, 2014));

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("[a] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285.").

Deckers next relies on this Court's September 2024 discovery ruling that the "business model" theory was "highly speculative." ECF 84 at 4. But the order was issued in the first year of this case—before this Court's October 2, 2025 order holding the Tasman and Classic Ultra Mini trade dresses generic, and before Deckers responded to that order by continuing to maintain at least forty suits asserting the unprotectable trade dress. ECF 269-2 ¶ 73. What was speculative in September 2024 has become well-documented. *See* ECF 269-2 (Antitrust Complaint in *Last Brand, Inc. v. Deckers Outdoor Corp.*, No. 3:26-cv-01540-SVK (N.D. Cal.)). Indeed, Deckers' own in-house counsel testified in a prior litigation that trade dress was chosen over design patents because it "offered a broader scope of protection" and could "capture more" competing products—an admission that the trade dress claims were selected as a strategic litigation tool rather than to vindicate source-identifying rights. ECF 269 at 9 (citing Bereda Declaration ¶ 11).

Finally, Deckers' cases are not availing. Deckers first argues that "enforcing a duly issued patent and asserted trade dress by petitioning the courts is activity protected by the First Amendment and the *Noerr-Pennington* doctrine," but it cites no case in which a court declined an exceptional-case fee award on this basis. Opp. at 20. *Noerr-Pennington* shields litigants from antitrust liability for petitioning activity, not from fee-shifting under §§ 285 and 1117(a) for meritless claims. Deckers' remaining authorities are inapposite. *See Applied Underwriters, Inc. v. Lichtenegger*, 2020 WL 5107627, at *4 (E.D. Cal. Aug. 31, 2020) (denying fees where the plaintiff sued on a registered mark and "did nothing to increase Defendants' costs and attorneys fees" after the motion to dismiss); *Caiz v. Roberts*, 2017 WL 830386, at *4 (C.D. Cal. Mar. 1, 2017) (holding that claims on a "validly registered trademark[]" were not "completely baseless"). Deckers owns no registration here. It also did not stop early in the litigation. Nor does Quince ask the Court to try its antitrust case: the forty post-ruling filings are docket facts, and the genericness holding they defy is this Court's own ruling. ECF 203; ECF 269-2 ¶ 73.

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

Deckers' remaining cases do not help it. *PersonalWeb Techs. LLC v. EMC Corp.* involved a validity question that was a "close call," but the validity question here was not. 2020 WL 3639676, at *3 (N.D. Cal. July 6, 2020). Deckers concedes that the patentee in *People.ai* "did not violate any prior order," Opp. at 14, whereas Deckers violated several. *People.ai, Inc. v. SetSail Technologies, Inc.*, 2022 WL 1556416 at *4 (N.D. Cal. May 17, 2022). *Cisco* denied fees only because a dismissal without prejudice conferred no prevailing-party status, while confirming that a dismissal with prejudice does. *Cisco Sys., Inc. v. Dynamic Mesh Networks, Inc.*, 2026 WL 891837, at *2 (N.D. Cal. Apr. 1, 2026). And *10Tales* is not close: fees were denied because the case "was resolved before the parties conducted merits discovery, filed any other dispositive motions, or otherwise engaged in substantial activities required to prepare the action for trial," the only misconduct alleged was a shift in claim-construction positions. *10Tales, Inc. v. TikTok Inc.*, 2024 WL 4775745, at *2–3 (N.D. Cal. Nov. 12, 2024). Deckers took this case through full fact and expert discovery, summary judgment, and a four-day jury trial.

### D. Deckers' Objections to the Amount Are Meritless

#### 1. *The Local Rules Do Not Require Contemporaneous Timesheets.*

Deckers claims Quince "has not submitted the detailed, contemporaneous time records that Civil Local Rule 54-5(b) contemplates," offering "only a 'Combined Summary of Fees by Task.'" Opp. at 21. The Rule requires no such records. It requires "[a] statement of the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained." Civil L.R. 54-5(b)(2). Quince submitted exactly that. ECF 383-1 (Morrow Decl.) ¶¶ 12–35. Where the Rule contemplates more, it says so and commits the decision to the Court: "[d]epending on the circumstances, the Court may require production of an abstract of or the contemporary time records for inspection." Civil L.R. 54-5(b)(2). Reading Deckers' position into the Rule would "effectivel[y] nullif[y] the rule by requiring a district court in every case to examine such detailed billing records." *In re Nat'l Sec. Agency Telecomms. Recs. Litig.*, 2010 WL 11475732, at *14 (N.D. Cal. Dec. 21, 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Nor is a summary "block billing." Quince has maintained contemporaneous records throughout, and using

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

them "to create the summaries required by the local rules does not amount to an objectionable form of 'block billing.'" *Id.* at *15. Counsel is "not required to record in great detail how each minute of his time was expended," and meets the burden by "identify[ing] the general subject matter of his time expenditures." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1169 (N.D. Cal. 2015) (quoting *Hensley*, 461 U.S. at 437); *see Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc.*, 293 F. Supp. 3d 1038, 1048 n.9 (N.D. Cal. 2018) (awarding fees where no timesheets were submitted), *aff'd*, 756 F. App'x 997 (Fed. Cir. 2019). Should the Court wish to review them, Quince stands ready to produce contemporaneous records for *in camera* inspection.

