UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DECKERS OUTDOOR CORPORATION,
Plaintiff,

v.

LAST BRAND, INC.,
Defendant.

Case No. 23-cv-04850-AMO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS AND BILL OF COSTS**

Re: Dkt. Nos. 382, 383

This is a design patent and trade dress dispute. Defendant Last Brand, Inc. d/b/a Quince ("Quince") prevailed on each of Plaintiff Deckers Outdoor Corporation's ("Deckers") causes of action. Quince's motion for attorney's fees pursuant to the Patent Act (35 U.S.C. § 285), the Lanham Act (15 U.S.C. § 1117(a)), and the Court's inherent authority was heard before this Court on November 19, 2026. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, and good cause appearing, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Quince's motion. The Court **ORDERS** Quince to provide supplemental records reflecting the fees and non-taxable costs associated with litigating the trade dress and patent claims separately within 21 days of this order. Deckers may file its objection, if any, within seven days of Quince's supplement.

## I. BACKGROUND

Deckers designs and markets footwear products under various brands, including UGG. Dkt. No. 203 at 1. Quince is an apparel retailer that offers three products on its website which Deckers contends infringe upon three unregistered trade dresses and one patent. The Court granted summary judgment to Quince on Deckers claims related to the Classic Ultra Mini Boot Trade Dress ("Mini") and the Tasman Boots Trade Dress ("Tasman") and denied Quince summary

United States District Court
Northern District of California

judgment on the patent claim regarding U.S Patent No. D927,161 ("'161 Patent"). Dkt. No. 203. Before trial, Deckers voluntarily dismissed with prejudice the final trade dress claims regarding the Baily Button Boot Trade Dress. Dkt. No. 273. The '161 Patent infringement claim proceeded to trial, where the jury found that Quince infringed Deckers' patent, but that the patent was invalid. Dkt. No. 361. On June 25, 2026, the Court entered final judgment in favor of Quince and against Deckers. Dkt. No. 375. Quince filed for attorney's fees and non-taxable costs, as well as for taxable costs on July 9, 2026. Dkt. Nos. 382, 383. Deckers timely opposed, Dkt. No. 390, and Quince's reply followed, Dkt. No. 399.

## II. DISCUSSION

Quince requests an award of $1,532,253.00 in attorney's fees, $264,413.18 in non-taxable costs, and $82,550.495 in taxable costs through July 8, 2026. Quince seeks attorney's fees and non-taxable costs pursuant to Section 285 for the patent claim, and Section 1117(a) for the trade dress claims, arguing this case is "exceptional" under those statutes. In the alternative, Quince seeks a fee award under the Court's inherent authority. Dkt. No. 383 at 29. Preliminarily, Deckers asks this court to "deny the motion without prejudice, or hold it in abeyance, pending completion of post-trial motions and any appeal." Dkt. No. 390 at 8. In the alternative, Deckers argues this case is not exceptional, and objects to nearly all Quince's requested fees and costs other than $3,285.28 for copies of witness binders and trial exhibits ordered by the Court, $170.00 for service-of-process fees, and $1,069.09 in witness fees and mileage. Dkt. No. 391 at 4-5. The Court first considers Deckers' request to hold this motion in abeyance before turning to the merits of Quince's motion, addressing Quince's entitlement to fees under Patent and Lanham Acts and the Court's inherent authority, and finally resolves the request for non-taxable and taxable costs.

### A. Deferral

As a preliminary matter, the Court declines to defer consideration of the fees issue. "If this Court decides the fees issue now, the Federal Circuit may consider the overlapping summary judgment and fees issues together, saving judicial resources." *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *3 (N.D. Cal. Sept. 15, 2014). The Court also proceeds with the Bill of Costs because Deckers has not argued it would be irreparably

United States District Court
Northern District of California

harmed absent a stay. *See Linex Techs., Inc. v. Hewlett-Packard Co*., No. 13-CV-00159-CW (MEJ), 2014 WL 5494906, at *2 (N.D. Cal. Oct. 30, 2014), *adopted,* No. C 13-159 CW, 2014 WL 6482602 (N.D. Cal. Nov. 18, 2014).

**B. Exceptional Case**

Under the Patent Act and the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285; 15 U.S.C. § 1117(a). Accordingly, the Ninth Circuit has found that these provisions are "parallel and identical," and relies "on an interpretation of the fee-shifting provision in one Act to guide [] interpretation of the parallel provision in the other." *SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Georgia–Pacific Consumer Prods. LP v. von Drehle Corp*., 781 F.3d 710, 720 (4th Cir. 2015).