### 2.    *No Apportionment Is Required.*

Deckers argues that Quince must apportion its fees among the patent claim, the trade dress claims resolved on summary judgment, and the dismissed Bailey Button claim. Opp. at 22–23. The argument mistakes what apportionment is for. *Gracie* held that a prevailing party "can recover attorneys' fees only for work related to the Lanham Act claims," *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000), and required apportionment so that a movant would not recover under § 1117(a) for work the Lanham Act does not reach, or for Lanham Act claims it lost. *Id.* at 1069–70. Neither premise holds. Quince seeks fees under § 1117(a) and § 285, prevailed on all claims, and has shown this case exceptional under both. *Supra* §§ II.B–II.C. Section 1117(a) reaches the trade dress claims and § 285 the patent claim, so allocating hours between them fixes which statute authorizes which dollars, not whether they are recoverable. Deckers identifies no claim that neither statute reaches, and never says what an allocation would subtract.

In any event, Deckers' apportionment argument is incoherent. It first says Quince achieved "only partial success, having been found to infringe." Opp. at 22. But *Hensley* measures success by the relief obtained, 461 U.S. at 436, not an interim jury finding that resulted in no judgment against Quince. Quince obtained everything a defendant can: judgment in its favor on all claims. Deckers then argues the opposite, that because the trade dress claims were resolved before trial, "all the time attributable to the trade dress claims must be excluded." Opp. at 22. Neither statute conditions recovery on the stage at which a party prevails, and a defendant that defeats a claim on summary judgment prevails no less than one who defeats it at trial. Together, Deckers' two

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

positions would deny fees for a complete defense victory: nothing for what Quince won early, and less for what it won at trial. Nor does the Bailey Button dismissal escape, because a dismissal with prejudice carries "the necessary judicial imprimatur" to support a fee claim. *Cisco Sys.*, 2026 WL 891837, at *2 (citation omitted).

Should the Court reach the apportionment question, the claims are intertwined in any event. Other than the survey and marketing experts, the claims involved the same fact and expert witnesses. The prior art and similar-product evidence, the market evidence, and the damages proof served both sets of claims. Litigation resting on "a common core of facts" "cannot be viewed as a series of discrete claims," *Hensley*, 461 U.S. at 435.

Deckers quotes this Court's order dismissing the Bailey Button claim for the observation that trade dress work comprises no "elements of or defenses to the patent infringement claim" and is "not useful in continuing litigation between the parties." ECF 273 at 2; Opp. at 23. That order determined that under Rule 41, Deckers' delay in dismissing that claim forced Quince to prepare for trial a claim Deckers deemed not valuable enough to bring to trial. The order did not address whether a post-judgment award under § 1117(a) and § 285 is justified in the totality of the circumstances for the entire case and whether apportionment is required.

### 3. Quince's Rates and Hours Are Reasonable.

Deckers' conclusory allegation that the fees charged by Munger Tolles are excessive disregards (i) case law supporting that firm's fee requests based on its exceptional service (Mot. at 21 n.4), (ii) the survey showing the 90th percentile mean billing rate in the San Francisco Consolidated Metropolitan Statistical Area (CMSA) was $1,200 (ECF 383-1 (Morrow Decl.) at ¶35), and (iii) legal fees endorsed by courts in this district for firms of similar caliber. *See*, *e.g.*, *Facebook, Inc. v. Holper*, No. 20-CV-06023-JCS, 2022 WL 17167958, at *15 (N.D. Cal. Sept. 27, 2022) ($1,165 per hour for a managing partner and $725 for a senior associate at Hunton Andrews Kurth LLP are "within the reasonable range of the local market").

Deckers also argues that Quince cannot "seek[] fees for motion practice that it <u>lost</u> and, in many instances, where Defendant should have been sanctioned." Opp. at 23. But Deckers' own case holds that "the fee award should not be reduced simply because the plaintiff failed to prevail

on every contention raised in the lawsuit … Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 433– 34, 437 (citation omitted). Indeed, "[t]he Federal Circuit has [only] identified certain circumstances in which *full* fees may not be warranted: (1) when litigation misconduct is the sole basis for deeming a case 'exceptional,' and (2) cases where the injured party only partially prevails on the patent claims at issue." *Kilopass*, 82 F. Supp. 3d at 1166. Neither exception applies here, and courts routinely award full fees even for time spent on unsuccessful motions. *See Covarrubias v. Ford Motor Co.*, No. 19-CV-01832-EMC, 2021 WL 3514095, at *3 (N.D. Cal. Aug. 10, 2021) ("A fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit" because "litigation may involve a series of [unsuccessful] attacks on an opponent's case… Compensation is ordinarily warranted even for those unsuccessful attacks, to the extent that those attacks led to a successful claim.") (cleaned up) (citations omitted).