"An 'exceptional' case is 'simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *P2i Ltd. v. Favored Tech USA Corp*., No. 23-cv-01690-AMO, 2026 WL 849294, at *5 (N.D. Cal. Mar. 27, 2026) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S 545, 554 (2014)). Courts consider "the totality of the circumstances" in deciding whether a case is "exceptional." *Id.*

Quince argues that Deckers' trade dress claims were exceptionally weak, and that Deckers litigated in an unreasonable manner. While Quince does not separate Deckers' litigation positions or conduct by its trade dress and patent claims, the Court does so here to assess each claim under its associated statute. *See Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.*, No. CV1401918JVSJCGX, 2015 U.S Dist. LEXIS 178443, *7 (C.D. Cal. Apr. 1, 2015) (separately addressing requests for attorney's fees under Section 1117(a) and Section 285).

**1. Trade Dress Infringement Claims**

Quince argues that Deckers' Classic Ultra Mini and Tasman trade dress infringement claims were exceptionally weak because they were dismissed at summary judgment without the Court reaching functionality. Quince separately argues that Deckers' voluntary dismissal of the Boots Bailey Button trade dress claim supports a finding that Deckers litigated in an unreasonable

manner. The Court addresses each of these arguments in turn.

**a. Deckers' Litigation Position**

The Court first addresses the substantive strength of Deckers' Mini and Tasman trade dress claims. Quince pleaded genericness as an affirmative defense against Deckers' trade dress infringement claims. Dkt. No. 38, ¶ 99. Deckers bore the burden of proving that Quince's affirmative defense of genericness failed. *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999). Deckers failed to provide any evidence or supporting authority that its trade dresses were not common in the industry, despite its infringement claims turning on them being non-generic. Dkt. No. 203 at 7-8. Instead, Deckers attempted to relitigate its objection to screenshots relied upon by Quince's experts–an objection the Court had already resolved against Deckers. Dkt. No. 193. Deckers additionally argued, without any supporting authority, that the trade dresses were not generic because there were no products closely resembling the Mini or Tasman boots prior to their introduction in the market. Dkt. No. 164 at 8.

Quince urges the Court to adopt *Dzinesquare*'s reasoning. There, the court concluded the plaintiff's "failure to create a genuine dispute" when it provided only one of five possible types of evidence "suggests the very weak litigating position of [the plaintiff]'s trade dress infringement claim." *Dzinesquare,* 2015 U.S Dist. LEXIS 178443 at *10. The Court finds *Dzinesquare* persuasive, and concludes that Decker's litigation position was weak. To overcome summary judgment, Deckers had to create a triable issue of fact as to whether the Mini and Tasman trade dresses were generic. Instead of providing any evidence to refute Quince's expert report, or citing any authority to counter Quince's arguments, Deckers re-raised an objection to exhibits and conceded that the examples Quince offered were competitors. Deckers' minimal effort to create a triable issue of fact on this critical issue suggests Deckers' position was very weak.

Each of Deckers' arguments to the contrary fails. First, Deckers again attempts to relitigate its authenticity objection which was overruled. The Court has already addressed this issue and will not do so again. Dkt. No. 193. Next, Deckers' reliance on *Deckers Outdoor Corp. v. Primark US Corp.,* No. 1:23-cv-10233-ADB, 2025 WL 1424586 (D. Mass. May 16, 2025) is unpersuasive because the *Primark* defendant did not raise genericness on summary judgment, so



United States District Court
Northern District of California

United States District Court
Northern District of California

the court's evaluation of Deckers' secondary meaning evidence has no bearing on whether Deckers' position *here* was objectively weak. *Id.* Last, Deckers points to its consumer survey "showing 73% secondary meaning." Dkt. No. 390 at 12 (emphasis omitted). But a generic designation "cannot be the subject of trademark protection under any circumstances, even with a showing of secondary meaning." *Filipino Yellow Pages*, 198 F.3d at 1146; *Indonesian Imports, Inc. v. Old Navy, Inc.*, No. C98-2401 FMS, 1999 WL 179680, at *3 (N.D. Cal. Mar. 30, 1999) ("If Indonesian's claimed dress is generic—no amount of secondary meaning evidence can save it.").[1] Accordingly, no amount of secondary meaning evidence or authority excuses Deckers' failure to meaningfully address a threshold issue for its trade dress claims.