Likewise, Deckers' objection to time spent on sealing ignores the volume of sealing practice this case required. Opp. at 24. The case involved two competitors, their internal business practices and financial data, thus requiring sealing at nearly every stage. *See*, *e.g.*, ECF 146, 162, 210 (Quince's sealing motions); ECF 98, 170, 173, 185 (Quince's statements regarding Deckers' administrative motions to seal); ECF 227, 374 (joint motions to seal); ECF 154 (Quince's response to Deckers' motion to seal). Civil Local Rule 79-5 requires appropriate sealing, and a substantial share of it was occasioned by Deckers' own filings and designations. *Id.*

Deckers' remaining objections—duplication, overstaffing, and insufficient billing judgment—rest on speculation, not evidence. Opp. at 23–24. Deckers infers duplication from the fact that Quince changed counsel and that ten timekeepers billed time. But efficient staffing is not duplication, and Deckers offers no specific example of duplicated work. *In re Nat'l Sec. Agency Telecomms. Recs. Litig.*, 2010 WL 11475732, at *15 ("The fact that seven attorneys seek compensation for working on each of several important motions also does not demonstrate the 'excess' and 'needless duplication' alleged by defendants."). That a third-year associate, who cross-examined Deckers' General Counsel, carried the largest share of hours at a lower rate is

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

evidence of billing discipline, not waste. Quince also exercised billing judgment before filing: it wrote off $50,151.50, and at least one expert's invoices reflect substantial voluntary write-offs. ECF 383-1 (Morrow Decl.) ¶¶ 29–30, 41. Indeed, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *In re Nat'l Sec. Agency Telecomms. Recs. Litig.*, 2010 WL 11475732, at *15 (citation omitted).

### 4. *There Is No Duplication Between Taxable and Non-Taxable Costs.*

Quince did not seek any cost twice. Contrary to Deckers' claim, Quince's Bill of Costs did not seek "sample products and physical exhibits" or "translation" costs. The "printing, courtesy copies" concern pretrial chambers copies required by the Court, separate from the taxable costs on printing relating to trial exhibits in the Bill of Costs. Quince confirmed that it would only renew its request for "any costs that may be disallowed in the Bill of Costs." Mot. at 22 n.5. Deckers also wrongly labeled the non-taxable costs as "non-recoverable overhead and litigation convenience charges." Opp. at 24. They are recoverable under the statutes. Mot. at 14-15 (collecting cases).

### 5. *Expert Fees Are Recoverable Under § 1117(a) and Court's Inherent Authority.*

First, a prevailing party may recover expert fees as part of a § 1117(a) award, because fees under that section "may also include reasonable costs that the party cannot recover as the 'prevailing party'" so long as they were "reasonably incurred." *Dropbox, Inc. v. Thru Inc.,* No. 15-cv-01741-EMC, 2017 WL 914273, at *5–6 (N.D. Cal. Mar. 8, 2017)*, aff'd,* 728 F. App'x 717 (9th Cir. 2018) (awarding "Expert Witness Fees" among non-taxable costs); *BoxNic Anstalt v. Gallerie degli Uffizi,* 2020 WL 2991561, at *1, 3 (D. Ariz. June 4, 2020) (awarding expert fees and translation costs under the Lanham Act). Quince's four experts were all necessary to address the trade dress issues: a footwear-design expert, a marketing expert, a survey expert, and a damages expert. Second, Deckers concedes that a court may shift expert fees under its inherent power on a finding of bad faith or abuse of the judicial process. Opp. at 25 (citing *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008)). *Takeda* affirmed such an award alongside § 285 fees and Quince has made a sufficient showing. 549 F.3d at 1391; Mot. at 17-18.

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO

## III.    CONCLUSION

For these reasons, Quince respectfully requests the Court grant this motion.


DATED: July 30, 2026                              */s/ Xinlin Li Morrow*

Xinlin Li Morrow (SBN 281707)
Ryan McMenamin (*pro hac vice*)
Lawrence Yichu Yuan (*pro hac vice*)
**Morrow Ni LLP**
xinlin@moni.law
ryan@moni.law
lawrence@moni.law
3333 Michelson Drive Suite 300
Irvine, CA 92612
Telephone: (213) 282-8166

*Attorneys for Defendant Last Brand,
Inc. d/b/a Quince*

REPLY ISO QUINCE'S MOTION FOR FEES AND NON-TAXABLE COSTS | 4:23-cv-04850-AMO