For these reasons, the Court finds the Mini and Tasman trade dress claims substantively weak enough to render them exceptional.

**b. Decker's Litigation Conduct**

Quince argues that Deckers' litigation conduct was unreasonable based on several examples. Only two of these examples relate to Deckers' trade dress claims: (1) Deckers voluntarily dismissed its Bailey Button Boots trade dress claim with prejudice shortly before trial and (2) Deckers has filed other trade dress claims, which Quince alleges are "oppressive, monopolistic conduct." Dkt. No. 399 at 6; Dkt. No. 383 at 19.

For the Bailey Button Boots claim, while dismissal of "claims with prejudice [] does not establish, by itself, a finding that the merits were so substantively weak as to render the claims exceptional," a party's litigation conduct may be unreasonable if it "created a substantial amount

---

[1] While Deckers maintains that "neither the Ninth Circuit nor the Supreme Court has ever held a product-design trade dress generic, and litigating that open question is not objectively unreasonable," Dkt. No. 390 at 15 (citing *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999)), the Ninth Circuit held that a mark could not receive trademark protection if it was generic, regardless of any secondary meaning. *Filipino Yellow Pages, Inc.*, 198 F.3d. at 1146. Further, at the November 19, 2026 hearing, Deckers referred to cases in other circuits that have declined to apply genericness to product design trade dresses. But Deckers did not cite any of these authorities in its opposition, nor did it raise this argument in opposition to Quince's motion for summary judgment on the trade dress claims. Thus, these cases are not properly before the Court, *Mobley v. Workday, Inc.*, 740 F. Supp. 3d 796, 805 (N.D. Cal. 2024) (arguments raised for the first time at oral argument are waived) (citing *Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019)), and Deckers' failure to raise them in the summary judgment briefing contributes to the weakness of its litigation position.

of work for both [the defendant] and the court, much of which work was needlessly repetitive or irrelevant or frivolous." *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1381 (Fed. Cir. 2020); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F. Supp. 3d 680, 723 (D. Del. 2017), *vacated in part on other grounds,* 14 F.4th 1323, 1332 (Fed. Cir. 2021). Deckers continued to assert its Bailey Button Boots trade dress position for nearly six months after the Court granted summary judgment, making it the sole remaining trade dress at issue. But Deckers had all the accused products' sales profits data by the close of fact discovery which, after the Court's summary judgment order, Deckers could have used to determine whether the claim was worth pursuing. ECF 273 at 2-3. Though Deckers ultimately concluded that potential damages attributable to the Bailey Button Boots claim were "disproportionately low. . .", Dkt. No. 257 at 4, it did not do so until shortly before trial. As a result, Quince continued to prepare for trial on those claims. Dkt. No. 269-1 ¶ 11 (Morrow Declaration asserting Quince developed trade dress specific fact discovery, trade dress-only expert witnesses, trade dress jury instructions, and other pretrial defenses). Quince is entitled to fees and costs for these efforts. *SRI Int'l, Inc*, 254 F. Supp. 3d at 723 (awarding fees when Plaintiffs "needlessly prolonged litigation"). *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, No. 22-cv-08958-CRB, 2024 WL 5011604, at *2 (N.D. Cal. Dec. 5, 2024). Decker's litigation conduct alone merits awarding Quince its fees for continuing to defend against Deckers' Bailey Button Boots claim. *See Amarte*, 2024 WL 5011604 at *2.

Quince's "Broader Litigation Pattern" theory, however, is less availing. Quince asserts that Deckers has "filed hundreds of templated trade dress suits calibrated to extract settlements at the cost of defense rather than test its claims on the merits." Dkt. No. 383 at 19. Judge Cisneros previously denied Quince's discovery motions on this issue, finding "no evidence that Deckers' prior cases were frivolous or were settled quickly to avoid the merits of the cases being reached." Dkt. No. 84 at 3. Quince argues that Deckers is "continuing to maintain at least forty suits" after the Court's summary judgment ruling, which shows "[w]hat was speculative in September 2024 has become well-documented." Dkt. No. 399 at 10. However, that Deckers has not dismissed 40 lawsuits after this Court granted summary judgment on genericness grounds is not sufficient to disrupt Magistrate Judge Cisneros' conclusion. Deckers asserted a weak claim here. Quince has

United States District Court
Northern District of California

offered nothing to evidence that every other trade dress claim suffers in the same way.

Considering the totality of the circumstances, the Court finds that Deckers' Mini and Tasman trade dress claims were substantively weak, and Deckers' litigation conduct was unreasonable for the Bailey Button Boots trade dress claims. Quince has demonstrated that the case is exceptional under *Octane Fitness* for these claims.

**2. '161 Infringement Claim[2]**

Quince avers that the following conduct by Deckers was unreasonable: (1) "relitigating issues it had already lost," (2) "violating this Court's local rules," (3) "misleading Quince into forgoing timely relief," (4) "wielding privilege as both a sword and a shield," and (5) Deckers' broader litigation pattern. Dkt. No. 383 at 26, 28-29. The Court reviews this conduct under the totality of the circumstances and for the reasons herein finds it unexceptional.

In determining whether litigation conduct renders a case exceptional, the purpose of Section 285 is "not to control the local bar's litigation practices," but to "compensat[e] the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of the litigation or Patent Office misconduct, to require it to bear its own costs." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1309 n.1 (Fed. Cir. 2012), *vacated on other grounds by*, 572 U.S 559 (2014). Accordingly, "post-Octane decisions awarding fees have generally relied on egregious behavior." *PersonalWeb Techs. LLC v. EMC Corp.*, No. 5:13-cv-01358-EJD, 2020 WL 3639676, at *3 (N.D. Cal. July 6, 2020). Considered together, Deckers' behavior is concerning but not egregious enough to render it exceptional.

First, Quince faults Deckers for raising objections to certain Chinese-patent and YouTube prior art, and Quince's cost-and-deductions evidence. Dkt. No. 383 at 17. Indeed, the Court previously admonished Deckers for that conduct: "in several instances Deckers reasserts arguments already waived, withdrawn, or foreclosed. If this is an oversight, counsel must do

---

[2] At the November 19, 2026 hearing, Quince confirmed it does not argue that Deckers' litigation position with respect to the patent claim was exceptionally weak. The Court therefore addresses only whether Deckers' litigation conduct was unreasonable, rendering the claim exceptional.

United States District Court
Northern District of California

better; otherwise, counsel is cautioned to stop attempting to relitigate the Court's rulings." Dkt. No. 324 at 3. While not encouraged, this conduct is not egregious, and Quince relies on case law regarding conduct that exceeds the circumstances at issue here. *See e.g, Adasa Inc. v. Avery Dennison Corp.*, No. 6:17-cv-01685-MK, 2024 WL 808893, at *4 (D. Or. Feb. 27, 2024) (finding conduct exceptional in part because defendant represented it had no objection to evidence and then objected at trial, withdrew the objection and then objected again); *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 4616847, at *3-4 (N.D. Cal. Sept. 15, 2014) (finding a case exceptional when plaintiff had litigated and lost identical claims in two other fora it continued to press against defendant). Again, while the Court does not condone Deckers' behavior, it is not egregious to the point of exceptionality.

Second, Quince points to Deckers' local rule and court order violations, including filing an *ex parte* motion, exceeding page limits, and filing two unauthorized replies. Dkt. No. 282 at 17-18. However, any local rule issues were cured and caused no prejudice. The Court struck at least one of Deckers' violative submissions without Quince needing to reply. Dkt. No. 73. And Deckers withdrew its *ex parte* application, motion for leave to amend, and *Daubert* motions. Dkt. Nos. 300, 148, 150, 99. This conduct, while "inappropriate and ultimately detrimental to the client," is not "extraordinary". *SmartMetric, Inc. v. MasterCard Int'l, Inc.*, No. CV117126MWFAJWX, 2015 WL 12582630, at *4 (C.D. Cal. Mar. 25, 2015), *aff'd,* 637 F. App'x 591 (Fed. Cir. 2016).

Third, Quince accuses Deckers of bad faith in dealing with a trial subpoena. Counsel for Deckers and Quince began by negotiating the subpoena, but the negotiations broke down and Quince moved to enforce compliance. Dkt. Nos. 339, 340. The Court denied Quince's motion for failure to demonstrate proper service. Dkt. No. 342. In the scope of subpoena negotiations parties may exchange some materials and refuse others, which can lead to motions practice. Without more, this conduct does not rise to bad faith, nor weigh in favor of the patent claim being exceptional. *Anhing Corp. v. Viet Phu, Inc.*, No. CV1304348BROJCGX, 2017 WL 11630841, at *7 (C.D. Cal. May 18, 2017), *aff'd*, 740 F. App'x 115 (9th Cir. 2018) (finding conduct was not exceptional when it "may just as easily have been the result of poor case management and overzealous litigation techniques.").

United States District Court
Northern District of California

Fourth, Quince argues that Deckers "wielded the attorney-client privilege as both a sword and a shield" by refusing to produce discovery from its prosecution-counsel communications that were discussed at trial. Dkt. No. 383 at 10. Like the trial subpoenas, the Court has already rejected Quince's arguments, denying Quince's motion to re-open discovery for failure to show good cause under Rule 16. Dkt. No. 368 (Trial Tr.) at 366-67. Quince cites no authority supporting its contention that losing a privilege battle should result in a fee award under Section 285. This factor does not weigh in favor of Deckers conduct being exceptional.

Finally, for the same reasons that the Court denied Quince's argument on Deckers' broader litigation pattern with respect to the trade dress claims, Quince's argument as applied to the patent claim fails. Considering all of Deckers' litigation conduct together, the Court does not find the '161 Patent claim to be exceptional.

### C. Inherent Authority

Quince separately asserts that Deckers' litigation conduct supports a fee award under the Court's inherent authority. "[A] court has the inherent power to assess attorney's fees for willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . ." *Roadway Express v. Piper*, 447 U.S 752, 766 (1980) (internal quotation marks and citations omitted). "[R]ecklessness when combined with an additional factor, such as frivolousness, harassment, or an improper purpose" may also warrant sanctions. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). "[S]anctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (citation omitted). Finally, "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO*, Inc., 501 U.S 32, 44 (1991).

To support a finding of bad faith or recklessness "coupled with an improper purpose" required for sanctions, Quince points to Deckers' litigation conduct already discussed. Dkt. No. 383 at 20; *Fink*, 239 F.3d at 993. Quince argues that this conduct reflects "a deliberate effort to harass competitors and inflate the cost of defense." Dkt. No. 383 at 20. Deckers counters that it "pursued a presumptively valid patent and trade-dress claims" and "litigated within the ordinary

bounds of a contested trial." Dkt. No. 390 at 26.

Deckers not only survived summary judgment but also prevailed on the infringement element of its patent claim. Where Deckers held a presumptively valid patent with the U.S Patent and Trade office, and succeeded in demonstrating infringement, it is difficult to infer an improper purpose in bringing the action. Even though Deckers re-raised objections it should not have, filed some motions exceeding page limits, and may have changed its meet and confer position on Quince's trial subpoena, these actions do not satisfy the "high threshold" required to demonstrate bad faith. *Primus Auto.*, 115 F.3d at 649.

The Court does not reach Quince's entitlement to fees and costs for the trade dress claims pursuant to the Court's inherent authority because it has already determined that Quince is entitled to fees by statute. For the reasons set out above, the Court declines to award fees under its inherent authority for Quince's defense of the patent claim.

### D. Amount Of Attorneys' Fees

Deckers opposes the amount of Quince's requested fees as unreasonable and argues that the Court should apportion any fee award between the Lanham Act and the Patent Act claims. Dkt. No. 390 at 21-22. The Ninth Circuit has held "a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorney's fees only for work related to the Lanham Act claims." *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000). Therefore, "[a]pportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Id.* at 1070. Similarly, under Section 285, attorney's fees for nonpatent issues are not authorized unless the claims are "so intertwined with the patent issues that the evidence would, in large part, be material to both types of issues." *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed. Cir. 1983).

Because the Court has found Quince is entitled to fees under the Lanham Act, but not the Patent Act, the Court addresses the parties' arguments on whether the patent and trade dress claims are "inextricably intertwined," barring apportionment under *Gracie*.

The Court finds the claims are not inextricably intertwined. For the trade dress claims, the relevant issues included whether (1) Deckers' trade dresses were nonfunctional, (2) Deckers' trade



United States District Court
Northern District of California

dresses had acquired a secondary meaning, (3) there was a substantial likelihood of confusion between Deckers and Quince's products, (4) Deckers' trade dresses were generic (as Quince's affirmative defense), and (5) Deckers' entitlement to lost profits. For Deckers' patent infringement claim the relevant issues included whether the '161 patent was invalid as functional or indefinite, and whether Deckers could recover on lost profits. Potentially overlapping are the proof of functionality and lost profits.

As to lost profits, Quince itself successfully argued that the lost profits theory of damages applied only to the trade dress claims because Deckers failed to disclose it before an opening expert report. Dkt. No. 203 at 11. Therefore, this does not weigh in favor of the claims being inextricably intertwined. As to functionality, to the extent the work Quince performed related to this element for both claims, this alone cannot render the cases inextricably intertwined. *See SAS v. Sawabeh Info. Servs. Co.,* No. CV 11–04147 MMM (MANX), 2015 WL 12763541, at *18 (C.D. Cal. June 22, 2015) (finding claims were not inextricably intertwined despite there being "some overlap in the facts" because party failed to explain how the non-overlapping aspects of the work was useful in litigating their claim.). Finally, Quince itself argued in its reply brief to Deckers' voluntary dismissal that "[t]he trade dress claim and the design patent claim require fundamentally different legal theories and defenses." Dkt. No. 269 at 5.

Quince is not entitled to attorney's fees and costs incurred while defending against Deckers' patent claim, and apportionment is necessary. To assist the Court with its duty to "make some attempt to adjust the fee award to reflect, even if imprecisely, work performed on non-Lanham Act claims," Quince should file supplemental billing and non-taxable cost records that show the amounts associated with each claim, as described below. *See Gracie*, 217 F.3d at 1070.

In addition to apportionment, Deckers raises several other objections to Quince's fees motion. Deckers' objections are best resolved once Quince resubmits its updated billing entries. The Court invites Quince's counsel to submit more detailed billing records for their requested fees, to allow the Court to assess the reasonableness of hours spent. Like counsel in *P2i*, 2026 WL 849294 at *10, Quince submitted a declaration in support of their motion for fees and costs where they identified "the attorneys who worked on the case, their billing rates, the total hours each spent

working on the case, and some of their qualifications and experience." Morrow Decl. at 2-5 (Dkt. No. 383-1). Quince should update its records using the following chart format:

| Date | Hours Billed | Timekeeper | Billing Entry Description | Category |
|---|---|---|---|---|
| [date] | [hours] | [name] | [description] | [e.g., motion to dismiss 1; reply in support of Rule 11 motion] |

**E. Non-Taxable Costs**

Quince seeks non-taxable costs incurred by litigating both Deckers' Lanham Act and Patent Act claims. Dkt. No. 383 at 21-22. However, in light of the Court's ruling that the '161 patent claim was not exceptional, Quince is entitled only to reasonable costs associated with its Lanham Act claims. *See Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (affirming an award of expenses under Section 285 only when the district Judge found the case to be exceptional). These costs may include expert fees to the extent they are reasonably necessary to the trade dress claims but not as to the patent claims. *Dropbox, Inc. v. Thru Inc.*, No. 15-cv-01741-EMC, 2017 WL 914273, at *6 (N.D. Cal. Mar. 8, 2017), *aff'd*, 728 F. App'x 717 (9th Cir. 2018) (granting expert fees for Lanham Act claims); *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011) (noting experts fees cannot be awarded under Section 285).

Therefore, like the attorney's fees, the Court invites Quince to submit supplemental cost records separated by claim. The Court expects Quince to separate its expert costs for the "survey and marketing experts," and any work performed by the experts specifically on the patent claims. Dkt. No. 399 at 13. Non-taxable costs associated with trial preparation should be separated into costs associated with the Bailey Button Boots trade dress claim, and the patent claim.

**F. Taxable Costs**

Finally, the parties dispute Quince's Bill of Costs. Quince seeks taxable costs under Fed. R. Civ. P. 54(d), 28 U.S.C. § 1920, 28 U.S.C. § 1821, and Civ. L.R. 54. Dkt. No. 382; Morrow Decl., ¶ 5 (382-1). Unlike attorney's fees and non-taxable costs, an award of taxable costs does not require a showing that a case is "exceptional" under Section 285 or Section 1117(a). *GeoTag,*



United States District Court
Northern District of California

*Inc. v. Zoosk, Inc.*, No. C-13-0217 EMC, 2014 WL 793526, at *4 (N.D. Cal. Feb. 26, 2014); *Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*, No. CV 10-6938 SVW (PLA), 2013 WL 12129368, at *16 (C.D. Cal. Feb. 20, 2013). Deckers objects to the following costs claimed by Quince: (1) $46,683.64 for "Visual aids," (2) $6,713.46 for "daily delivery & interactive realtime" for the trial transcript and $78.30 and $105.85 charged for the summary-judgment/Daubert and pretrial-conference hearing transcripts, and (3) $19,415.55 for deposition "transcript & video" recordings.[3] The Court addresses these objections in turn.

Visual aids: Civil Local Rule 54–3(d) allows recovery for materials "to be used" at trial but does not require actual use. *Shum v. Intel Corp*., 682 F.Supp.2d 992, 1000 (N.D. Cal. 2009), *aff'd*, 629 F.3d 1360 (Fed. Cir. 2010). These materials must be "reasonably necessary to assist the jury or the Court in understanding the issues at trial." Civ. L.R. 54–3(d)(5). Quince provided two invoices for its costs incurred with visual aids, reflecting charges for "Graphic Consulting," "Presentation Consulting," and travel expenses Morrow Decl. ¶ 10, Exhibit E (Dkt. No. 382-7). Deckers cites no authority to support its contention that Quince's $46,683.64 for visual aids is "unreasonable on its face" for a four-day trial. Dkt. No. 391 at 2. Because this case concerned the appearance of the accused product and side-by-side comparison against other products and prior art, the Court finds the visual aids were reasonably necessary in understanding the issues at trial, and taxes $46,683.64.

Trial, Pretrial, and Summary Judgment/Daubert Transcripts: 28 U.S.C. § 1920(2) allows for the recovery of costs incurred for "printed or electronically recorded transcripts necessarily obtained for use in the case." "Section 1920 allows for recovery of costs for transcripts obtained 'for use in the case,' and is not limited to appeal." *Vectren Commc'ns Servs. v. City of Alameda*, No. C 08-3137 SI, 2014 WL 3612754, at *3 (N.D. Cal. July 22, 2014) (citing 28 U.S.C. § 1920(2)). The Court finds the requested costs are recoverable and taxes $6,713.46 for the trial transcripts, and $78.30 and $105.85 for the summary judgment/Daubert and pretrial transcripts.

[3] Deckers also objected to the delivery charges and costs related to additional convenience copies of trial exhibits. Quince has agreed to withdraw $2,336.675 in delivery fees for the additional convenience copies, and the Court finds the remaining $8314.605 taxable.

Deposition Transcripts: Local Rule 54-3(c)(1) accounts for "[t]he cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case is allowable." Courts in this District have found "fees for both the videotaped and stenographic versions of the same transcript are taxable." *Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*, No. 21-cv-03496-AMO, 2025 WL 2841680, at *2 (N.D. Cal. Oct. 7, 2025) (internal citation removed). Deckers cites no authority to the contrary; thus, the Court taxes $19,415.55 for this cost.

## III. CONCLUSION

The Court finds Deckers' Mini and Tasman trade dress claims to be substantively weak and Deckers' Bailey Button Boots trade dress claim-related litigation conduct to be unreasonable, rendering this case exceptional as to those claims. Quince is entitled to reasonable attorney's fees and non-taxable costs for litigating those claims under Section 1117(a). However, Deckers' '161 patent claim was not substantively weak enough, and its litigation conduct not egregious enough, to be exceptional. Quince is not entitled to fees or non-taxable costs for litigating that claim.

The Court (1) finds that Quince's fee award must be apportioned to exclude the non-exceptional patent claim, (2) orders Quince to update its billing and cost records to reflect this apportionment, and (3) taxes $82,550.495 to Deckers for Quince's the costs in its Quince's Bill of Costs, Dkt. No. 382, less the amount Quince voluntarily withdrew.[4] The Court will specify Quince's appropriate award after considering Quince's updated billing and costs records and evidence supporting the reasonableness of its claimed rates. Quince's supplemental records shall be submitted within 21 days of this order. Within seven days of such supplemental filings, Deckers may file any non-duplicative objection, if any, not to exceed five pages.

**IT IS SO ORDERED.**

Dated: November 25, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**

United States District Court
Northern District of California

[4] If any of these taxable costs are also sought in Quince's attorney's fees motion, Quince shall only recover them once.